No. 17-16161

IN THE
# United States Court of Appeals for the Ninth Circuit

FACEBOOK, INC.,
*Plaintiff-Appellee,*

*v.*

POWER VENTURES, INC. & STEVEN SURAJ VACHANI,
*Defendant-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:08-cv-05780-LHK, Hon. Lucy Koh

## SUPPLEMENTAL EXCERPTS OF RECORD
## VOLUME I OF II (SER1 TO SER105)

Brian P. Goldman
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
(415) 773-5700

Eric A. Shumsky
Hannah Garden-Monheit
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

I. Neel Chatterjee
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
(650) 752-3100

Monte Cooper
Robert L. Uriarte
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7400

*Counsel for Plaintiff-Appellee*

May 31, 2018

# TABLE OF CONTENTS

## VOLUME I OF II

**Record Entry**[*]                                                          **SER**

### *District Court Orders*

Order Granting Motion for Attorney's Fees and Granting in
  Part Motion for Contempt Sanctions,
  Dkt. No. 470 (Filed Aug. 8, 2017) ........................................................... 1

Order Denying Leave to File Motion for Reconsideration,
  Finding Defendant Steven Vachani Liable as a Matter of
  Law, and Granting Damages and Permanent Injunctive
  Relief,
  Dkt. No. 372 (Filed Sept. 25, 2013) ..................................................... 29

Order re Attorneys Fees and Costs for Renewed Deposition,
  Dkt. No. 356 (Filed Aug. 7, 2013) ......................................................... 63

Order Denying Facebook's Motion for Judgment on the
  Pleadings; Denying the Parties' Cross-Motions for
  Summary Judgment; Granting Facebook's Motion to
  Dismiss Defendants' Counterclaims; Denying Facebook's
  Motion to Strike Defendants' Affirmative Defenses,
  Dkt. No. 89 (Filed July 20, 2010) ......................................................... 70

Order Denying Motion to Dismiss and Granting in Part and
  Denying in Part Motion for Definite Statement,
  Dkt. No. 38 (Filed May 11, 2009) ......................................................... 95

---

[*] None of the documents included in this Supplemental Excerpts of
Record remains confidential, although many of the documents are so
marked. Some of the documents were stamped confidential but never
sealed (Dkt. Nos. 236-2, 236-6). Other documents were filed under seal,
but were later unsealed by the district court. *See* Dkt. No. 298
(unsealing Dkt. Nos. 299-6, 299-9, 299-15, 299-21); Dkt. No. 395
(unsealing Dkt. Nos. 213-2, 213-4, 217, 372, 396).

# VOLUME II OF II

## *Other Record Materials*

Joint Case Management Statement,
    Dkt. No. 404 (Filed Jan. 4, 2017) ...................................................... 106

Expert Report of Bob Zeidman and Lawrence Melling,
    Dkt. No. 396 (Filed May 29, 2014) ................................................... 115

December 29, 2008, E-mail Chain among Power Employees,
    Exhibit 5 to the Declaration of Monte Cooper in Support
    of Facebook Inc.'s Supplemental Brief Regarding
    Damages and Liability of Defendant Steve Vachani,
    Dkt. No. 299-6 (Filed Apr. 17, 2012) ................................................ 154

December 1, 2008, Press Release for Power.com,
    Exhibit 8 to Declaration of Monte Cooper in Support of
    Facebook Inc.'s Supplemental Brief Regarding Damages
    and Liability of Defendant Steve Vachani,
    Dkt. No. 299-9 (Filed Apr. 17, 2012) ................................................ 160

Excerpts from the January 9, 2012, Deposition Transcript of
    Steven Vachani (as Power Ventures, Inc.'s 30(b)(6)
    designee),
    Exhibit 14 to the Declaration of Monte Cooper in Support
    of Facebook Inc.'s Supplemental Brief Regarding
    Damages and Liability of Defendant Steve Vachani,
    Dkt. No. 299-15 (Filed Apr. 17, 2012) .............................................. 168

December 4, 2008, E-mail from Felipe Herrera to Steve
    Vachani,
    Exhibit 20 to the Declaration of Monte Cooper in Support
    of Facebook Inc.'s Supplemental Brief Regarding
    Damages and Liability of Defendant Steve Vachani,
    Dkt. No. 299-21 (Filed Apr. 17, 2012) .............................................. 185

Transcript of Proceedings Held on Feb. 24, 2012, before
    Magistrate Judge Joseph C. Spero,
    Dkt. No. 280 (Filed Feb. 27. 2012) (Excerpted) ................................ 189

Excerpts from the July 20, 2011, Deposition Transcript of
    Defendant Steve Vachani,
    Exhibit 2 to the Declaration of Morvarid Metanat in
    Support of Facebook's Motion for Partial Summary
    Judgment under California Penal Code § 502 and CFAA,
    Dkt. No. 236-2 (Filed Jan. 19, 2012) .................................................. 194

Excerpts from Power Ventures, Inc.'s Responses to Facebook,
    Inc's First Set of Interrogatories,
    Exhibit 4, Declaration of Morvarid Metanat in Support of
    Facebook's Motion for Partial Summary Judgment under
    California Penal Code § 502 and CFAA,
    Dkt. No. 236-4 (Filed Jan. 19, 2012) .................................................. 205

December 1, 2008, E-mail from Steve Vachani to Felipe
    Herrera and Eric Santos,
    Exhibit 6 to the Declaration of Morvarid Metanat in
    Support of Facebook's Motion for Partial Summary
    Judgment under California Penal Code § 502 and CFAA,
    Dkt. No. 236-6 (Filed Jan. 19, 2012) .................................................. 213

December 17-18, 2008, E-mails among Power Employees,
    Exhibit 7 to the Declaration of Morvarid Metanat in
    Support of Facebook's Motion for Partial Summary
    Judgment under California Penal Code § 502 and CFAA,
    Dkt. No. 236-7 (Filed Jan. 19, 2012) .................................................. 216

December 1, 2008, Cease-and-desist Letter,
    Exhibit A to the Declaration of Joseph Cutler in Support
    of Facebook, Inc.'s Motion for Partial Summary Judgment
    for Liability under the CAN-SPAM Act,
    Dkt. 233 (Filed Jan. 19, 2012) .......................................................... 226

December 12-26, 2008, E-mail Chain between Steve Vachani
    and Facebook Counsel Joseph Cutler,
    Exhibit B to the Declaration of Joseph Cutler in Support
    of Facebook, Inc.'s Motion for Partial Summary Judgment
    for Liability under the CAN-SPAM Act,
    Dkt. 233-1 (Filed Jan. 19, 2012)........................................................ 230

Excerpts from Power Ventures, Inc.'s Responses to Facebook,
    Inc.'s First Set of Requests for Admissions,
    Exhibit 6 to the Declaration of Monte M.F. Cooper in
    Support of Facebook, Inc.'s Motion for Partial Summary
    Judgment on Count I under the CAN-SPAM Act,
    Dkt. No. 232-3 (Filed Jan. 19, 2012) .................................................. 239

Excerpts from the July 20, 2011, Deposition Transcript of
    Steven Vachani,
    Exhibit 2 to the Declaration of Monte M.F. Cooper in
    Support of Facebook Inc.'s Motion for Partial Summary
    Judgment on Count I under the CAN-SPAM Act,
    Dkt. No. 229 (Filed Jan. 19, 2012) ..................................................... 252

Declaration of Lawrence Melling in Support of Facebook,
    Inc.'s Motion for Partial Summary Judgment On Count I
    under the CAN-SPAM Act,
    Dkt. No. 217 (Filed Jan. 19, 2012) ..................................................... 294

Declaration of Joseph Cutler in Support of Facebook, Inc.'s
    Motion for Partial Summary Judgment For Liability
    Under the CAN-SPAM Act,
    Dkt. No. 213-2 (Filed Jan. 19, 2012) .................................................. 308

Declaration of Ryan McGeehan in Support of Facebook's
    Motion for Partial Summary Judgment on Count I under
    the CAN-SPAM Act,
    Dkt. No. 213-4 (Filed Jan. 19, 2012) .................................................. 312

Transcript of Proceedings Held on Nov. 4, 2011, before
    Magistrate Judge Joseph C. Spero,
    Dkt. No. 176 (Filed Nov. 21, 2011) .................................................... 320

Amended Answer and Counterclaims of Defendants Power
    Ventures, Inc. and Steve Vachani,
    Dkt. No. 54 (Filed Nov. 23, 2009) ...................................................... 331

First Amended Complaint,
    Dkt. No. 9 (Filed Jan. 13, 2009) ........................................................ 358

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>POWER VENTURES, INC., et al.,<br><br>          Defendants. | Case No. 08-CV-05780-LHK<br><br>**ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR CONTEMPT SANCTIONS**<br><br>Re: Dkt. Nos. 446, 447 |

On May 2, 2017, the Court entered judgment in the instant case. On May 16, 2017, Plaintiff Facebook, Inc. ("Facebook") filed a motion for attorney's fees and a motion for contempt sanctions against Defendants Steve Vachani ("Vachani") and Power Ventures, Inc. ("Power"). ECF Nos. 446–47. Defendants did not oppose either of these motions. Having considered the motions, the relevant law, and the record in this case, the Court hereby GRANTS Facebook's motion for attorney's fees and GRANTS IN PART Facebook's motion for contempt sanctions against Defendants.

## I.     BACKGROUND

### A.  Factual Background

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

Facebook owns and operates the social networking website located at facebook.com. First Amended Complaint ("FAC") ¶ 2. Power Ventures ("Power") is a corporation incorporated in the Cayman Islands and doing business in California. Answer ¶ 10. At the times relevant to the instant case, Power has operated the website www.power.com, which offered to integrate users' various social media accounts into a single experience. FAC ¶ 5; Answer ¶ 5. Vachani is the Chief Executive Officer of power.com. Answer ¶ 11.

In December 2008, Facebook brought against Defendants this action, which alleges violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CANSPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§ 1114 and 1125(a) and under California law; and violations of California Business and Professions Code Section 17200. ECF Nos. 1, 9. Facebook complained that Defendants employed Facebook's proprietary data without its permission by inducing Facebook users to provide their login information and then using that information to "scrape" Facebook's proprietary material. FAC ¶¶ 49, 50, 52. Defendants then displayed Facebook's material on power.com. FAC ¶ 52. Facebook asserts that it never gave Defendants permission to use its material in this way. FAC ¶ 54.

Facebook also accuses Defendants of sending unsolicited and deceptive email messages to Facebook users. FAC ¶¶ 65-69. To launch their site, Defendants promised power.com users a chance to win $100 if they invited and signed up the most new users to Defendants' site. FAC ¶ 65. Defendants provided to their users a list of the users' Facebook friends from which the users could choose people to whom to send the invitation. FAC ¶ 66. Power.com sent commercial emails to those friends that included on the "from" line a "@facebookmail.com" address. FAC ¶¶ 66, 68. The content of the message included a line that the message was from "The Facebook Team." FAC ¶ 69, 70. Facebook contends that it never gave permission to send these messages

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR CONTEMPT SANCTIONS

United States District Court
Northern District of California

SER2

1   and that the emails were deceptive because they "do not properly identify the initiators of the

2   messages, nor do they provide clear or conspicuous notice that the messages are advertisements

3   for" power.com. FAC ¶ 71.

4   **B. Procedural History**

5   On December 30, 2008, Facebook filed the complaint in the instant case. ECF No. 1. On

6   January 13, 2009, Facebook filed a First Amended Complaint. ECF No. 9. On February 18, 2011,

7   Judge Ware granted the parties' stipulation to dismiss Facebook's DMCA claim, copyright and

8   trademark infringement claims, and claims for violations of California Business and Professions

9   Code Section 17200. ECF No. 97. On May 9, 2011, Defendants moved for summary judgment on

10   Facebook's CFAA, Section 502, and CAN-SPAM Act claims. ECF No. 98. On November 17,

11   2011, Facebook moved for summary judgment on Facebook's § 502 and CFAA claims. ECF No.

12   214 ("§ 502/CFAA Motion"). On November 18, 2011, Facebook moved for summary judgment

13   on Facebook's CAN-SPAM Act claim. ECF No. 215. On February 16, 2012, Judge Ware issued

14   an order denying Defendants' motion for summary judgment and granting summary judgment in

15   Facebook's favor as to Facebook's § 502, CFAA, and CAN-SPAM Act claims. ECF No. 275

16   ("February 16, 2012 order").

17   In the February 16, 2012 order, Judge Ware requested additional briefing regarding

18   Vachani's individual liability and the amount of damages Facebook should receive in light of the

19   February 16, 2012 order. *Id.* at 19. On April 17, 2012, Facebook filed its supplemental brief

20   regarding damages and the liability of Vachani. ECF No. 299 ("Facebook Damages/Liability

21   Brief"). On August 15, 2012, Vachani submitted a supplemental brief regarding damages and

22   Vachani's personal liability. ECF No. 317 ("Vachani Damages/Liability Brief").

23   On June 4, 2012, the attorneys representing Vachani and Power moved to withdraw as

24   counsel. ECF Nos. 302, 303. On July 2, 2012, Judge Ware granted the motions to withdraw. ECF

25   No. 306. In the order granting the withdrawal motions, Judge Ware required Vachani and Power to

26   file Notices of Identification of Substitute Counsel no later than July 17, 2012. *Id.* Judge Ware

27

28   Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

*United States District Court*
*Northern District of California*

3

1    noted that although Vachani could proceed pro se, Power had to be represented by a member of

2    the bar pursuant to Civil Local Rule 3-9(b). Civil L.R. 3-9(b) ("A corporation, unincorporated

3    association, partnership or other such entity may appear only through a member of the bar of this

4    Court."). Judge Ware cautioned Defendants that a failure to file timely Notices of Identification of

5    Substitute Counsel may result in default. *Id.*

6         On July 19, 2012, after neither Vachani nor Power had filed a Notice of Identification of

7    Substitute Counsel, Judge Ware ordered both parties to appear on August 6, 2012 to respond to an

8    Order to Show Cause regarding Defendants' failure to obtain counsel. ECF No. 308. On August 6,

9    2012, the parties appeared for the hearing, and on August 8, 2012, Judge Ware issued an order

10   regarding Defendants' failure to obtain counsel ("August 8, 2012 order"). ECF No. 313. Because

11   Power had failed to identify replacement counsel, Judge Ware found good cause to strike Power's

12   answer to Facebook's complaint and enter default against Power. *Id.* Judge Ware permitted

13   Vachani a short extension to find new counsel, which was conditioned on Vachani's immediate

14   filing of a Notice of Self-Representation. *Id.* The Clerk entered default against Power on August 9,

15   2012. ECF No. 314.

16        On August 15, 2012, new counsel filed a Notice of Appearance on behalf of Power. ECF

17   No. 316. That same day, Power moved for leave to file a motion for reconsideration of Judge

18   Ware's August 8 order requiring entry of default against Power. ECF No. 318. Judge Ware gave

19   Power leave to file a motion for reconsideration on August 21, 2012. ECF No. 320. On August 23,

20   2012, Power filed its motion for reconsideration. ECF No. 321.

21        On August 27, 2012, Facebook filed its response and simultaneously requested entry of

22   default judgment against Power. ECF No. 322. On August 27, 2012, Defendants provided notice

23   that both Power and Vachani had filed for bankruptcy. ECF Nos. 323, 324. Noting that pursuant to

24   11 U.S.C. § 362(a)(1), a voluntary petition for bankruptcy operates as an automatic stay of any

25   judicial actions involving the petitioners, Judge Ware stayed the proceedings and administratively

26   closed the case on August 29, 2012. ECF No. 325. In the same order, Judge Ware denied as

27

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

United States District Court
Northern District of California

4

1   premature Power's motion for reconsideration of the August 8 order requiring entry of default. *Id.*

2          On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed

3   Power's bankruptcy case and had granted Facebook's request for relief from the automatic stay in

4   Vachani's bankruptcy case. ECF No. 327. Facebook sought to reopen the instant case. *Id.*

5   Facebook also sought reassignment to a new judge because on August 31, 2012, while the

6   automatic stay was in effect, Judge Ware resigned from the bench. *Id.* On April 8, 2013, the

7   undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's

8   request. ECF No. 328. The undersigned judge ordered that the stay be lifted, the case be reopened,

9   and the case be reassigned. *Id.* The case then was reassigned to the undersigned judge. ECF No.

10  329.

11         On April 25, 2013, Vachani moved for clarification of Judge Ware's February 16, 2012

12  order regarding whether Vachani's liability had been determined in the February 16, 2012 order.

13  ECF No. 332. On April 29, 2013, Facebook filed a case management statement in which Facebook

14  again requested that default judgment be entered against Power. ECF No. 333. On the same day,

15  Defendants filed a consolidated case management statement in which Power again sought to set

16  aside default. ECF No. 334. Defendants also stated their intent to request leave to file a motion for

17  reconsideration of the February 16, 2012 order. *Id.* In Facebook's and Defendants' respective case

18  management statements, the parties acknowledged that Vachani's liability and the issues of

19  damages and injunctive relief still needed to be addressed. ECF No. 333, 334.

20         On May 2, 2013, following a case management conference, the Court issued a case

21  management order. ECF No. 340. In that order, the Court clarified that the February 16, 2012

22  order did not decide Vachani's liability. *Id.* The Court granted Power's request to set aside default

23  and denied Facebook's request for entry of default judgment against Power. *Id.* The Court also set

24  a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a hearing date of

25  September 26, 2013 to consider Vachani's liability and the issue of remedies. *Id.*

26         On August 1, 2013, Power filed its request for leave to file a motion to reconsider Judge

27

5

28  Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    Ware's February 16, 2012 order. ECF No. 353. On August 1, 2013, Facebook filed its

2    supplemental memorandum in support of its request for injunctive relief. ECF No. 354 ("Facebook

3    Injunction Brief"). On September 25, 2013, Facebook filed a supplemental motion for a

4    permanent injunction. ECF No. 369.

5         On August 7, 2013, Magistrate Judge Spero issued an order requiring Vachani to pay

6    Facebook $39,796.73 as a discovery sanction because of Vachani's noncompliance during a Rule

7    30(b)(6) deposition. ECF No. 356. Specifically, Judge Spero found that Vachani "was not

8    prepared for his Rule 30(b)(6) deposition, read from [a prepared] declaration, and was

9    'argumentative' and 'evasive.'" *Id.* at 5. In the same order, Judge Spero noted that Defendants had

10   committed another discovery violation by failing to timely disclose relevant emails. *Id.* Following

11   Judge Spero's order, Vachani immediately appealed the discovery sanction to the Ninth Circuit on

12   September 6, 2013. ECF No. 360. Despite the appeal, this Court retained jurisdiction over aspects

13   of the case unrelated to the discovery sanctions.

14        On September 25, 2013, the Court filed an Order Denying Leave to File Motion for

15   Reconsideration, Finding Defendant Steven Vachani Liable as a Matter of Law, and Granting

16   Damages and Permanent Injunctive Relief. ECF No. 373. In the order, the Court first found that

17   Defendants had not identified any new material facts, changes in law, or issues that Judge Ware

18   manifestly failed to consider in his February 16, 2012 order. The Court therefore denied leave to

19   file a motion for reconsideration of the February 16, 2012 order. *Id.* at 15. The Court also found

20   that because Vachani directed and authorized the activities at issue, Vachani was personally liable

21   for violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502 along with Power.

22   *Id.* at 17.

23        The Court then addressed the issue of damages for the first time. The Court noted that

24   under the CAN-SPAM Act, Facebook was entitled to elect between statutory damages and

25   monetary damages in the amount of actual losses. *Id.* at 22. Facebook elected to recover statutory

26   damages, and the Court ordered Defendants to pay $50 for each of 60,627 spam messages sent, for

27

28

6

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

*United States District Court*
*Northern District of California*

1  a total of $3,031,350. *Id.* at 25–26. The Court then held that Facebook was entitled to

2  compensatory damages under the CFAA. The Court held that "Facebook has established through

3  undisputed testimony that it expended $80,543 to investigate Defendants' actions and for outside

4  legal services in connection with the Defendants' actions." *Id.* at 26.

5        Finally, the Court issued a permanent injunction against Defendants. The Court found that

6  each of the applicable four factors – (1) irreparable injury, (2) no adequate remedy at law, (3)

7  balance of hardships, and (4) the public interest – favored granting a permanent injunction. *Id.* at

8  27 (citing *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006)). In doing so, the Court

9  considered Defendants' CAN-SPAM Act violations as well as Defendants' violations of the

10  CFAA and § 502. The Court granted a permanent injunction that enjoined Defendants from (1)

11  making any misleading statement in advertising, including statements that Facebook had

12  authorized a particular communication; (2) accessing Facebook's website or servers "for any

13  purpose" without Facebook's prior permission; (3) using any data obtained from the unlawful

14  conduct; and (4) developing or using any software to commit the illegal acts alleged in the

15  complaint. *Id.* at 33–34. The injunction also required Defendants to destroy all the software at

16  issue, destroy all data obtained from Facebook with the illegal software, and take measures to

17  ensure that the injunction was obeyed. *Id.* at 34. The Court entered judgment against Defendants

18  the same day, September 25, 2013. ECF No. 374.

19        On October 23, 2013, Defendants appealed the Court's grant of summary judgment. ECF

20  No. 379. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of Magistrate

21  Judge Spero's August 7, 2013 order granting discovery sanctions because the August 7, 2013

22  order was not final or appealable. ECF No. 386.

23        On December 9, 2016, the Ninth Circuit affirmed in part and reversed in part this Court's

24  grant of summary judgment. ECF No. 401. The Ninth Circuit reversed the Court's finding that

25  Defendants had violated the CAN-SPAM Act because the Ninth Circuit found that Facebook

26  initiated the email messages at issue and that the sender of the messages was not materially

United States District Court
Northern District of California

27                                                      7

28  Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

misleading within the meaning of the CAN-SPAM Act. *Id.* at 9–13. The Ninth Circuit then held that Defendants had violated CFAA, but only for the period "after receiving written notification from Facebook on December 1, 2008." *Id.* at 19. The Ninth Circuit held that by sending the December 1, 2008 notification, Facebook revoked Defendants' permission to use Facebook's computers. *Id.*

With respect to damages, the Ninth Circuit held that "[i]t is undisputed that Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions." *Id.* at 14. However, in light of the Ninth Circuit's finding that the violation began only after Facebook sent its cease and desist letter on December 1, 2008, the Ninth Circuit remanded to "calculate damages only for the period after Power received the cease and desist letter . . . ." *Id.* at 22.

After remand, the Court initially scheduled a case management conference for January 11, 2017. However, Defendants filed a motion requesting a continuance of the case management conference due to "ongoing personal considerations." ECF No. 405. The Court granted this motion and continued the case management conference to January 25, 2017. ECF No. 406. Facebook then filed a motion requesting a continuance due to scheduling problems with the January 25, 2017 date. ECF No. 407. The Court therefore continued the case management conference to February 15, 2017. ECF No. 408.

The Court held a case management conference on February 15, 2017. At the case management conference, the Court set a briefing schedule for the remanded issue of remedies. ECF No. 410. The Court also ordered Defendants to pay by March 15, 2017 the $39,796.73 discovery sanction that the Ninth Circuit affirmed.[1]

Pursuant to the briefing schedule, Facebook filed its supplemental remedies brief on March 8, 2017. ECF No. 416. On March 9, 2017, Defendants filed a petition for certiorari with the United

---

[1] Although the Ninth Circuit dismissed Vachani's earlier appeal of Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions, ECF No. 386, the Ninth Circuit later considered the issue of discovery sanctions in its December 9, 2016 order, ECF No. 401.

8

United States District Court
Northern District of California

1   States Supreme Court. ECF No. 418. Defendants failed to pay the $39,796.73 discovery sanction

2   by the March 15, 2017 deadline and still have not done so. Subsequently, on March 28, 2017,

3   Vachani filed an "urgent motion" requesting that the Court stay all district court proceedings for

4   90 days or grant a 45–60 day extension because Vachani had been unable to contact Power's

5   attorney for over a month. ECF No. 420. Vachani stated that he would likely be forced to find new

6   counsel and that it would "truly take some time to properly regroup and get new counsel up to

7   speed." *Id.* at 3. The same day, Vachani filed a letter with the Court stating that although he has

8   not paid the $39,796.73 discovery sanction, Vachani is "in compliance with this court's order"

9   because he is "in an active bankruptcy proceeding." ECF No. 421.

10          On March 29, 2017, the Court denied Vachani's motion for a stay and for an extension of

11   time. ECF No. 422. The next day, despite Vachani's claim that he had been unable to contact

12   Power's attorney for 30 days and that an extension was necessary in light of a "truly exceptional

13   emergency," ECF No. 420 at 2, Power's attorney filed a 20 page brief addressing the issue of

14   remedies, ECF No. 423. Subsequently, on April 17, 2017, Vachani filed yet another motion to stay

15   pending resolution of the writ of certiorari to the United States Supreme Court. ECF No. 434.

16          On May 2, 2017, the Court ruled on the remanded issue of damages. ECF No. 435. In

17   doing so, the Court noted that despite the Court's explicit warning, Defendants had raised several

18   issues that the Ninth Circuit had not reversed on appeal. For example, although the Ninth Circuit

19   had held that "Facebook expressly rescinded [its] permission when Facebook issued its written

20   cease and desist letter to Power on December 1, 2008," Defendants nevertheless argued

21   extensively that Facebook did not actually deny Defendants permission to use Facebook's website

22   until December 26, 2008. *Id.* at 14.

23          In ruling on the issue of remedies, the Court found that Facebook was entitled to

24   $79,640.50 in compensatory damages. This figure did not include the $3,031,350 in CAN-SPAM

25   damages that were reversed by the Ninth Circuit. This figure also did not include $902.50 in

26   damages incurred on or before December 1, 2008, when Facebook sent the cease and desist letter.

27

28

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    Instead, this figure reflected only the damages incurred by Facebook after December 1, 2008 in

2    responding to Defendants' CFAA violation.

3          The Court also issued a permanent injunction against Defendants that was narrowly

4    tailored to Defendants' CFAA violation. The injunction prohibited Defendants and anyone in

5    participation with Defendants from "[a]ccessing or using, or directing, aiding, facilitating, causing,

6    or conspiring with others to use or access the Facebook website or servers for any commercial

7    purpose, without Facebook's prior permission"; from "using any data . . . obtained as a result of

8    the unlawful conduct"; or from developing or using "any software that allows the user to engage in

9    the conduct found to be unlawful." *Id.* at 28–29. The injunction also required Defendants and

10   those in participation with Defendants to "destroy any software, script(s) or code designed to

11   access" Facebook's services and to "destroy Facebook data and/or information obtained from

12   Facebook or Facebook's users, or anything derived from such data and/or information." *Id.* at 29.

13   Finally, the injunction required Defendants within three days to "affirm that they already have

14   notified, or shall notify, their current and former officers, agents, servants, employees, successors,

15   and assigns, and any persons acting in concert or participation with them of this permanent

16   injunction" and within seven days to "certify in writing, under penalty of perjury, that they have

17   complied with the provision of this order, and state how notification of this permanent injunction .

18   . . was accomplished, including the identities of all email accounts (if any) used for notification

19   purposes." *Id.* at 29–30.

20         Finally, the Court again ordered Defendants to pay the $39,796.73 discovery sanction and

21   denied Defendants' May 1, 2017 motion to stay. *Id.* at 31. The Court issued a judgment on May 2,

22   2017. ECF No. 437.

23         On May 9, 2017, Defendants filed a letter representing compliance with the permanent

24   injunction. ECF No. 439. According to Facebook's motion for contempt, Facebook informed

25   Vachani that it did not believe that the May 9, 2017 letter was sufficient to comply with the

26   permanent injunction. In response, on May 11, 2017 Defendants filed a new letter "recalling and

27

28

United States District Court
Northern District of California

10

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

1    rescinding" the May 9, 2017 letter. ECF No. 440. In the May 11, 2017 letter, Vachani stated that

2    "[a]s defendants have different requirements, different counsel, and different interests, Defendants

3    intend to file revised letters of compliances [sic] or responses to court separately." *Id.* at 1.

4    Vachani and Power then filed separate updated letters on May 12, 2017. ECF Nos. 441–42. The

5    letter sent on behalf of Power, which Vachani drafted and signed, stated that Power has "abided by

6    all the provisions of this court's order to the best of its abilities" and that "Power has no reasons to

7    believe that it has not fully complied with all provisions." ECF No. 442. Vachani's letter on his

8    own behalf claimed that Sections 2 through 4 of the permanent injunction did not apply to

9    Vachani. *Id.* Further details of the May 11, 2017 letters are discussed below.

10          On May 16, 2017, Facebook filed the instant motion for attorney's fees and motion for

11   contempt sanctions. ECF Nos. 446–47. Defendants' oppositions to these motions were due May

12   30, 2017. *Id.* On May 31, 2017, the day after these oppositions were due, Power filed an ex parte

13   application for extensions of time to file an opposition. ECF No. 449. Power stated that this

14   extension was justified based on Power's counsel's "uncharacteristic and prohibitively

15   burdensome workload . . . ." *Id.* at 2. The Court denied this ex parte application on May 31, 2017.

16   ECF No. 450.

17          On June 1, 2017, Defendants appealed the Court's May 2, 2017 judgment to the Ninth

18   Circuit. ECF No. 451. Defendants did not move to stay execution of the judgment under Federal

19   Rule of Civil Procedure 62(b). Defendants also never timely opposed Facebook's motion for

20   attorney's fees or Facebook's motion for contempt sanctions. Facebook filed reply briefs for both

21   motions on June 6, 2017. ECF Nos. 454–55.

22          On July 14, 2017, Defendants filed a "recertification of compliance." ECF No. 462. This

23   "recertification of compliance" was essentially an untimely opposition to Facebook's motion for

24   contempt sanctions. The details of the July 14, 2017 letter are discussed below.

25          On July 28, 2017, the Court ordered Facebook to file detailed billing records and further

26   justification of its billing rates in support of Facebook's motion for attorney's fees. ECF No. 464.

27

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    Facebook filed a supplemental declaration and submitted detailed billing records for in camera

2    review on August 3, 2017. ECF No. 467.

3    **II.    DISCUSSION**

4       **A.   Motion for Attorney's Fees**

5           Facebook requests $145,028.40 in attorney's fees pursuant to California Penal Code

6    § 502(e)(2).[2] California Penal Code § 502(e)(2) states that "[i]n any action brought pursuant to this

7    subdivision the court may award reasonable attorney's fees."  This provision allows prevailing

8    Plaintiffs to recover attorney's fees for actions brought under § 502(e). *See Swearingen v. HAAS*

9    *Automation, Inc.*, 2010 WL 1495204, *2 (S.D. Cal. Apr. 14, 2010) ("[A]n examination of the

10   history of § 502 reveals that it was the intention of the California legislature to allow only

11   prevailing plaintiffs to recover attorney's fees."). Facebook brought this action under § 502(e) and

12   is a prevailing plaintiff for the purposes of determining attorney's fees. *See* California Code of

13   Civil Procedure § 1032(a)(4) ("'Prevailing party' includes the party with a net monetary recovery .

14   . . ."); *see also Farrar v. Hobby*, 506 U.S. 103, 109 (1992) ("Under our generous formulation of

15   the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they

16   succeed on any significant issue in litigation which achieves some of the benefit the parties sought

17   in bringing suit.") (internal quotation marks omitted).

18           As the prevailing party, Facebook is entitled to reasonable attorney's fees under California

19   Penal Code § 502(e)(2). Although Facebook is entitled to all reasonable attorney's fees incurred in

20   this action, Facebook requests only a small subset of those attorney's fees. Specifically, Facebook

21   requests only "a narrow recovery encompassing its attorneys' and paralegals' preparation for post-

22   remand proceedings" through April 2017. ECF No. 446 at 4. The instant motion does not request

23   attorney's fees for any other work performed in the eight years between the filing of the complaint

24

25   [2] Facebook's original motion on May 16, 2017 sought $146,667.84 in attorney's fees. ECF No.
     446. However, in Facebook's August 3, 2017 response to the Court's order regarding billing
26   records, Facebook stated that it had decided to "remove[] $1,639.44 of attorneys' fees related to
     services performed in response to Defendants' Supreme Court petition." ECF No. 467, at 1. Thus,
27   Facebook now requests only $145,028.40 in attorney's fees.

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

1  in December 2008 and the Ninth Circuit's remand in December 2016. The instant motion also

2  does not seek attorney's fees for any work performed after April 2017, including the filing of the

3  instant motions on May 16, 2017 and the replies on June 6, 2017, as well as extensive

4  correspondence with Defendants in May 2017 attempting to secure Defendants' compliance with

5  the Court's orders. *See* ECF No. 446-1, at 1 ("Billings for May 2017 have not been included.").

6  Thus, Facebook's request for attorney's fees is reasonable in light of the fact that Facebook

7  requests only a small portion of the fees to which Facebook is entitled under California Penal

8  Code § 502(e)(2).

9       Facebook requests a total of $145,028.40 in attorney's fees, which Facebook claims is

10  reasonable under the lodestar method. Under the lodestar method, a "lodestar figure is calculated

11  by multiplying the number of hours the prevailing party reasonably expended on the litigation (as

12  supported by adequate documentation) by a reasonable hourly rate for the region and for the

13  experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.

14  2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

15       Having reviewed the billing rates for and qualifications of the attorneys and paralegals

16  representing Facebook in this case, the Court finds that these rates are reasonable in light of

17  prevailing market rates in this district and that counsel for Plaintiffs have submitted adequate

18  documentation justifying those rates. Along with its motion for attorney's fees, Facebook filed two

19  declarations describing the billing rates and hours worked in the instant case. *See* Declaration of

20  Monte Cooper, ECF No. 446-1; Declaration of Neel Chatterjee, ECF No. 226-2. Specifically,

21  these declarations describe an hourly rate of ███████ for Partner I. Neel Chatterjee, an

22  hourly rate of ███ for Of Counsel Monte Cooper, an hourly rate of ████ for associate Robert

23  Uriarte, an hourly rate of ███████ for Senior Paralegal Amy Dalton, an hourly rate of

24  ███ for associate Victor Wang, and an hourly rate of ███ for Senior Paralegal Matt Leahy. *See*

25  ECF Nos. 446-1 & 446-2. Facebook filed a third declaration on August 3, 2017, providing further

26  justification for these hourly rates. *See* Declaration of Michael R. Caplan, ECF No. 467-1.

27

28

*United States District Court*
*Northern District of California*

13

1    The reasonableness of the requested rates is strongly supported by the fact that these are

2    the rates that counsel billed to Facebook and that Facebook has already paid. *See* ECF No. 446-1,

3    at 1 ("The tables below reflect the amount of legal fees expended by Facebook, Inc. specifically

4    related to services billed by Orrick, Herrington & Sutcliffe LLP after the Ninth Circuit's

5    December 2016 remand."); ECF No. 446-2, at 1 ("The tables below reflect the amount of legal

6    fees expended by Facebook, Inc. specifically related to services billed by Goodwin Procter LLP

7    after the Ninth Circuit's December 2016 remand."). Thus, the fact that this is the rate that counsel

8    actually charged Facebook "provides a market-based cross-check" for the reasonableness of the

9    fees. *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5,

10   2017).

11   Additionally, in the instant case, Magistrate Judge Spero previously evaluated similar

12   hourly rates and found them to be reasonable. *See* ECF No. 356, at 4 ("[T]he Court has reviewed

13   the hours and rates in detail and finds them to be reasonable."); *see also* ECF No. 347, at 4

14   (detailing hourly rates found reasonable). Furthermore, the Court has previously approved hourly

15   rates in a similar range for attorneys of similar experience. Specifically, in *Nitsch v. DreamWorks

16   Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017), the Court approved rates

17   of "$870 and $1,200 per hour" for lead attorneys, rates of "$275 to $750" for associates, and rates

18   of $290 or lower for paralegals. Similarly, in *In re High-Tech Employee Antitrust Litig.*, 2015 WL

19   5158730, at *9 (N.D. Cal. Sept. 2, 2015), the Court approved rates of "about $490 to $975" for

20   partners, rates of "$310 to $800" for non-partner attorneys, and rates of "about $190 to $430" for

21   support staff including paralegals. The rates for which Facebook seeks compensation in the instant

22   case are comparable to these rates. *See* ECF Nos. 446-1 & 446-2 (describing hourly rates for

23   partners, associates, and paralegals).

24   Additionally, having reviewed the declarations accompanying the motion for attorney's

25   fees, the Court finds that the hours expended are reasonable in light of the work required for post-

26   remand proceedings. This work included preparing a joint case management statement in advance

27

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

14

United States District Court
Northern District of California

1    of a case management conference, ECF No. 409; attending the case management conference, ECF

2    No. 412; filing an initial brief and a reply brief on the issue of remedies in light of the Ninth

3    Circuit's remand, ECF Nos. 416 & 424; engaging in extensive correspondence with Defendants;

4    filing a March 20, 2017 letter informing the Court of Defendants' failure to pay the discovery

5    sanction, ECF No. 419; and opposing Defendants' motion to stay pending resolution of

6    Defendants' petition for writ of certiorari, ECF No. 429. As discussed above, the reasonableness

7    of the hours worked is strongly supported by the fact that Facebook is requesting only a small

8    fraction of the total attorney's fees to which Facebook is entitled as a prevailing party. The

9    reasonableness of the fees is also strongly supported by the fact that the requested fees are fees

10    that counsel actually charged Facebook, which "provides a market-based cross-check" for the

11    reasonableness of the fees. *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9.

12          Thus, the Court finds that Facebook's request of $145,028.40 in attorney's fees is

13    reasonable and that Facebook is entitled to these fees because Facebook is the prevailing party in

14    the instant case pursuant to California Penal Code § 502(e)(2). For these reasons, the Court

15    GRANTS Facebook's motion for attorney's fees. The Court finds that Vachani and Power are

16    jointly and severally liable for the $145,028.40 attorney's fee award.

17    **B. Motion for Contempt Sanctions**

18          Civil contempt "consists of a party's disobedience to a specific and definite court order by

19    failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n.,*

20    *Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (internal quotation marks and citation

21    omitted). "The contempt need not be willful, and there is no good faith exception to the

22    requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust*

23    *Litig.*, 10 F.3d 693, 695 (9th Cir.1993) (internal quotation marks and citation omitted). However,

24    contempt sanctions are not warranted where the alleged contemnor's actions appear to be based

25    upon a reasonable interpretation of the court's order. *Id.* Substantial compliance also is a defense to

26    civil contempt—"[i]f a violating party has taken all reasonable steps to comply with the court

27

28    Case No. 08-CV-05780-LHK
       ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
       CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    order, technical or inadvertent violations of the order will not support a finding of civil contempt."

2    *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986) (internal quotation marks

3    and citation omitted). "The party alleging civil contempt must demonstrate that the alleged

4    contemnor violated the court's order by clear and convincing evidence." *Dual-Deck*, 10 F.3d at

5    695 (internal quotation marks and citation omitted). Thus, the party alleging civil contempt must

6    demonstrate by clear and convincing evidence that (1) the contemnor violated a court order, (2)

7    the noncompliance was more than technical or de minimis, and (3) the contemnor's conduct was

8    not the product of a good faith or reasonable interpretation of the violated order.  *See United States*

9    *v. Bright*, 596 F.3d 683, 694 (9th Cir. 2010) (outlining these factors); *Inst. of Cetacean Research v.*

10   *Sea Shepherd Conservation Society*, 774 F.3d 935, 945 (9th Cir. 2014) (same). "Sanctions for civil

11   contempt may be imposed to coerce obedience to a court order, or to compensate the party

12   pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Gen.*

13   *Signal Corp.*, 787 F.2d at 1380.

14        In the instant case, Facebook asks the Court to find both Power and Vachani in contempt

15   for two reasons. First, Facebook argues that Power and Vachani have failed to comply with the

16   Court's February 15, 2017 order requiring Power to pay $39,796.73 in discovery sanctions by

17   March 15, 2017. ECF No. 447 at 1. Second, Facebook argues that Power and Vachani have not

18   fully complied with the Court's May 2, 2017 permanent injunction. *Id.* The Court addresses these

19   issues in turn.

20        **1.  Discovery Sanction**

21        First, the Court addresses Defendants' failure to pay the $39,796.73 discovery sanction. At

22   the outset, the Court notes that Facebook does not seek a finding of contempt for Vachani's failure

23   to pay the discovery sanction based on Vachani's personal liability. *Id.* at 1 n.1. Instead, Facebook

24   seeks a finding of contempt against Power and against Vachani in his capacity as Power's Chief

25   Executive Officer (CEO). *Id.*

26        As discussed above, Magistrate Judge Spero issued an order on August 7, 2013 imposing

27

28

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

16

1   the discovery sanction because of Vachani's noncompliance during a Rule 30(b)(6) deposition.

2   ECF No. 356. Specifically, Judge Spero found that Vachani "was not prepared for his Rule

3   30(b)(6) deposition, read from [a prepared] declaration, and was 'argumentative' and 'evasive.'"

4   *Id.* at 5. Vachani immediately appealed the discovery sanction to the Ninth Circuit on September

5   6, 2013. ECF No. 360. On November 21, 2013, the Ninth Circuit dismissed Vachani's appeal of

6   Magistrate Judge Spero's August 7, 2013 order granting discovery sanctions because the August

7   7, 2013 order was not final or appealable. ECF No. 386.

8        The Ninth Circuit affirmed the discovery sanction in its December 9, 2016 order affirming

9   in part and reversing in part the Court's grant of summary judgment. ECF No. 401 at 22. The

10   Ninth Circuit found that Defendants had waived their right to appellate review of the issue. *Id.* The

11   Ninth Circuit also found that even if the issue was not waived, "[t]he magistrate judge's findings

12   that Vachani was unprepared, unresponsive, and argumentative and that Power Ventures had

13   failed to produce many e-mails responsive to Facebook's requests prior to discovery are supported

14   by the record." *Id.*

15        Because the Ninth Circuit affirmed the discovery sanction, at the February 15, 2017 case

16   management conference following the Ninth Circuit's remand, the Court ordered Defendants to

17   pay the $39,796.73 discovery sanction by March 15, 2017. ECF No. 410. On March 20, 2017,

18   Facebook filed a letter with the Court stating that Defendants had not yet paid the sanction. ECF

19   No. 419. On March 28, 2017, Vachani filed a letter in which he stated that Vachani personally was

20   not required to pay the sanction because of his ongoing bankruptcy proceedings. ECF No. 421. As

21   to Power, Vachani stated that Power did not have "the financial resources to pay this $39,796.73

22   immediately" and reached out to Facebook to request an extension of time. *Id.* at 4. Vachani also

23   suggested that "it might be best to wait at least 90 days so that we all have a clearer idea on the

24   final amounts owed." *Id.* Vachani requested that the Court grant a 90-day extension to make the

25   payment as well as a 90-day stay of all proceedings. *Id.*; ECF No. 420. On March 29, 2017, the

26   Court denied the request for a payment extension and the request for a stay. ECF No. 422. As part

27

28

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

of that order, the Court stated that "[t]o the extent that Facebook asserts that Defendants are not in compliance with this Court's order to pay Facebook $39,796.73 by March 15, 2017, Facebook may file a motion for contempt of Court." *Id.* at 3.

Defendants still had not paid the discovery sanction by the time the Court ruled on the remanded issue of remedies on May 2, 2017. Thus, in ruling on the issue of remedies, the Court stated that "despite being ordered three times to pay the $39,796.73 discovery sanction, Defendants have not yet done so and the Court has even invited a motion to hold Defendants in contempt of Court." ECF No. 435 at 25. The Court therefore again ordered Defendants to pay the discovery sanction. *Id.* at 30–31; ECF No. 437.

However, although the Court has ordered Defendants to pay the discovery sanction at least four times, Defendants have not yet paid the discovery sanction. ECF No. 356 (August 7, 2013 order requiring Defendants to pay discovery sanction); ECF No. 401 (affirming discovery sanction); ECF No. 410 (ordering Defendants to pay discovery sanction by March 15, 2017); ECF No. 422 (inviting motion to hold Defendants in contempt of Court); ECF No. 435 (remedies order). Defendants did not file an opposition to the motion for contempt. However, on July 14, 2017, Defendants filed a letter of "recertification of compliance" with the permanent injunction. ECF No. 462. This letter was essentially an untimely opposition to Facebook's motion for contempt sanctions. In this letter, Defendants stated that "Power Ventures is financially unable to pay the $39,796 sanctions payment that was ordered by this court on February 15, 2017. Power Ventures has not had a bank account or any incoming revenues, investment, or cash flow since 2013." *Id.* at 5.

In short, there is clear and convincing evidence that Defendants violated the court's order to pay the discovery sanction, that this noncompliance was more than technical or de minimis, and that Defendants' conduct was not the product of a good faith or reasonable interpretation of the violated order. *See Bright*, 596 F.3d at 694 (describing the factors in a contempt finding).

Thus, all three requirements for a contempt finding are met. Nevertheless, even when all

United States District Court
Northern District of California

18

1    requirements for contempt are met, "[a] party's inability to comply with a judicial order

2    constitutes a defense to a charge of civil contempt." *FTC v. Affordable Media*, 179 F.3d 1228,

3    1239 (9th Cir. 1999); *see also United States v. Bryan*, 339 U.S. 323, 330-331 (1950). However,

4    the burden is on the party against whom contempt is sought to show "categorically and in detail"

5    why the party is unable to pay. *NLRB v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th

6    Cir. 1973); *see also Cutting v. Van Fleet*, 252 F. 100, 102 (9th Cir. 1918) ("[T]he inability to pay

7    must clearly appear.").

8         Defendants have not met this burden in the instant case. For example, Defendants' July 14,

9    2017 letter states "under penalty of perjury" that "Power Ventures has not had a bank account or

10   any incoming revenues, investment, or cash flow since 2013." ECF No. 462 at 5. However,

11   Defendants do not state that Power "owns no property, real or personal, out of which [the required

12   payment] could be realized, or that it [has] no property concealed, or transferred to others, or other

13   resources out of which [it] might pay the required sum." *Cutting*, 252 F. at 102. Additionally,

14   Defendants do not state that Power has insufficient cash on hand to pay the $39,796.73 discovery

15   sanction.

16        Power's ability to pay is particularly uncertain in light of the fact that Power previously

17   filed for Chapter 11 bankruptcy, but the bankruptcy petition was dismissed on November 27,

18   2012, nearly five years ago. ECF No. 327-1. Additionally, on March 28, 2017, Defendants stated

19   that "Power will need further time to consult with its remaining interested stakeholders to

20   determine its best path forward." ECF No. 421. The March 28, 2017 letter also stated that Power

21   did not "have the financial resources to pay this $39,796.73 immediately" and therefore requested

22   a 90-day extension. *Id.* at 3. This suggests that as of March 28, 2017, Power anticipated that it

23   would be able to pay the discovery sanction within 90 days, which would have been the end of

24   June 2017. Thus, Power's financial situation may not be as straightforward as Defendants' July

25   14, 2017 letter suggests. In short, Defendants have not met their burden of showing "categorically

26   and in detail" that Power is unable to pay the $39,796.73 discovery sanction.

27

28

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    Thus, because each of the requirements for contempt is met and because Defendants have

2    not met their burden of establishing an affirmative defense, a finding of civil contempt is justified.

3    As discussed above, Facebook does not seek a contempt finding against Vachani in his personal

4    capacity. Instead, Facebook seeks a contempt finding only against Power and Vachani in his

5    capacity as CEO of Power.

6    Therefore, the Court finds that Power and Vachani, in his capacity as CEO of Power, are in

7    contempt of Court for their ongoing failure to pay the $39,796.73 discovery sanction. The Court

8    will discuss the proper contempt sanction below.

9    **2.  Permanent Injunction**

10   Next, the Court discusses Defendants' failure to comply with the permanent injunction that

11   the Court issued on May 2, 2017. Section 1 of the May 2, 2017 permanent injunction prohibited

12   Defendants and anyone in participation with Defendants from "[a]ccessing or using, or directing,

13   aiding, facilitating, causing, or conspiring with others to use or access the Facebook website or

14   servers for any commercial purpose, without Facebook's prior permission"; from "using any data .

15   . . obtained as a result of the unlawful conduct"; or from developing or using "any software that

16   allows the user to engage in the conduct found to be unlawful." *Id.* at 28–29. Section 2 of the

17   permanent injunction required Defendants and those in participation with Defendants to "destroy

18   any software, script(s) or code designed to access" Facebook's services and to "destroy Facebook

19   data and/or information obtained from Facebook or Facebook's users, or anything derived from

20   such data and/or information." *Id.* at 29. Section 3 of the injunction required Defendants within

21   three days to "affirm that they already have notified, or shall notify, their current and former

22   officers, agents, servants, employees, successors, and assigns, and any persons acting in concert or

23   participation with them of this permanent injunction." *Id.* Section 4 of the injunction required

24   Defendants within seven days to "certify in writing, under penalty of perjury, that they have

25   complied with the provision of this order, and state how notification of this permanent injunction .

26   . . was accomplished, including the identities of all email accounts (if any) used for notification

27

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

20

purposes." *Id.* at 29–30.

On May 9, 2017, Vachani filed a letter with the Court regarding his and Power's compliance with the permanent injunction. ECF No. 439. This letter was not signed under penalty of perjury. *Id.* Additionally, the letter simply stated that "Defendants hereby certify in this written letter that they have complied with all provisions of Sections 1, 2, 3, and 4 of this order to the best of their knowledge and capabilities" and that Power "ha[s] notified or shall notify" employees and agents of Power about the terms of the injunction. *Id.*

This May 9, 2017 letter was not sufficient to comply with the terms of the injunction. Section 4 of the injunction required Defendants to "certify in writing, under penalty of perjury, that they have complied with the provision of this order, and state how notification of this permanent injunction in accordance with paragraph 3 above was accomplished, including the identities of all email accounts (if any) used for notification purposes." ECF No. 435 at 29–30. However, the May 9, 2017 letter was not signed under penalty of perjury, nor did the letter specify how notification was accomplished.

After the May 9, 2017 letter, Facebook sent a letter to Defendants indicating that Facebook did not believe that the letter was sufficient to comply with the May 2, 2017 permanent injunction. In response, on May 10, 2017, Vachani sent a letter "rescinding and recalling the letter filed on May 9th." ECF No. 440. The May 10, 2017 letter also stated that "[a]s [D]efendants have different requirements, different counsel, and different interests, Defendants intend to file revised letters of compliances [sic] or responses to court separately." *Id.* On May 12, 2017, Vachani filed an "updated letter" with the Court. ECF No. 441. In the letter, Vachani claimed that Sections 2 through 4 of the permanent injunction did not apply to Vachani. *Id.* ("Sections 2,3, and 4 of the May 2nd order do not directly apply to me in an individual capacity and are specifically directed at the corporate defendant Power Ventures Inc.").

On May 12, 2017, Vachani also filed a separate letter on behalf of Power, which stated that Power has "abided by all the provisions of this court's order to the best of its abilities" and that

1   "Power has no reasons to believe that it has not fully complied with all provisions." ECF No. 442.

2   As to Section 1 of the injunction, the letter stated that "Power Ventures acknowledges this court's

3   injunction and this section requires no further action from Power Ventures Inc." *Id.* at 2. As to

4   Section 2, of the injunction, the letter stated the following:

5
6         Power Ventures Inc. represents that all employees, subsidiary companies or
        entities, affiliated or related companies and entities, assignees, and successors-in-
        interest, and those in active concert or participation with them have destroyed any
7         software, script(s) or code designed to access or interact with the Facebook
        website, Facebook users, or the Facebook service. Power further represents that it
8         has destroyed Facebook data and/or information obtained from Facebook or
        Facebook's users, or anything derived from such data and/or information.

9   *Id.* As to Section 3 of the injunction, the letter affirmed that Power had notified all agents,

10   employees, etc. in compliance with the injunction. *Id.* As to Section 4, the letter stated that on May

11   9, 2017, Power sent "a copy of this Court's May 2nd order and permanent injunction" to the email

12   addresses listed in Exhibit A. *Id.* Power also stated it will "communicate with remaining parties by

13   telephone or US mail." *Id.*

14       Facebook argues that both Vachani and Power should be found in contempt for failure to

15   comply with the May 2, 2017 permanent injunction. As discussed above, Defendants did not file a

16   timely opposition to the instant motion for contempt sanctions. However, on July 14, 2017,

17   Defendants filed a letter of "recertification of compliance" to the permanent injunction. ECF No.

18   462. This letter certified Defendants' compliance with the permanent injunction and argued against

19   the imposition of contempt sanctions. In this letter, Defendants stated the following:

20
21         [D]efendants hereby certify they have taken all necessary steps to comply with
        and implement the Permanent Injunction. Defendants have notified officers,
        agents, servants, employees, successors, and assigns, and any persons acting in
22         concert with them of the permanent injunction. Defendants, their agents, officers,
        contractors, directors, shareholders, employees, subsidiary companies or entities,
23         affiliated or related companies and entities, assignees, and successors-in-interest,
        and those in active concert or participation with them have destroyed any
24         software, script(s) or code designed to access or interact with the Facebook
        website, Facebook users, or the Facebook service, and Facebook data and/or
25         information obtained from Facebook or Facebook's users, or anything derived
        from such data and/or information. Defendants declare under the penalty of
26         perjury of the laws of the State of California that the foregoing is true and correct.

27

28   Case No. 08-CV-05780-LHK
  ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
  CONTEMPT SANCTIONS

United States District Court
Northern District of California

22

1    *Id.* at 4. The Court first addresses Power and then addresses Vachani.

2    **a.  Power**

3    Facebook argues that Power has failed to comply with the permanent injunction.

4    Specifically, Facebook claims that Power's May 12, 2017 letter, which was drafted and signed by

5    Vachani, "provides a short list of email recipients but does not provide any details as to who

6    received the notice emails or what the notice emails said. Moreover, Power's submissions do not

7    even mention what efforts Power undertook to destroy the software and scraped data underlying

8    Facebook's claims." ECF No. 447 at 7. Because of these failures, Facebook asks the Court to hold

9    Power in contempt.

10    However, no provision of the permanent injunction requires Power to "provide details"

11    about "what the notice emails said." ECF No. 447 at 7. Instead, the permanent injunction stated

12    that Power must "state how notification of this permanent injunction in accordance with paragraph

13    3 above was accomplished, including the identities of all email accounts (if any) used for

14    notification purposes." ECF No. 435 at 29–30. The May 12, 2017 letter lists the email accounts to

15    which notice was sent and also stated that Power will "communicate with remaining parties by

16    telephone or US mail." ECF No. 442 at 2. The letter also states that "on May 9th, 2017, [Power]

17    sent emails to the last known email address to all known parties listed in section 3 with a copy of

18    this court's May 2nd order and permanent injunction." ECF No. 442 at 2. Thus, Defendants have

19    certified that the notice emails contained at least a copy of the Court's May 2, 2017 order and the

20    permanent injunction. Therefore, the May 12, 2017 letter complies with the terms of the

21    permanent injunction. At the very least, the May 2, 2017 letter is in "substantial compliance" with

22    a "reasonable interpretation" of the permanent injunction. *Bright*, 596 F.3d at 694.

23    Similarly, although Facebook complains that the May 12, 2017 letter does not describe

24    "what efforts Power undertook to destroy the software and scraped data," there is no provision of

25    the permanent injunction that requires Power to describe these efforts. ECF No. 447 at 7. Instead,

26    the permanent injunction requires only that Power certify under penalty of perjury that it has

27

28    Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

United States District Court
Northern District of California

1  complied with the provisions of the permanent injunction.[3] Except for a requirement that

2  Defendants describe how notice of the permanent injunction was accomplished, there is no

3  requirement that Defendants describe *how* they complied with the permanent injunction.

4  　　Although the Court is sympathetic to Facebook's concerns that Power may attempt to

5  "skirt the Permanent Injunction's requirements," Facebook has not presented "clear and

6  convincing evidence" that Power is violating the terms of the permanent injunction. ECF No. 447

7  at 7. Power has certified under penalty of perjury that it has complied with the permanent

8  injunction, and although this certification of compliance is not detailed, it meets the requirements

9  of Section 4 of the permanent injunction. If this certification of compliance is knowingly false,

10  Power and Vachani may be subject to prosecution for perjury. However, Facebook has not

11  produced "clear and convincing evidence" of noncompliance that is more than de minimis and is

12  not the product of a "reasonable interpretation" of the permanent injunction.

13  　　For these reasons, the Court finds that a contempt finding is not warranted against Power

14  based on failure to comply with the permanent injunction.

15  　　**a.  Vachani**

16  　　Vachani's May 12, 2017 letter to the Court stated that Vachani acknowledged Section 1 of

17  the permanent injunction, but that "Sections 2, 3, and 4 of the May 2nd order do not directly apply

18  to me in an individual capacity and are specifically directed at the corporate defendant Power

19  Ventures Inc." ECF No. 441. However, this is inaccurate. The May 2, 2017 permanent injunction

20  did not distinguish between Vachani and Power. Specifically, Sections 2, 3, and 4 each stated that

21  "Defendants" shall comply with their terms. ECF No. 435, at 29–30 ("Defendants . . . shall destroy

22  any software . . . ."); *id.* ("Defendants shall affirm that they have already notified . . . ."); *id.*

23  ("Defendants shall certify in writing . . . .").

24

25

26

27

---

[3] The permanent injunction did require Defendants to certify compliance within seven days of the May 2, 2017 order. ECF No. 435 at 29–30. Thus, Defendants' May 12, 2017, and July 14, 2017 did not comply with this deadline. However, Facebook does not seek a finding of contempt based on the untimeliness of the letters.

24

28  Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

1    Thus, Vachani's refusal to certify that he has personally complied with Sections 2, 3, and 4

2    of the permanent injunction violates the terms of the Court's May 2, 2017 order. Particularly,

3    Vachani's failure to certify compliance with Section 3 raises the possibility that Vachani

4    personally has possession of "script(s) or code designed to access or interact with the Facebook

5    website" or "data and/or information obtained from Facebook." ECF No. 435 at 29. Therefore, at

6    the time that Facebook filed its motion for contempt sanctions on May 16, 2017, Vachani was in

7    contempt of court for failing to certify compliance with all provisions of the permanent injunction.

8    However, in Defendants' July 14, 2017 letter, Vachani states generally that both

9    Defendants "have destroyed any software, script(s) or code designed to access or interact with the

10   Facebook website, Facebook users, or the Facebook service, and Facebook data and/or information

11   obtained from Facebook or Facebook's users, or anything derived from such data and/or

12   information." ECF No. 462 at 4. The July 14, 2017 letter also states that "Defendants have notified

13   officers, agents, servants, employees, successors, and assigns, and any persons acting in concert

14   with them of the permanent injunction." *Id.* Thus, the July 14, 2017 letter suggests that Vachani in

15   his personal capacity has certified compliance with the permanent injunction.

16   Nevertheless, Vachani has not withdrawn his earlier statement that Sections 2, 3, and 4 of

17   the permanent injunction do not apply to Vachani personally. In short, there is tension between

18   Vachani's May 12, 2017 letter, which denies that portions of the permanent injunction apply to

19   Vachani personally, and Vachani's July 14, 2017 letter, which appears to certify that both

20   Defendants have complied with each section of the permanent injunction. However, although there

21   is some doubt about Vachani's compliance with the permanent injunction, there is not clear and

22   convincing evidence of noncompliance.

23   Therefore, in light of Vachani's July 14, 2017 letter certifying compliance, the Court finds

24   that there is not clear and convincing evidence that Vachani has failed to comply with the May 2,

25   2017 permanent injunction.[4] Thus, a contempt finding against Vachani is not warranted at this

26

27   [4] As discussed above, Defendants' May 12, 2017, and July 14, 2017 were untimely. However,

25

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    stage. However, in order to clarify whether Vachani is compliant with the permanent injunction,

2    the Court ORDERS that within five days of the instant order, Vachani shall file a certification in

3    writing, under penalty of perjury, that all sections of the permanent injunction apply to Vachani

4    personally. Vachani shall also explicitly certify his compliance in his personal capacity with each

5    section of the permanent injunction. If Vachani fails to file this certification within five days, the

6    Court may find Vachani in contempt of court and order additional sanctions.

7        **3.  Contempt Sanctions**

8            As discussed above, the Court holds that Power and Vachani, in his capacity as CEO of

9    Power, are in contempt of court for failing to pay the $39,796.73 discovery sanction. The Court

10   now considers the proper contempt sanction.

11           Facebook requests a fine of $500 per day of noncompliance as well as an award of

12   attorney's fees for the instant motion. Thus, attorney's fees are justified because "the cost of

13   bringing the violation to the attention of the court is part of the damages suffered by the prevailing

14   party . . . ." *Id.*; *see also Gen. Signal Corp.*, 787 F.2d at 1380 ("Compensatory awards are limited

15   to actual losses sustained as a result of the contumacy."). The instant motion was necessary to

16   "bring a violation of an order to the court's attention." *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th

17   Cir. 1985). Specifically, the instant motion was necessary to inform the Court of Defendants'

18   ongoing failure to pay the discovery sanction. Additionally, as discussed above, at the time of

19   Facebook's motion for contempt sanctions, Vachani was in contempt for failing to certify

20   compliance with the injunction in his personal capacity, and the instant motion was necessary to

21   bring this failure to the Court's attention. Therefore, an attorney's fees award is justified. As

22   discussed above, Facebook has filed a companion motion for attorney's fees along with the instant

23   motion. The Court has granted this motion. In the motion for attorney's fees, Facebook has chosen

24   not to request fees for any work performed after April 2017. *See* ECF No. 446-1, at 1 ("Billings

25   for May 2017 have not been included.").

26

27   Facebook does not seek a finding of contempt based on the untimeliness of the letters.

26

28   Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

United States District Court
Northern District of California

1    As to the requested fine, the Ninth Circuit has held that a "per diem fine imposed for each

2    day a contemnor fails to comply with an affirmative court order" is a "paradigmatic civil contempt

3    sanction[]." *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999); *NLRB v. Ironworkers Local

4    433*, 169 F.3d 1217, 1222 (9th Cir. 1999) (describing per diem fines as a method of "coercing

5    future compliance" with court orders). Facebook argues that a $500 per day fine is appropriate in

6    coercing compliance. *See, e.g.*, *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999)

7    (upholding $500 per day coercive sanction for failing to comply with subpoena); *United States v.

8    Bright*, 2009 U.S. Dist. LEXIS 15915, *40 (D. Haw. 2009) (issuing $500 per day coercive

9    sanction until party produced documents); *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166

10   (7th Cir. 1997) (discussing $300 per day coercive sanction until defendants complied with order to

11   pay for previous sanctionable misconduct).

12   However, the Ninth Circuit has held that "a district court should apply the least coercive

13   sanction (e.g., a monetary penalty) reasonably calculated to win compliance with its orders."

14   *United States v. Alfredoflores*, 628 F.2d 521, 527 (9th Cir. 1980) (internal quotation marks

15   omitted). In light of the fact that the Court has not found contempt based on the permanent

16   injunction and the fact that Defendants appear to have few assets, the Court finds that a $500 per

17   day fine is not "the least coercive sanction . . . reasonably calculated to win compliance." *Id.*

18   Although higher awards are sometimes appropriate, the Ninth Circuit and other courts have found

19   that a fine in the amount of $100–$200 per day is proper and proportional in coercing compliance.

20   *See In re Rubin*, 172 F.3d 876 (9th Cir. 1999) (unpublished) (affirming $100 per day contempt

21   fine); *In re E. W. Const. Co., Inc.*, 21 F.3d 1112 (9th Cir. 1994) (same); *Rich v. Kirkland*, 2016

22   WL 199390, at *4 (C.D. Cal. Jan. 15, 2016) (ordering $200 per day contempt sanction). The Court

23   finds that a $100 per day coercive sanction is warranted in the instant case.

24   Courts may also apply grace periods before coercive sanctions go into effect. *See Ayres*,

25   166 F.3d at 994 (upholding order providing for ten-day grace period); *Donovan v. Mazzola*, 761

26   F.2d 1411, 1416 (9th Cir. 1985) (discussing month-long grace period). The Court finds that a short

27

28   Case No. 08-CV-05780-LHK
     ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
     CONTEMPT SANCTIONS

United States District Court
Northern District of California

five-day grace period is warranted in the instant case.

The Court therefore ORDERS that after a five-day grace period beginning on the date of this order, for each day that Power does not pay the $39,796.73 discovery sanction, $100 shall be added to the amount owed.

**III.   CONCLUSION**

For the foregoing reasons, the Court makes the following rulings:

The Court GRANTS Facebook's motion for attorney's fees. The Court finds that Vachani and Power are jointly and severally liable for the $145,028.40 attorney's fee award.

In order to clarify whether Vachani is compliant with the permanent injunction, the Court ORDERS that within five days of the instant order, Vachani shall file a certification in writing, under penalty of perjury, that all sections of the permanent injunction apply to Vachani personally and that Vachani personally has complied with each section of the permanent injunction.

The Court also finds that Power and Vachani, in his capacity as CEO of Power, are in contempt of Court for their ongoing failure to pay the $39,796.73 discovery sanction. The Court therefore ORDERS that after a five-day grace period beginning on the date of this order, for each day that Power does not pay the $39,796.73 discovery sanction, $100 shall be added to the amount owed.

**IT IS SO ORDERED.**

Dated: August 8, 2017

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

28

Case No. 08-CV-05780-LHK
ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND GRANTING IN PART MOTION FOR
CONTEMPT SANCTIONS

Case5:08-cv-05780-LHK    Document372 *SEALED*    Filed09/25/13    Page1 of 34

SEALED BY ORDER OF THE COURT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | | |
|---|---|---|
| FACEBOOK, INC., | ) | Case No.: 08-CV-5780-LHK |
| Plaintiff, | ) | |
| v. | ) | ORDER DENYING LEAVE TO FILE |
| | ) | MOTION FOR RECONSIDERATION, |
| POWER VENTURES, INC., a Cayman Island | ) | FINDING DEFENDANT STEVEN |
| corporation, and STEVE VACHANI, an | ) | VACHANI LIABLE AS A MATTER OF |
| individual, | ) | LAW, AND GRANTING DAMAGES |
| | ) | AND PERMANENT INJUNCTIVE |
| Defendants. | ) | RELIEF |
| | ) | |

Defendant Power Ventures, Inc. ("Power Ventures") and Defendant Steve Vachani

("Vachani") (collectively, "Defendants") request leave to file a motion for reconsideration of the

February 16, 2012 summary judgment order issued by Judge James Ware.  Plaintiff, Facebook, Inc.

moves for statutory and compensatory damages, permanent injunctive relief, and a grant of

summary judgment holding that Vachani is personally liable for violations of the Controlling the

Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C

§ 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; and California Penal

Code § 502.  Pursuant to Civil Local Rule 7-1(b), the Court finds a hearing unnecessary for

1

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    resolution of these matters and accordingly VACATES the hearing and case management

2    conference set for September 26, 2013.  Having considered Defendants' papers and the record in

3    this case, Defendants' request for leave to file a motion for reconsideration is DENIED.  Plaintiff's

4    motion for statutory and compensatory damages, motion for permanent injunctive relief, and

5    motion for summary judgment on the issue of Vachani's personal liability are GRANTED.  The

6    Court proceeds to discuss each issue in turn.

7    **I.     BACKGROUND**

8       **A.     Factual Background**

9          Facebook owns and operates the eponymous social networking website located at

10   facebook.com.  First Amended Complaint ("FAC") ¶ 2.  Power Ventures is a corporation

11   incorporated in the Cayman Islands and doing business in California.  Answer ¶ 10.  It operates the

12   website www.power.com, which offers to integrate users' various social media accounts into a

13   single experience.  FAC ¶ 5; Answer ¶ 5.  Vachani is the Chief Executive Officer of power.com.

14   Answer ¶ 11.

15        Facebook brought this action against Defendants in December 2008, alleging violations of

16   the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-

17   SPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030;

18   California Penal Code § 502; and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §

19   1201; copyright infringement under 17 U.S.C. § 101; trademark infringement under 15 U.S.C. §§

20   1114 and 1125(a) and California law; and violations of California Business and Professions Code

21   Section 17200.  ECF Nos. 1, 9.  Facebook complains that Defendants employ Facebook's

22   proprietary data without its permission by inducing Facebook users to provide their login

23   information and then using that information to "scrape" Facebook's proprietary material.  FAC ¶¶

24   49, 50, 52.  Defendants then display Facebook's material on power.com.  FAC ¶ 52.  Facebook

25   asserts that it never gave Defendants permission to use its material in this way.  FAC ¶ 54.

26        Facebook also accuses Defendants of sending unsolicited and deceptive email messages to

27   Facebook users.  FAC ¶¶ 65-69.  To launch their site, Defendants promised power.com users a

28   Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

2

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page3 of 34

United States District Court
For the Northern District of California

1    chance to win $100 if they invited and signed up the most new users to Defendants' site.  FAC ¶

2    65.  Defendants provided to their users a list of the users' Facebook friends from which the users

3    could choose people to whom to send the invitation.  FAC ¶ 66.  Power.com sent unsolicited

4    commercial emails to those friends that included on the "from" line a "@facebookmail.com"

5    address.  FAC ¶¶ 66, 68.  The content of the message included a line that the message was from

6    "The Facebook Team."  FAC ¶ 69, 70.  Facebook contends that it never gave permission to send

7    these messages and that the emails were deceptive because they "do not properly identify the

8    initiators of the messages, nor do they provide clear or conspicuous notice that the messages are

9    advertisements for" power.com.  FAC ¶ 71.

10        **B.    Procedural Background**

11        On February 18, 2011, Judge Ware granted the parties' stipulation to dismiss Facebook's

12   DMCA claim, copyright and trademark infringement claims, and claims for violations of California

13   Business and Professions Code Section 17200.  ECF No. 97.  On May 9, 2011, Defendants moved

14   for summary judgment on Facebook's CFAA, Section 502, and CAN-SPAM Act claims.  ECF No.

15   98.  On November 17, 2011, Facebook moved for summary judgment on Facebook's § 502 and

16   CFAA claims.  ECF No. 214 ("§ 502/CFAA Motion").  On November 18, 2011, Facebook moved

17   for summary judgment on Facebook's CAN-SPAM Act claim.  ECF No. 215 ("CAN-SPAM

18   Motion").  On February 16, 2012, Judge Ware issued an order denying Defendants' motion for

19   summary judgment and granting summary judgment in Facebook's favor as to Facebook's § 502,

20   CFAA, and CAN-SPAM Act claims.  ECF No. 275 ("February 16 order").

21        In the February 16 order, Judge Ware requested additional briefing regarding Vachani's

22   individual liability and the amount of damages Facebook should receive in light of the February 16

23   order.  *Id.* at 19.  On March 30, 2012, Facebook filed its supplemental brief regarding damages and

24   the liability of Vachani.  ECF No. 299 ("Facebook Damages/Liability Brief").  The same day,

25   Defendants lodged with the court a brief regarding damages and the liability of Vachani.  ECF No.

26   288 ("Defendants' Damages/Liability Brief").  On August 15, 2012, Vachani also submitted a

27

28
                                                          3
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page4 of 34

1   supplemental brief regarding damages and his personal liability. ECF No. 317 ("Vachani

2   Damages/Liability Brief").

3       On June 4, 2012, the attorneys representing Vachani and Power Ventures moved to

4   withdraw as counsel. ECF Nos. 302, 303. On July 2, 2012, Judge Ware granted the motions to

5   withdraw. ECF No. 306. In the order granting the withdrawal requests, Judge Ware required

6   Vachani and Power Ventures to file Notices of Identification of Substitute Counsel no later than

7   July 17, 2012. *Id.* Judge Ware noted that although Vachani could proceed *pro se*, Power Ventures

8   had to be represented by a member of the bar pursuant to Civil L.R. 3-9(b). *Id.* Judge Ware

9   cautioned Defendants that a failure to file timely Notices of Identification of Substitute Counsel

10  may result in default of the case. *Id.*

11      On July 19, 2012, after neither Vachani nor Power Ventures had filed a Notice of

12  Identification of Substitute Counsel, Judge Ware ordered both parties to appear on August 6, 2012

13  to respond to an Order to Show Cause regarding Defendants' failure to obtain counsel. ECF No.

14  308. On August 6, 2012, the parties appeared for the hearing, and on August 8, 2012, Judge Ware

15  issued an order regarding Defendants' failure to obtain counsel ("August 8 order"). ECF No. 313.

16  Because Power Ventures had failed to identify replacement counsel, Judge Ware found good cause

17  to strike Power Ventures' answer to Facebook's complaint and enter default against Power

18  Ventures. *Id.* Judge Ware permitted Vachani a short extension to find new counsel, which was

19  conditioned on Vachani's immediate filing of a Notice of Self-Representation. *Id.* The Clerk

20  entered default against Power Ventures on August 9, 2012. ECF No. 314.

21      On August 15, 2012, new counsel filed a Notice of Appearance on behalf of Power

22  Ventures. ECF No. 316. That same day, Power Ventures moved for leave to file a motion for

23  reconsideration of Judge Ware's August 8 order requiring entry of default against Power Ventures.

24  ECF No. 318. Judge Ware gave Power Ventures leave to file the motion for reconsideration on

25  August 21, 2012. ECF No. 320. On August 23, 2012, Power Ventures filed its motion for

26  reconsideration. ECF No. 321. On August 27, 2012, Facebook filed its response and

27  simultaneously requested entry of default judgment against Power Ventures. ECF No. 322.

28
4
Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page5 of 34

United States District Court
For the Northern District of California

1    On August 27, 2012, Defendants provided notice that both Power Ventures and Vachani

2    had filed for bankruptcy. ECF Nos. 323, 324. Noting that pursuant to 11 U.S.C. § 362(a)(1), a

3    voluntary petition for bankruptcy operates as an automatic stay of any judicial actions involving the

4    petitioners, Judge Ware stayed the proceedings and administratively closed the case on August 29,

5    2012. ECF No. 325. In the same order, Judge Ware denied as premature Power Ventures' motion

6    for reconsideration of the August 8 order requiring entry of default. *Id.*

7    On March 20, 2013, Facebook notified the Court that the Bankruptcy Court had dismissed

8    Power Ventures' bankruptcy case and had granted Facebook's request for relief from the automatic

9    stay in Vachani's bankruptcy case. ECF No. 327. Facebook sought to reopen the case. *Id.*

10   Facebook also sought reassignment to a new judge because on August 31, 2012, while the

11   automatic stay was in effect, Judge Ware resigned from the bench. *Id.* On April 8, 2013, the

12   undersigned judge, as the Duty Judge at the time Facebook filed its motion, granted Facebook's

13   request. ECF No. 328. The undersigned judge ordered that the stay be lifted, the case be reopened,

14   and the case be reassigned. *Id.* The case then was reassigned to the undersigned judge. ECF No.

15   329.

16   On April 25, 2013, Vachani moved for clarification of the February 16 order regarding

17   whether Vachani's liability had been determined in the February 16 order. ECF No. 332. On April

18   29, 2013, Facebook filed a case management statement in which Facebook again requested that

19   default judgment be entered against Power Ventures. ECF No. 333. On the same day, Defendants

20   filed a consolidated case management statement in which Power Ventures again sought to set aside

21   default. ECF No. 334. Defendants also stated their intent to request leave to file a motion for

22   reconsideration of the February 16 order. *Id.* In Facebook's and Defendants' respective case

23   management statements, the parties acknowledged that Vachani's liability and the issues of

24   damages and injunctive relief still need to be addressed. ECF No. 333, 334.

25   On May 2, 2013, following a case management conference, the Court issued a case

26   management order. ECF No. 340. In that order, the Court clarified that the February 16 order did

27   not decide Vachani's liability. *Id.* The Court granted Power Ventures' request to set aside default

28
5
Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

Case: 17-16161, 05/31/2018, ID: 10892532, DktEntry: 31-1, Page 39 of 111

Case5:08-cv-05780-LHK Document372 *SEALED* Filed09/25/13 Page6 of 34

United States District Court
For the Northern District of California

and denied Facebook's request for entry of default judgment against Power Ventures. *Id.* The Court also set a briefing schedule for the damages and injunctive relief issues. *Id.* The Court set a hearing date of September 26, 2013 to consider Vachani's liability, as well as the remedies issues. *Id.*

On August 1, 2013, Power Ventures filed its request for leave to file a motion to reconsider the February 16 order. ECF No. 353. On August 1, 2013, Facebook filed its supplemental memorandum in support of its request for injunctive relief. ECF No. 354 ("Facebook Injunction Brief"). On August 15, 2013, Defendants filed a response to Facebook's request for injunctive relief. ECF No. 357 ("Defendants' Inj. Opp.") On August 22, 2013, Facebook filed its reply. ECF No. 358 ("Facebook Injunction Reply").[1]

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

Pursuant to Civil Local Rule 7–9, "[b]efore the entry of a judgment adjudicating all of the claims and the rights and liabilities of all the parties in a case, any party may make a motion before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any interlocutory order made by that Judge on any ground set forth in Civil L.R. 7–9(b). No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civil Local Rule 7-9(b) provides three grounds for reconsideration of an interlocutory order:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

[1] Vachani has appealed Magistrate Judge Joseph Spero's order granting Facebook fees and costs for Vachani's second Rule 30(b)(6) deposition, which Judge Spero granted because of Defendants' misconduct during discovery. ECF No. 356 (Order granting fees); ECF No. 360 (Notice of Appeal by Vachani). Vachani's appeal does not divest this Court of jurisdiction over the issues resolved in this order because the filing of a notice of appeal divests the district court of jurisdiction only over the matters appealed. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) ("A notice of appeal only transfers jurisdiction to the appellate court over matters contained in the appeal."); *Donovan v. Mazzola*, 761 F.2d 1411 (9th Cir. 1985) ("Appeal of one order does not necessarily deprive the district court of jurisdiction over issues not raised in that order.").

6

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

SER34

(2)  The emergence of new material facts or a change of law occurring after the time of such order; or

(3)  A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Rule 7-9(c) further requires that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." In general, motions for reconsideration should not be frequently made or freely granted. *See generally Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981).

**B.  Summary Judgment Regarding Liability of Vachani**

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id.* at 249-50. (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. It "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 310 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).

United States District Court
For the Northern District of California

7

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page8 of 34

1    Once the moving party has satisfied its initial burden of production, the burden shifts to the

2    nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

3    **C.    Permanent Injunctive Relief**

4         A party seeking a permanent injunction must make a four-part showing: (1) that it has

5    suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

6    inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

7    plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

8    be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

9    390 (2006).

10   **III.    ANALYSIS OF DEFENDANTS' MOTION FOR RECONSIDERATION**

11        Defendants proffer three grounds in support of their request for reconsideration, notably

12   none of which arise out of a material difference in fact or law either at the time the February 16

13   order was issued or in the intervening period. Defendants instead assert that the February 16 order

14   represents a "manifest failure" to consider "material facts or dispositive legal arguments which

15   were presented" and that the order includes "conclusions of law counter to precedent controlling

16   authorities." Mot. Recons. at 2. In support of their position, Defendants argue that (1) the

17   February 16 order incorrectly applied the law by finding that the email messages were materially

18   misleading; (2) the order incorrectly considered the issue of data ownership under the CFAA and §

19   502 claims; and (3) the order incorrectly classified Facebook's damages in determining that

20   Facebook had standing to litigate its claims. Mot. Recons. at 3.

21   **A.    Materially Misleading Emails**

22        Defendants argue that the February 16 order incorrectly applied the law by finding that the

23   email messages Defendants caused to be sent to Facebook users were materially misleading.

24   Defendants assert that the header information was not materially misleading because within the

25   body of the email, Defendants were identified and because no one complained about being misled.

26   Mot. Recons. at 3-4.

27

28   8

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    To establish liability under the CAN-SPAM Act, Facebook had to establish that

2  Defendants' emails were materially misleading. 15 U.S.C. § 7704(a)(1). The Act provides that

3  "[i]t is unlawful for any person to initiate the transmission, to a protected computer of a

4  commercial electronic mail message . . . that contains, or is accompanied by, header information

5  that is materially false or materially misleading." *Id.* The Act defines "materially" "when used

6  with respect to false or misleading header information" to include:

7    the alteration or concealment of header information in a manner that would impair
8    the ability of an Internet access service processing the message on behalf of a
     recipient, a person alleging a violation of this section, or a law enforcement
9    agency to identify, locate, or respond to a person who initiated the electronic mail
     message or to investigate the alleged violation, or the ability of a recipient of the
10   message to respond to a person who initiated the electronic message.

11  15 U.S.C. § 7704(a)(6).

12    Defendants' arguments fail to meet the standard for reconsideration for three reasons. First,

13  Defendants presented essentially the same arguments to Judge Ware in their opposition to

14  Facebook's CAN-SPAM Motion. ECF No. 239. In Defendants' opposition to the CAN-SPAM

15  Motion, Defendants asserted that the header information was not materially misleading because

16  Facebook in fact had generated the emails and because no one complained about being misled.

17  ECF No. 239 at 11-12. The significant overlap in the arguments alone warrants denial of

18  Defendants' request. Moreover, to the extent Defendants failed to present these arguments in

19  Defendants' opposition to Facebook's CAN-SPAM Motion, Defendants have provided no reason

20  why they could not have done so at that time.

21    Second, Judge Ware considered Defendants' arguments in his order. In the February 16

22  order, Judge Ware addressed whether the "from" line in the emails rendered the emails materially

23  misleading as required under the CAN-SPAM Act. ECF No. 275 at 13. Judge Ware also

24  addressed Defendants' argument that the body of the email corrected any misrepresentation in the

25  header information. *Id.* Judge Ware therefore did not manifestly fail to consider Defendants' legal

26  theories or material facts.

27

28

9

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page10 of 34

1      Third, Judge Ware's consideration of Defendants' argument was not clear error. The

2   February 16 order correctly states that a false or misleading statement is considered material if "the

3   alteration or concealment of header information" would impair the ability of an Internet Service

4   Provider ("ISP") or the recipient of the email to "identify, locate, or respond to a person who

5   initiated the electronic mail message." 15 U.S.C. § 7704(a)(6). The parties did not dispute that the

6   "from" line of the emails Defendants caused to be sent listed the address "@facebookmail.com."

7   ECF No. 375 at 13. Judge Ware found that the "@facebookmail.com" failed to provide the

8   recipient with an ability to identify, locate, or respond to Defendants. ECF No. 275 at 13. As a

9   result, Judge Ware concluded that the headers were materially misleading as defined by the statute.

10  *Id.* Judge Ware did not, as Defendants argue, hold that misleading header information is a per se

11  violation of the CAN-SPAM Act.

12      Defendants have failed to meet their burden for leave to request reconsideration of the

13  February 16 order on this issue.

14  **B.    Violations Under the CFAA and § 502**

15      Defendants next argue that reconsideration of the February 16 order is warranted because

16  Judge Ware failed to address whether the information Defendants took from Facebook had value.

17  Mot. Default J. at 4-5. Defendants assert that a determination of value was necessary because

18  violations under the CFAA and § 502 require a showing that the taken information had value. *Id.*

19  The Court first addresses Defendants' CFAA argument.

20      The CFAA prohibits several types of activities involving fraud and unauthorized access to

21  protected computers. 18 U.S.C. § 1030(a)(1)-(7). The CFAA provides a civil cause of action for a

22  violation of any of its provisions. Specifically, the CFAA provides that "[a]ny person who suffers

23  damage or loss by reason of a violation of this section [i.e. Section 1030] may maintain a civil

24  action against the violator to obtain compensatory damages and injunctive relief or other equitable

25  relief." 18 U.S.C. § 1030(g).

26      Notably, the CFAA defines "loss" and "damage" separately from the actions prohibited

27  under the CFAA. *See* 18 U.S.C. § 1030(a)(1)-(7) (describing prohibited activities); § 1030(e)(8)

28
                                            10
    Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK    Document372 *SEALED*    Filed09/25/13    Page11 of 34

1    (defining "damage"); § 1030(e)(11) (defining "loss").  The Court addresses in this section only the

2    violations of the CFAA that serve as the basis of Facebook's CFAA cause of action and addresses

3    the "damage or loss" requirement in Section C below.

4        In Facebook's § 502/CFAA Motion, Facebook alleged that Defendants had violated both

5    18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(a)(4).  Either violation could serve as the basis for

6    Facebook's CFAA cause of action.  Section 1030(a)(2)(C) prohibits a person from "intentionally

7    access[ing] a computer without authorization or exceed[ing] authorized access, and thereby

8    obtain[ing] . . . information from any protected computer."  Section 1030(a)(4) meanwhile

9    prohibits a person from:

10        knowingly and with intent to defraud, access[ing] a protected computer without
          authorization, or exceed[ing] authorized access, and by means of such conduct
11        further[ing] the intended fraud and obtain[ing] anything of value, unless the object
          of the fraud and the thing obtained consists only of the use of the computer and
12        the value of such use is not more than $5,000 in any 1-year period.

13    Notably, while Section 1030(a)(4) prohibits unauthorized access to a protected computer that

14    results in obtaining "anything of value," Section 1030(a)(2)(C) prohibits unauthorized access that

15    results in obtaining only "information."  Thus, Section 1030(a)(2)(C) does not require a showing

16    that the taken information had value.

17        In the February 16 order, Judge Ware determined that Defendants had violated Section

18    1030(a)(2)(C).  ECF No. 275 at 17-18.  In his analysis, Judge Ware found that an admission by

19    Defendants that Defendants had taken, copied, or used data from Facebook's site established that

20    Defendants had "obtain[ed] information" from Facebook, as required to establish a violation under

21    Section 1030(a)(2)(C).  ECF No. 275 at 18.  Because Judge Ware found a violation of the CFAA

22    under Section 1030(a)(2)(C), Judge Ware did not need to address Facebook's alternative argument

23    that Defendants had also violated Section 1030(a)(4), which would require a showing that the taken

24    information had value.  Accordingly, as Defendants correctly point out, Judge Ware in the

25    February 16 order did not explicitly analyze whether the taken information had value.  Thus,

26    Defendants' argument is meritless.  Defendants have not shown that Judge Ware manifestly failed

27    to consider a dispositive legal argument or that Judge Ware clearly erred.

28                                        11
      Case No.: 08-CV-5780-LHK
      ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
      VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
      RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page12 of 34

1       Defendants' arguments regarding § 502(c) likewise are unavailing. Section 502(c)

2    prohibits, among other things, a person from "knowingly access[ing] and without permission

3    tak[ing], cop[ying] or ma[king] use of any data from a computer, computer system or computer

4    network." Cal. Penal Code § 502(c)(2). Section 502(e)(1) confers standing for a civil cause of

5    action on an "owner or lessee of the . . . data who suffers damage or loss by reason of a violation of

6    any of the provisions of subdivision (c)." In Section C below, the Court addresses the "damage or

7    loss" requirement.

8       Judge Ware determined that Defendants' admission established that Defendants had

9    violated § 502(c), and Judge Ware further determined that Facebook had suffered a loss as a result

10   of that violation. ECF No. 275 at 14-15; ECF No. 89 at 8. As with Section 1030(a)(2)(C) of the

11   CFAA, the plain language of § 502(c) does not require that any data that was taken be valuable.

12   Defendants offered no case law in their opposition to Facebook's § 502/CFAA Motion and do not

13   offer any case law in this motion suggesting that § 502(c) requires that the data that was taken be

14   valuable. *See* ECF No. 242 at 4-5; Mot. Default. J. at 5. Thus, Defendants have not shown that

15   Judge Ware's finding that Defendants were liable under § 502(c) reflects a manifest failure to

16   consider a dispositive legal theory or clear error.

17      Defendants also include a new argument in the motion for leave to seek reconsideration that

18   because Defendants did not destroy any information or data Defendants are not liable under the

19   CFAA or § 502.[2] Mot. Default J. at 5. Nothing in the plain language of either Section

20   1030(a)(2)(C) or § 502 requires that taken information be destroyed, and Defendants do not point

21   to any case law suggesting otherwise. Furthermore, Defendants do not explain why Defendants did

22   not or could not raise the new argument in their opposition to Facebook's § 502/CFAA Motion.

23   The Court thus finds Defendants' new argument is not grounds for leave to request reconsideration.

24   **C.**    **Standing**

25

26   [2] Defendants also assert that Facebook never had ownership over the information and that the information did not have proprietary value. Mot. Recons. at 5. The Court finds these arguments to be duplicative of arguments that Defendants presented to Judge Ware in their opposition to Facebook's Section 502/CFAA Motion. The Court thus finds these arguments do not constitute grounds for leave to seek reconsideration.

27

                     12

28   Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page13 of 34

1    Defendants finally argue that Judge Ware erred in finding that Facebook had established

2    sufficient harm to have standing under the CAN-SPAM Act, § 502, and the CFAA. Mot. Recons.

3    at 5-6. Defendants have not made the requisite showing to justify reconsidering the February 16

4    order.

5    **1.    CAN-SPAM Act**

6    To recover under the CAN-SPAM Act, Facebook had to establish that it was "adversely

7    affected by a violation of . . . or a pattern or practice that violates" the Act. 15 U.S.C. § 7706(g)(1).

8    In *Gordon v. Virtumundo, Inc.*, the Ninth Circuit held that to be "adversely affected" under the

9    CAN-SPAM Act, an ISP must experience harm that is "both real and the type experienced by

10   ISPs." 575 F.3d 1040, 1053 (9th Cir. 2009).

11   In this motion, Defendants argue that Facebook's harm evidence fails to meet the standard

12   under *Gordon*. Defendants' argument, however, is recycled from the argument Defendants made

13   before Judge Ware in opposition to Facebook's CAN-SPAM Motion. In their opposition to the

14   CAN-SPAM Motion, Defendants argued that under *Gordon* Facebook's claimed injuries do not

15   give rise to standing under the statute. ECF No. 239 at 14-15. Defendants repeat that argument in

16   this motion. Accordingly, Defendants have not established that leave for reconsideration is

17   warranted.

18   The Court further finds that Judge Ware considered Defendants' argument in the February

19   16 order. In his order, Judge Ware addressed *Gordon* and concluded that Facebook's evidence of

20   costs incurred as a result of investigating Defendants' unauthorized access and the legal fees

21   incurred in trying to stop Defendants' unauthorized access sufficed to confer standing on Facebook

22   under the CAN-SPAM Act. ECF No. 275 at 8-9. The analysis of *Gordon* and Facebook's

23   evidence in the February 16 order precludes any claim by Defendants that Judge Ware manifestly

24   failed to address either material facts or legal arguments. *See id.*

25   There is no clear error or manifest injustice in Judge Ware's analysis. The February 16

26   order describes how Facebook's evidence of injury from having to address Defendants'

27   unauthorized access amounts to the type of specialized harm against which the CAN-SPAM Act

28                                             13

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

*United States District Court*
*For the Northern District of California*

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page14 of 34

1   protects. ECF No. 275 at 7-8. *Gordon* advises that "the threshold of standing should not pose a

2   high bar for the legitimate service operations contemplated by Congress" in instituting the CAN-

3   SPAM Act, and so for "well-recognized ISPs or plainly legitimate [ISPs] . . . adequate harm might

4   be presumed." 575 F.3d at 1055. In light of that advice, the Court finds no clear error or manifest

5   injustice in Judge Ware's holding.

6       **2.    CFAA and § 502**

7       In this motion, Defendants argue that the costs Facebook incurred from investigating

8   Defendants' actions and having Facebook's attorneys respond to Defendants' activities are

9   insufficient to show harm under the CFAA and § 502.

10      The CFAA defines "loss" as:

11      any reasonable cost to any victim, including the cost of responding to an offense,
       conducting a damage assessment, and restoring the data, program, system, or

12     information to its condition prior to the offense, and any revenue lost, cost
       incurred, or other consequential damages incurred because of interruption of

13     service[.]

14  18 U.S.C. § 1030(e)(11).

15      § 502(e)(1) in turn provides that:

16      the owner or lessee of the computer, computer system, computer network,
       computer program, or data who suffers damage or loss by reason of a violation of

17     any of the provisions of subdivision (c) may bring a civil action against the
       violator for compensatory damages and injunctive relief or other equitable relief.

18     Compensatory damages shall include any expenditure reasonably and necessarily
       incurred by the owner or lessee to verify that a computer system, computer

19     network, computer program, or data was or was not altered, damaged, or deleted

20     by the access.

21  § 502 does not further define "loss."

22      Defendants' argument in support of its request for leave to move for reconsideration is

23  unavailing. First, Defendants raised this argument in the opposition to Facebook's § 502/CFAA

24  Motion. ECF No. 242 at 11. To the extent Defendants repeat arguments from their opposition to

25  the § 502/CFAA Motion, Defendants have not established grounds for seeking reconsideration.

26  Defendants add new case law in this motion, but Defendants offer no reasons why they did not or

27  could not present these decisions in Defendants' opposition to Facebook's § 502/CFAA Motion.

28
14

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

1    Second, Judge Ware addressed Defendants' arguments regarding harm under the CFAA and

2    § 502. Judge Ware specifically determined that the costs Facebook incurred to block Defendants

3    from the site, to investigate Defendants' activities, and to have its attorneys attempt to stop

4    Defendants from continuing the activities were sufficient to establish loss under the CFAA and §

5    502. ECF No. 275 at 18; ECF No. 89 at 8. Defendants therefore cannot assert that the order

6    reflects a manifest failure to consider either material facts or dispositive legal arguments.

7    Third, the Court finds no manifest injustice or clear error in the February 16 order regarding

8    Facebook's "loss" under the CFAA or § 502. Given that the CFAA explicitly identifies the "cost

9    of responding to an offense" and "conducting a damage assessment" as types of losses for which

10   the CFAA confers standing, the Court finds no clear error in Judge Ware's determination that

11   Facebook's costs meet the definition of "loss" provided by the CFAA. *See Multiven, Inc. v. Cisco*

12   *Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010) ("Costs associated with investigating

13   intrusions into a computer network and taking subsequent remedial measures are losses within the

14   meaning of the statute."). The Court also finds that Judge Ware's determination that Facebook's

15   costs satisfy the "loss" requirement under § 502 is not clear error. *See Yee v. Lin*, No. C 12-02474

16   WHA, 2012 WL 4343778, at *3 (N.D. Cal. Sept. 20, 2012) (finding that plaintiff's expenses

17   "associated with responding" to defendant's unauthorized access were sufficient to meet loss

18   requirement under § 502).

19   The Court further finds no manifest injustice or clear error in the February 16 order based

20   on Defendants' late-added case law. *See AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d

21   1174, 1184 (E.D. Cal. 2010) (noting that under the CFAA, "[c]ognizable costs also include the

22   costs associated with assessing a hacked system for damage"); *Farmers Insurance Exchange v.*

23   *Steele Insurance Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 WL 3872950, at *21 (E.D.

24   Cal. July 25, 2013) (same).

25   Defendants have not established that leave to request reconsideration of the February 16

26   order is warranted.

27

28
                                              15
Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page16 of 34

## IV.   STEVEN VACHANI'S PERSONAL LIABILITY FOR VIOLATIONS OF THE CAN-SPAM ACT, CFAA, AND CALIFORNIA PENAL CODE § 502

The next issue before the Court is whether there is a genuine issue of material fact as to whether Defendant Steve Vachani, who was CEO of Power Ventures during the time period in question, is personally liable for statutory violations of the CAN-SPAM Act, CFAA, and California Penal Code § 502. For the reasons explained below, the Court concludes Vachani is personally liable as a matter of law and is thus jointly and severally liable with Power Ventures for violations of these statutory provisions.

Before analyzing Vachani's personal liability, the Court first summarizes this Court's previous findings regarding the precise conduct by Power Ventures that led to Judge Ware's finding of Power Venture's liability under the CAN-SPAM Act, CFAA, and California Penal Code § 502. *See* ECF No. 275. The Court first held that Power Ventures, by creating the Launch Promotion and the software that caused Facebook's servers to send out the misleading emails with "@facebookmail.com" addresses to Facebook users, violated the provision of the CAN-SPAM Act which makes it unlawful "for any person to initiate the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or misleading," 15 U.S.C. § 7704(a)(1). ECF No. 275 at 9-14. Second, the Court held that Power Ventures, by intentionally circumventing technical barriers to take, copy, or make use of data from the Facebook website without permission, violated California Penal Code § 502, which provides that a person is guilty of a public offense if he (1) knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network; (2) knowingly and without permission uses or causes to be used computer services; or (3) knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network. California Penal Code §§ 502(c)(2)(3) & (7). ECF No. 275 at 14-17. Third, the Court held that Power Ventures, by accessing Facebook without authorization, and obtaining information from the Facebook website, violated the provision of CFAA that imposes liability on any party that "intentionally accesses a computer without authorization or exceeds authorized access, and thereby

16

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

1  obtains . . . information from any protected computer," 18 U.S.C. § 1030(a)(2)(C).  ECF No. 275 at

2  17-19.

3       The Court must decide whether Vachani should be held personally liable for violating these

4  statutory provisions.  The Ninth Circuit has held that "a corporate officer or director is, in general,

5  personally liable for all torts which he authorizes or directs or in which he participates,

6  notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm.*

7  *for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (quoting *Transgo, Inc. v.*

8  *Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)).  "Cases which have found

9  personal liability on the part of corporate officers have typically involved instances where the

10  defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the

11  challenged corporate activity." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 523 n.10 (9th Cir.

12  1989).  Under such circumstances, both the corporation and the officers or directors who

13  participated in the tortious conduct may be held liable. *See Moseley v. U.S. Appliance Corp.*, 155

14  F.2d 25, 27 (9th Cir. 1946).  Thus, where an officer authorized, directed, or participated in a

15  corporation's tort or statutory violation, the officer can be held personally liable. *See United States*

16  *v. Reis*, 366 Fed. Appx. 781, 782 (9th Cir. 2010) (finding personal liability where corporate officer

17  was an active participant in the acts giving rise to corporate liability under the Resource

18  Conservation and Recovery Act); *Dish Network, LLC v. Sonicview USA, Inc.*, 2012 WL 1965279,

19  at *11 (S.D. Cal. May 31, 2012), *reconsideration denied*, 2012 WL 4339047 (finding personal

20  liability of several corporate officers who were the "guiding spirits" of the corporation's statutory

21  violations of the Digital Millennium Copyright Act and the Federal Communications Act).

22       In this case, the Court must assess whether there is a genuine issue of material fact as to

23  whether Vachani directed and authorized the specific activities giving rise to Power Ventures'

24  liability to a degree that reflects more than simply his supervisory role as CEO of the company.

25  More specifically, the Court assesses whether he was a "guiding spirit" or "central figure" in Power

26

27

28                      17
Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

*United States District Court*
*For the Northern District of California*

Case5:08-cv-05780-LHK Document372 *SEALED* Filed09/25/13 Page18 of 34

1     Venture's unlawful access to and use of the Facebook website.[3] *Davis*, 885 F.2d at 523 n.10.

2     Again, the unlawful activities that led to Power Venture's liability under the three relevant statutes

3     were 1) creating the Launch Promotion and the software that caused Facebook's servers to send out

4     the misleading emails to Facebook users; 2) circumventing technical barriers to take, copy, or make

5     use of data from the Facebook website without permission; 3) accessing Facebook without

6     authorization and obtaining information from the Facebook website without authorization. ECF

7     No. 275 at 9-19. Drawing all reasonable inferences in the light most favorable to Vachani, the

8     Court concludes that the undisputed facts prove that Vachani authorized and directed these

9     activities.

10     First, with respect to the creation of the Launch Promotion[4] and the software through which

11     Power Ventures caused Facebook's servers to send out the misleading emails to Facebook users,

12     Vachani admitted he was "controlling and directing [Power's] activities as it related to Facebook,"

13     including "controlling and directing the activities related to the use of the Power 100 campaign in

14     conjunction with Facebook users." ECF No. 299-3 at 27. Vachani also admitted that the Power

15     100 Campaign was his very own idea, ECF No. 229 at 7, and Defendants admit he managed the

16     campaign's implementation. ECF No. 232-2 at 5-6 (Power Venture's Response to Interrogatories,

17     noting Vachani was the "director responsible for developing the technology to allow Power or

18     Power users to continue to access the Facebook website following Facebook's IP blocking" and for

19

20     [3] The Court notes that Facebook does not argue an alter ego theory; namely, it does not ask the Court to pierce the corporate veil in order to hold Vachani liable. In any event, courts have held

21     that where officers direct, order, or participate in the company's tortious conduct, there is no need to pierce the corporate veil to establish the personal liability of the corporate officer. *Chase Inv.*

22     *Servs. Corp. v. Law Offices of Jon Divens & Assocs.*, No. 09–9152, 2010 WL 4056022, at *28 (C.D .Cal. Oct. 14, 2010) ("This principle applies regardless of the piercing of the corporate veil.")

23     [4] Around December 2008, Power Ventures began integrating with Facebook by allowing users to

24     enter their Facebook account information and access the Facebook site through Power.com. FAC ¶ 49-50; Answer ¶ 49-50. Later, Power Ventures initiated a "Launch Promotion," or the Power 100

25     Campaign, that promised Power Venture's users the chance to win a $100 award if they invited and signed up new users. FAC ¶ 65; Answer ¶ 65. Power Ventures gave existing users a list of their

26     Facebook friends Power Ventures had obtained from Facebook, and users had to select the friends who would receive a Power Ventures invitation, which would contain a "@facebookmail.com"

27     sender address. *Id.* ¶ 66-68; *Id.* ¶ 66-68.

28

18

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page19 of 34

United States District Court
For the Northern District of California

1    "creating the email messages sent to Facebook users asking Facebook users to use the Power

2    website to access the Facebook website").[5] Given these admissions, the Court finds there is no

3    genuine dispute regarding whether Vachani actually led the effort to create the Launch Promotion

4    and to develop the software behind Power Venture's illegal actions.

5         Second, with respect to Power Venture's circumvention of Facebook's technical barriers to

6    take, copy, or make use of data from the Facebook website without permission, the undisputed

7    facts show that Vachani anticipated Facebook's attempts to block Power Venture's access and

8    oversaw the implementation of a system that would be immune to such technical barriers so that

9    Power Ventures could access Facebook's network.  Vachani admitted that he directed the

10   company's decision to circumvent Facebook's blocks of Power Venture's IP addresses.  ECF No.

11   299-3 at 6-7 (Vachani deposition in which he admits he "was the person making the executive

12   decision . . . to ensure that Facebook could not block Power.com"); ECF No. 299-3 at 28-29

13   (Vachani deposition admitting he controlled and directed employees' activities related to ensuring

14   that Power Ventures continued to have access to Facebook); *see also* ECF No. 232-2 at 5-6 (Power

15   Venture's Response to Interrogatories noting that Vachani was the "director responsible for

16   developing the technology to allow Power or Power users to continue to access the Facebook

17   website following Facebook's IP blocking").  There is also other evidence that Vachani instructed

18   employees to circumvent the blocks he anticipated.  ECF No. 236-6 at 2 (Email from Vachani to

19   staff members stating that "we need to be prepared for Facebook to try and block us . . ."); ECF

20   No. 299-5 at 2 (Email from Vachani to employee noting, "please just make sure they cannot block

21   us").[6]

22        Third, with respect to *obtaining* information from the Facebook website without

23   authorization, Defendants admitted that they "took, copied, or made use of data from the Facebook

---

[5] Defendants also admitted to the court in other papers that Vachani has "been personally involved
in all of Power's operations including the Facebook integration that occurred in December 2008
that gave rise to this litigation." ECF No. 269 at 7 (response to Judge Joseph Spero regarding
discovery dispute in this litigation).
[6] There is evidence that Vachani took other actions himself as well. ECF No. 299-3 at 8-9
(Vachani admitting he sent Facebook an email informing Facebook that Power Ventures would
continue to try to access Facebook's services despite Facebook's request that the company stop).

19

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page20 of 34

1   website without Facebook's permission to do so." ECF No. 241-3 at 6 (Defendants' Reponses to

2   Interrogatories). Vachani's admission that he controlled and directed "the activities related to the

3   use of the Power 100 campaign in conjunction with Facebook users," ECF No. 299-3 at 27,

4   suffices to show that there is no genuine dispute regarding whether he led the company's quest to

5   obtain proprietary Facebook information, as that information was a necessary ingredient to the

6   Power 100 Campaign. Ultimately, the Court concludes that these uncontroverted facts demonstrate

7   Vachani was the "guiding spirit" behind Power Venture's efforts to send the misleading spam

8   emails to Facebook users, and thus should be held personally liable.

9        Defendants' arguments to the contrary are unpersuasive. First, Defendants concede that

10   corporate officers may be held liable for torts they authorize or direct, *see* Defendants'

11   Damages/Liability Brief at 4-5, but claim that "corporate executives like Vachani cannot be held

12   liable merely by virtue of their office for the torts of the corporation." *Id*. at 5. This argument

13   neglects to take into consideration Vachani's specific acts with respect to the Power 100 Campaign

14   that went above and beyond his merely advisory role as CEO of the company. Second, Defendants

15   note that "there is no precedent for holding a CEO liable in this type of computer fraud and tort

16   action where the CEO is not the exclusive owner or director . . ." Defendants' Inj. Opp. at 6.

17   Vachani himself similarly argues he was never the sole owner, controlling shareholder, or

18   controlling board member of Power Ventures, which he claims had six other executive officers and

19   multiple board members who had significant influence in decision-making as well. *See* Vachani

20   Damages/Liability Brief at 5-7, 15. It is true that the cases holding corporate officers personally

21   liable for violations of CFAA, CAN-SPAM, or California Penal Code § 502 have involved factual

22   situations in which the officer was either the *sole* officer or a majority shareholder of the company

23   or some combination of both. *F.T.C. v. Sili Neutraceauticals, L.L.C.*, No. 07-C-4541, 2008 WL

24   474116, at *3 (N.D. Ill. Jan. 23, 2008) (finding that sole officer of defendant corporation who

25   formulated, directed, and controlled the acts giving rise to CAN-SPAM liability by the corporation

26   was individually liable under CAN-SPAM); *Facebook v. Fisher*, No. C 09-05842, 2011 WL

27   250395 (N.D. Cal. Jan. 26, 2011) (finding that sole officer of defendant corporation who conducted

28

<div align="left">United States District Court<br>For the Northern District of California</div>

20

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

1   the acts giving rise to CAN-SPAM and CFAA liability by the corporation was individually liable

2   under CAN-SPAM and CFAA); *Hanger Prosthetics &Orthotics, Inc., v. Capstone Orthopedic Inc.*,

3   556 F.Supp.2d 1122, 1134035 (E.D. Cal. 2008) (denying motion for summary judgment on CFAA

4   and California Penal Code § 502 claims against CEO where CEO owned one third of the

5   corporation and a reasonable jury could infer that he authorized and directed the unlawful acts).

6   However, Defendants fail to argue why an officer's majority shareholder status or sole officer

7   position should make any difference to the liability outcome, especially given clear Ninth Circuit

8   law in various other statutory contexts that holds corporate officers liable regardless of whether

9   they are majority shareholders or sole officers. *See, e.g., Coastal Abstract Serv. Inc. v. First*

10  *American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (holding officer of insurance company

11  personally liable for violations of the Lanham Act despite the fact that he was acting as a corporate

12  agent when committing the illegal conduct, without any discussion of his shareholder status).

13  Accordingly, given the overwhelming evidence of Vachani's personal involvement in the unlawful

14  acts leading to the statutory violations in this case, Defendants have failed to show that there is a

15  genuine disputed issue of material fact concerning Vachani's personal liability, and the Court finds

16  Vachani personally liable as a matter of law for violations of CAN-SPAM, CFAA, and California

17  Penal Code § 502.

18  **V.   DAMAGES**

19        In its memorandum in support of its request for injunctive relief, Facebook expressly

20  waives its entitlement to attorneys' fees under the CFAA and its right to exemplary damages under

21  California Penal Code § 502. Facebook Inj. Brief at 2.[7] However, Facebook seeks statutory

22  damages under CAN-SPAM, asks the Court to treble damages, and also seeks compensatory

23  damages under either CFAA or California Penal Code § 502. *Id.* at 1-13.

24  **A.   Facebook is entitled to damages under the CAN-SPAM ACT**

25

26

27  _____
    [7] Facebook had previously requested punitive damages under Penal Code § 502. Facebook's
    Damages/Liability Brief at 10.

28                                        21
    Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page22 of 34

1        Under the CAN–SPAM Act, a plaintiff may elect to recover monetary damages in an

2    amount equal to the greater of actual losses or statutory damages. 15 U.S.C. § 7706(g)(1)(B).

3    Facebook elects to recover statutory damages. It is well established that "[a] plaintiff may elect

4    statutory damages regardless of the adequacy of the evidence offered as to his actual damages and

5    the amount of the defendant's profits . . . and if statutory damages are elected, the court has wide

6    discretion in determining the amount of statutory damages to be awarded, constrained only by the

7    specified maxima and minima." *Facebook v. Wallace*, No. 09-798, 2009 WL 3617789, at *2 (N.D.

8    Cal. Oct. 29, 2009) (citation omitted) (internal quotations omitted). However, a statutory damages

9    award may violate the due process rights of a defendant "where the penalty prescribed is so severe

10   and oppressive as to be wholly disproportioned to the offense and obviously unreasonable."

11   *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (citation omitted).

12       CAN–SPAM Act statutory damages are calculated as follows:

13   (3) Statutory damages.

14
     (A) In general. For purposes of paragraph (1)(B)(ii), the amount determined under this paragraph is
15   the amount calculated by multiplying the number of violations (with each separately addressed
     unlawful message that is transmitted or attempted to be transmitted over the facilities of the
16   provider of Internet access service, or that is transmitted or attempted to be transmitted to an
     electronic mail address obtained from the provider of Internet access service in violation of section
17   5(b)(1)(A)(i) [15 USCS § 7704(b)(1)(A)(i) ], treated as a separate violation) by—

18
         (i) up to $ 100, in the case of a violation of section 5(a)(1) [15 USC § 7704(a)(1)]; or
19       (ii) up to $ 25, in the case of any other violation of section 5 [15 USC § 7704].

20
     (B) Limitation. For any violation of section 5 [15 USCS §7704] (other than section 5(a)(1) [15
21   USC 7704(a)(1) ] ), the amount determined under subparagraph (A) may not exceed $ 1,000,000.

22   (C) Aggravated damages. The court may increase a damage award to an amount equal to not more
     than three times the amount otherwise available under this paragraph if—
23
         (i) the court determines that the defendant committed the violation willfully and knowingly;
24       or
         (ii) the defendant's unlawful activity included one or more of the aggravated violations set
25       forth in section 5(b) [15 USC § 7704(b)].
26
     15 U.S.C. § 7706(g)(3).
27
                                                    22
28   Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page23 of 34

United States District Court
For the Northern District of California

1    In this case, Facebook seeks to recover statutory damages pursuant to 15 U.S.C. §

2    7706(g)(3)(A)(i), which are calculated by multiplying the number of Header violations by up to

3    $100.[8]  The Court has already determined Defendants are liable for violating 15 U.S.C. §

4    7704(a)(1) because they initiated "a minimum of 60,000 instances of spamming." ECF No. 275 at

5    9.  Facebook thus argues it is entitled to the maximum statutory damages of 100 dollars for each of

6    the 60,627 spam messages Defendants sent to Facebook users.  Facebook Damages/Liability Brief

7    at 2.  In its briefing, Defendants do not appear to contest the fact that they sent 60,627 email

8    messages.  Defendants' Damages/Liability Brief at 2-4.  Facebook argues that the maximum is

9    warranted because Defendants committed "egregious" actions by "designing their spamming

10   campaign to ensure that it would continue notwithstanding any actions Facebook took to stop it"

11   and "us[ing] cash payments to induce third parties to send deceptive electronic messages." *Id.* at 2-

12   3.  Indeed, Defendants undisputedly utilized the incentive of monetary payments as a means to

13   access Facebook users' accounts.  FAC ¶¶ 66-70; Answer ¶¶ 66-70 (noting how Power's "Launch

14   Promotion" offered site users 100 dollars if they successfully invited and signed up the most new

15   Power.com users").  Defendants also undisputedly designed a system that would circumvent

16   Facebook's blocking efforts.  ECF No. 232-2 at 5-6 (Power Venture's Response to Interrogatories

17   answering that they "develop[ed] the technology to allow Power or Power users to continue to

18   access the Facebook website following Facebook's IP blocking").[9]  Facebook also asks the Court

19   _____

20   [8] Under the CAN-SPAM Act, each message is considered a separate violation.  15 U.S.C.
     § 7706(g)(3)(i).
21   [9] Facebook also argues that Defendants' actions were "egregious" because they "destroyed
     evidence necessary to establish exactly how many messages, above the 60,627, they initiated."
     Facebook Damages/Liability Brief at 2-3.  There is some evidence that Defendants did in fact
22   delete evidence relevant to this lawsuit.  Facebook's source code expert testified that a database
     called "Power_Logger" was one of two databases that should have recorded information about how
23   many emails were sent to Facebook users throughout the Power 100 campaign.  ECF No. 217 at ¶
     31-34.  Defendants admitted that they deleted the Power_Logger database in April 2011.  ECF No.
24   299-15 at 4-5 (Vachani admitting he made the decision to delete the database).  *See also* ECF No.
     220 at 12 (engineer's declaration in support of Facebook's opposition to Defendants' motion for
25   summary judgment noting that "by deleting the Power_Logger database, Defendants effectively
     erased arguably the most relevant and useful information concerning the number of electronic mail
26   messages that Defendants initiated through execution of their PowerScript software associated with
     the 100x100x100 campaign."); ECF No. 299-36 at 3 (Email from Defendants' counsel answering
27
                                              23
28   Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page24 of 34

1   to treble the damages, contending that Defendants willfully and knowingly sent the deceptive spam

2   messages to Facebook users. *Id.* at 8-9.[10] The record supports Facebook's contention that

3   Defendants acted knowingly and willfully, *see e.g.* ECF No. 232-2 at 5-6 (Power's Response to

4   Interrogatories answering that Vachani was "responsible for developing the technology to allow

5   Power or Power users to continue to access the Facebook website following Facebook's IP

6   blocking" and for "creating the email messages sent to Facebook users asking Facebook users to

7   use the Power website to access the Facebook website").

8        In light of this evidence, the Court finds that a statutory damages award is warranted in this

9   case. While Defendants argue that the Court should not award any damages under the CAN-

10  SPAM Act because Facebook did not suffer "any specific harm" as a result of the email messages,

11  citing *Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009), *see* Defendants'

12  Damages/Liability Brief at 1-2, this argument fails for two reasons. First, this Court has already

13  determined that under *Gordon*, Facebook has shown that it was "adversely affected" by

14  Defendants' actions within the meaning of the CAN-SPAM Act. ECF No. 275 at 8-9. Second,

15  *Gordon* is inapposite here because it deals with whether a plaintiff has standing to bring a claim

16  under the CAN-SPAM Act as opposed to whether the plaintiff deserves damages once liability

17  under the Act has been determined, as in this case.[11] Nonetheless, exercising its broad discretion to

18  determine an appropriate damages award, the Court finds that the $18,000,000 award requested by

19  Facebook is unnecessary to address the deterrent and punitive purposes of a statutory damages

20  award. Without deciding whether the requested $18,000,000 award would violate Defendants' due

21

22  Plaintiff's counsel's request to identify the "missing databases related to the number of Launch
    Promotion messages that were sent to Facebook users" and stating that the Power_Logger
23  database, which logs the activities on Power Venture's servers, has "missing tables" because
    Defendant chose not to back up those large files after it ceased operations and closed its server).
24  [10] A court may treble damages under the CAN-SPAM Act where (1) the court determines that the
    defendant committed the violation willfully and knowingly; or (2) the defendant's unlawful activity
25  included one or more of the aggravated violations in §7704(b). 15 U.S.C. § 7706(f)(3)(C).
26  [11] Defendant Vachani's own arguments against damages, namely that a damages decision could
    deter innovation and that "creating CAN-SPAM liability . . . would be unprecedented," are
27  similarly unavailing. Vachani Damages/Liability Brief at 12-13. This Court has already found that
    he is liable, *see supra*, Part IV, and more importantly, damages, not liability, are at issue here.
                                                                              24
28  Case No.: 08-CV-5780-LHK
    ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
    VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
    RELIEF

1   process rights, the Court declines to award that amount and finds it sufficient to award $50 per

2   email communication that was sent. This decision is consistent with other cases where courts have

3   declined to award the maximum statutory damages of $100 per violation, instead granting awards

4   of either $50 or $25 per violation of the CAN-SPAM Act. *See Fisher*, 2011 WL 250395 (awarding

5   plaintiffs $50 per violation of the CAN-SPAM Act); *Wallace*, 2009 WL 3617789 at *2 (same);

6   *Tagged, Inc. v. Does 1 through 10*, No. C 09–01713, 2010 WL 370331 (N.D. Cal. Jan. 25. 2010)

7   (awarding plaintiffs only $25 for each of 6,079 spam emails in violation of CAN-SPAM Act in

8   case where, unlike the instant case, *see supra* n.9, there was no evidence Defendants had actively

9   deleted relevant database information to conceal the number of spam messages sent). Thus,

10  Facebook will be granted $50 per email communication that was sent. It will be awarded

11  $ 3,031,350 ($50 for each of the estimated 60,627 spam messages sent) in CAN–SPAM damages.

12      The Court also finds trebling unnecessary given the large size of the primary award amount.

13  This finding is consistent with past cases where, despite defendants' willful and knowing violation

14  of the statutes in question, courts refused to treble damages. *See Fisher*, 2011 WL 250395 (holding

15  that although defendants willfully and knowingly violated the statutes by engaging in the

16  circumvention of Facebook's security measures, the requested maximum statutory award was

17  disproportionate to the gravity of defendants' acts, and thus the court awarded plaintiffs $50 per

18  violation and declined to treble damages); *Wallace*, 2009 WL 3617789 at *2 (holding that although

19  defendant "willfully violated the statutes in question with blatant disregard for the rights of

20  Facebook and the thousands of Facebook users whose accounts were compromised by his

21  conduct," and even violated a temporary restraining order and preliminary injunction, the requested

22  maximum statutory award was not merited and the court awarded plaintiffs $50 per violation and

23  declined to treble damages); *Tagged*, 2010 WL 370331 (awarding $25 for each of 6,079 spam

24  emails for a total amount of $151,975 and declining to treble damages because although

25  defendant's violations were allegedly intentional and willful, a $2,000,000 award was not

26

27

28
    Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

25

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page26 of 34

1    justified).[12]  Ultimately, a statutory damages award of $3,031,350 along with a permanent

2    injunction which this Court grants, *see infra* Part VI, will adequately serve the purpose of

3    punishment and deterrence in this case.

4    **B.     Facebook is entitled to compensatory damages under the CFAA**

5         Under the CFAA, "[a]ny person who suffers damage or loss by reason of a violation of this

6    section may maintain a civil action against the violator to obtain *compensatory* damages and

7    injunctive relief or other equitable relief."  18 U.S.C. § 1030(g) (emphasis added).  This Court

8    previously held that Facebook suffered "loss" as a result of Defendants' violation of CFAA.  ECF

9    No. 275 at 18.  Facebook is thus entitled to recover compensatory damages under the statute.

10   Facebook has established through undisputed testimony[13] that it expended $80,543 to investigate

11   Defendants' actions and for outside legal services in connection with the Defendants' actions.

12   Accordingly, this Court grants Facebook compensatory damages in the amount of $80,543.

13   Defendants' arguments against a grant of compensatory damages are unavailing.  Defendants argue

14   that Facebook "makes no effort to quantify any real harm it suffered" or "identify anything that

15   Power misappropriated from Facebook's network."  Defendants' Damages/Liability Brief at 3.

16   Again, these arguments are irrelevant as they address issues on the merits that have already been

17

18   [12] Facebook cites two default judgment orders in support of its request for $18,000,000. Facebook
     Damages/Liability Brief at 2-3.  In *Facebook v. Guerbuez*, No. C 08–03889 (N.D. Cal. Nov. 21,
19   2008), Facebook was awarded $873 million against a defendant who sent four million spam emails
     to other Facebook users. In *Myspace v. Wallace*, 2008 U.S. Dist. LEXIS 75752 (C.D. Cal. May 28,
20   2008), Myspace was awarded $223 million against a defendant who had sent nearly 400,000
     messages and posted 890,000 comments from 320,000 Myspace.com user accounts which were
21   "hijacked." Here, in contrast, Defendants sent an estimated 60,627 individual emails.
     Accordingly, the Court concludes that it is just to award $3,031,350. Further, even if, as Facebook
22   asserts, there are "tens of thousands of additional messages that Defendants littered through
     Facebook that cannot be accounted for in the damages calculation" due to Defendants' alleged
23   destruction of the relevant database information, *see* Facebook Damages/Liability Brief at 6, the
     Court finds that a $3,031,350 award is sufficient, as courts in this district have granted awards
24   proportionate to this award for similar violations. *See Tagged*, 2010 WL 370331 (awarding
     plaintiff $151,975 for 6,079 emails that violated the CAN-SPAM Act where defendants' actions
25   were intentional and willful and where defendant circumvented plaintiff's security measures like in
     this case).
26   [13] This Court previously recognized that "Defendants do not dispute the accuracy or veracity of
     [the] evidence of [Facebook's] expenditures." ECF No. 275 at 8. Indeed, Defendants never filed a
27   rebuttal brief to Facebook's expert report regarding the monetary damages Facebook incurred.
     ECF No. 299-26 (Expert Report of Richard Ostiller).
28                                          26
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

1   decided; this Court previously found that Facebook *did* incur a "loss" under CFAA, and that Power

2   Ventures *did* obtain information from Facebook without permission. ECF No. 275 at 18.[14]

3   **VI.   PERMANENT INJUNCTIVE RELIEF**

4         Facebook moves for permanent injunctive relief to prevent future statutory violations by

5   Defendants Vachani and Power Ventures. The CAN–SPAM Act authorizes the Court to grant a

6   permanent injunction "to enjoin further violation by the defendant." 15 U.S.C. § 7706(g)(1)(A).

7   Likewise, the CFAA provides that "[a]ny person who suffers damage or loss by reason of a

8   violation of [§1030] may maintain a civil action against the violator to obtain compensatory

9   damages and injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g).  California Penal

10   Code § 502 also allows a plaintiff to obtain injunctive relief.  California Penal Code § 502(e)(1).

11         A party seeking a permanent injunction must make a four-part showing: (1) that it has

12   suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

13   inadequate to compensate for that injury; (3) that, considering the balance of hardships between the

14   plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not

15   be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

16   390 (2006).[15]  The Court has discretion to grant or deny permanent injunctive relief. *Id.* at 391.

---

[14] As the Court decides to grant Facebook compensatory damages under CFAA, the Court need not and does not analyze Facebook's alternative argument that Facebook deserves compensatory damages under California Penal Code Section 502(e)(1). Facebook's Damages/Liability Brief at 9.

[15] Defendants cite Ninth Circuit law holding that when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief, future violations are presumed once a statutory violation is shown and the standard requirements for equitable relief need not be satisfied before an injunction is granted. Facebook Inj. Brief at 6 (citing *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 826-27 (9th Cir. 2001) (Fair Housing Act context). The Court notes that although some courts have granted statutory injunctions in similar contexts without analyzing the traditional four factor test, *see Tagged*, 2010 WL 370331(CFAA and California Penal Code §502); *Fisher*, 2011 WL 250395 (CAN-SPAM Act and CFAA context), this Court declines to do so in light of Supreme Court authority reemphasizing the traditional four factor test. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-93 (2006) ("According to well established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief" and noting that the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.")

27

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page28 of 34

1    The Court will consider each of these factors in turn, and will then consider whether, on balance,

2    the principles of equity support the issuance of a permanent injunction in this case.[16]

3    **A.    Irreparable Harm**

4         Facebook has shown irreparable injury as a result of Defendants' violations of the law.

5    Judge Ware's previous order granting Facebook summary judgment cited undisputed evidence that

6    Defendants created a software program to access Facebook's website, scraped user information

7    from Facebook, repeatedly changed Power Venture's IP address in order to circumvent technical

8    barriers Facebook had installed, and used that information to cause Facebook's servers to send

9    spam emails to Facebook users with "@facebookmail.com" mailing addresses. ECF No. 275 at 9-

10   13. These activities constituted irreparable harm by harming Facebook's goodwill with its users

11   because Facebook users receiving these emails are likely to associate the spam messages with

12   Facebook. ECF No. 213 at ¶¶ 4-5. *Hotmail Corp. v. Van$ Money Pie Inc.*, 1998 U.S. Dist. LEXIS

13   10729, at *20-21 (N.D. Cal. Apr. 16, 1998) (holding that customer confusion from source of spam

14   emails, which can lead to loss of goodwill, constituted irreparable harm to plaintiff); *Meineke Car*

15   *Care Centers, Inc. v. Quinones*, 2006 WL 1549708, *3 (W.D.N.C. 2006) (finding, in preliminary

16   injunction context, that possible loss in customers resulting from defendants' deceptive suggestion

17   that they were associated with plaintiff constituted irreparable harm). While Defendants argue that

18   Facebook has not produced evidence that its reputation or goodwill with its users has been

19   damaged as a result of Defendants' activities, *see* Defendants' Inj. Opp. at 5, 9, Defendants cite no

20   case law suggesting that such specific and direct evidence is needed to prove harm to goodwill.

21   *C.f. Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F.Supp.2d 1037, 1050 (N.D. Cal. 2004)

22   (emphasis added) ("Damage to a business' goodwill is typically an irreparable injury because it is

---

23   [16] Facebook objects to Vachani's declaration submitted in support of Defendants' Opposition to
24   Injunctive Relief on the grounds that Vachani lacks personal knowledge for his various
     conclusions, including whether Facebook received any complaints about Defendants' conduct, and
25   because he is not competent to testify regarding the various legal conclusions he makes, such as
     claiming "Power did not obtain [anything] . . . of value from Facebook." ECF No. 357-1;
26   Facebook Injunction Brief at 2. For purposes of this Order only, the Court finds that Vachani's
     lack of qualifications and personal knowledge affect the weight his testimony should be accorded
27   and not its admissibility. Thus, Facebook's objection is OVERRULED.

28                                                    28
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page29 of 34

United States District Court
For the Northern District of California

1    *difficult to calculate*"); *see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 17 (1st

2    Cir. 2004) (rejecting argument that "only *direct* evidence (with no room for inference) may

3    establish harm to goodwill" in the trademark law context).[17] As Facebook has shown irreparable

4    harm, this factor weighs in favor of a permanent injunction.

5    **B.    Inadequacy of Money Damages**

6           Facebook has established that "remedies available at law, such as monetary damages, are

7    inadequate to compensate for [its] injury," *eBay*, 547 U.S. at 391, for three reasons.  First, money

8    damages will not ensure that Defendants will not take steps again in the future to spam Facebook

9    users, which is a possibility.  Defendants may still possess the software that enabled their illegal

10   activities, and like in other cases in this district, Defendants also "deliberately implemented other

11   tactics to circumvent plaintiff's security measures." *Tagged*, 2010 WL 370331, at *12.

12   Defendants may even still possess Facebook-user data which they misappropriated.  Because there

13   is a "reasonable likelihood of defendant's future violations," injunctive relief is warranted.  *Id;*

14   *Pyro Spectaculars North Inc. v. Souza*, 861 F.Supp.2d 1079, 1092 (E.D. Cal. March 21, 2012)

15   (granting injunction in part because defendant still possessed plaintiff's data).  Second, money

16   damages will not compensate for the loss of goodwill Facebook may have suffered due to any

17   confusion created by Defendants' emails. *See Hotmail*, 1998 U.S. Dist. at *21 (holding that loss of

18   goodwill caused by confusion generated by misleading spam emails "is not easily quantified and

19   not adequately compensated with money damages.").  Last, the Ninth Circuit has held that a district

20   court has authority to issue an injunction "where the plaintiffs can establish that money damages

21   will be an inadequate remedy due to impending insolvency of the defendant . . ." *In re Estate of*

22   *Marcos*, 25 F.3d 1467 (9th Cir. 1994). Here, Defendants' voluntary petitions for bankruptcy, *see*

23   ───────────────
[17] Defendants also argue Facebook has not shown irreparable harm because Facebook has failed to

24   submit proof of user complaints about the spam messages. Defendants' Inj. Opp. at 9.  However,
     Facebook has provided evidence that in general, deceptive spam messages detract from Facebook

25   user experiences and have been the source of complaints by Facebook users.  ECF 218-8 at ¶ 5
     (Declaration of Ryan McGeehan in support of Facebook's Motion for Partial Summary Judgment

26   noting that "spam messages detract from the overall Facebook experience and are sometimes a
     source of complaints by Facebook users. For instance, in the fourth quarter of 2008,

27   Facebook received 71,256 "tickets" (*i.e.*, complaints by users) that used the word 'spam' in them.")

28   Case No.: 08-CV-5780-LHK                                          29
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page30 of 34

1    ECF No. 323, 324, suggest they may be unable to satisfy a damages award and that non-monetary

2    relief may be necessary.

3         In rebuttal, Defendants argue they never misappropriated Facebook user data. Defendants'

4    Inj. Opp. at 8.[18] Defendants emphasize that one of their "primary" objections to injunctive relief is

5    that "Defendants are not in possession of any Facebook data or any user data that was not expressly

6    granted to Power by the users themselves." *Id.* at 3. This argument is irrelevant to the issue at

7    hand because the Court has already ruled that Defendants did misappropriate data without

8    Facebook's permission. ECF No. 275 at 14-18. Defendants also argue that the Court should not

9    consider the fact that they may still possess the software that enabled the alleged violations because

10   Power Ventures ceased operations in 2011. Defendants' Inj. Opp. at 8. But this argument ignores

11   the fact that Defendants could easily start another company or give the data to other entities that

12   wish to engage in the illegal spamming conduct.[19] Overall, as money damages will likely be

13   inadequate, this factor weighs in favor of a permanent injunction.

14   **C.    Balance of Hardships**

15        The balance of hardships analysis also weighs in favor of granting Facebook a permanent

16   injunction. Defendants have been found liable for violating various laws, *see* ECF No. 275, and

17   while an injunction would simply serve to force their compliance with the law, *see Myspace v.*

18   *Wallace*, 498 F.Supp.2d 1293, 1306 (C.D. Cal. July 3, 2007) (holding defendant would experience

19   no hardship if enjoined from committing further violations of the CAN-SPAM Act), Facebook may

20   suffer harm if an injunction is not issued. As this Court previously concluded in its summary

21   judgment order, Facebook has already suffered harm, as it incurred expenditures to both block

22   Defendants' continued access to Facebook and to respond to the spamming emails. ECF No. 275

23

24   [18] *See also* Defendants' Inj. Opp. at 5 ("Facebook is unable to identify anything that Power
25   misappropriated from Facebook's network, as Power did not take anything that belonged to
     Facebook.")
     [19] Defendants also argue that "damages were avoidable" because Defendants allegedly cooperated
26   with Facebook through the litigation. Defendants' Inj. Opp. at 3, 10. This argument is irrelevant;
     the issue is not whether damages were "avoidable" but whether damages are sufficient to
27   compensate Facebook for its injury.

28                                                        30
     Case No.: 08-CV-5780-LHK
     ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
     VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
     RELIEF

*United States District Court*
*For the Northern District of California*

1   at 7-10.  Absent an injunction Facebook may have to deal with future violations of the law.

2   *Tagged*, 2010 WL 370331, at *12 (granting a preliminary injunction against a defendant who

3   violated CFAA and California Penal Code § 502 in part because defendant might engage in future

4   violations).  Indeed, Defendants have demonstrated a willingness to do so, as they did not stop

5   even after requests from Facebook.  ECF No. 299-3 at 8-9 (Vachani admitting that he sent

6   Facebook an email informing Facebook that Power Ventures would continue to try to access

7   Facebook's services despite Facebook's request that the company stop).  On the other hand,

8   Defendants claim that the requested injunction impermissibly threatens Vachani's employability

9   and livelihood.  Defendants' Inj. Opp. at 10-11; Vachani Damages/Liability Brief at 9.  However,

10  Defendants fail to provide a persuasive reason why this is the case, and in any event, given that

11  Vachani brought this risk upon himself by violating the law, the balance would not shift in favor of

12  Defendants even if there were evidence to support this speculative claim.  Accordingly, the balance

13  of hardships weighs in favor of Facebook.

14  **D.    Public Interest**

15        The public interest weighs in favor of an injunction as well, and courts in this district have

16  reached this conclusion in analogous cases.  *See, e.g., Craigslist, Inc. v. Troopal Strategies, Inc.*,

17  2011 U.S. Dist. LEXIS 15625, at *11 (N.D. Cal. 2011) (holding injunction would be in the public

18  interest where defendant violated CFAA).  Injunctive relief would serve the public interest by

19  preventing Defendants from impermissibly spamming Facebook users again and setting an

20  example to members of the public who may consider violating these various statutes as well.  In

21  passing the CAN–SPAM Act, Congress recognized the burdens which commercial spam poses to

22  the public.  15 U.S.C. § 7701(a)(2) ("The convenience and efficiency of electronic mail are

23  threatened by the extremely rapid growth in the volume of unsolicited commercial electronic

24  mail.").  Namely, the public "is forced to incur the costs of needlessly expended energy and time

25  evaluating and eventually discarding defendants' unsolicited messages[.]"  *F.T.C. v. Phoenix*

26  *Avatar, LLC*, 2004 WL 1746698, *14 (N.D. Ill. July 30, 2004) (enjoining defendants for violations

27  of the CAN–SPAM Act).  Because Defendants' activities fall within those activities Congress

28

31

Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

*United States District Court*
*For the Northern District of California*

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page32 of 34

1   deemed detrimental to the public, this factor weighs in favor of Facebook. Defendants' arguments

2   to the contrary are unavailing. While Defendants claim the injunction will pose "unacceptable

3   risks for innovators" and enhancements in social networking technology, Defendants' Inj. Opp. at

4   11, this argument fails to recognize that the injunction will serve to deter only conduct that violates

5   the law. The law explicitly provides for injunctive relief. Thus, to the extent that granting

6   Facebook injunctive relief for Defendants' violations of CFAA and CAN-SPAM may have

7   negative "impacts on innovation, competition, and the general 'openness' of the internet," courts

8   have held that it is up to Congress, not the courts, to decide whether to amend those statutes.

9   *Craigslist Inc. v. 3Taps*, No. CV 12–03816 CRB, 2013 WL 4447520, at *25 (N.D. Cal. Aug. 16,

10   2013) ("[I]t is for Congress to weigh the significance of those consequences and decide whether

11   amendment would be prudent.")

12   **E.      Balance of all four equitable factors**

13          The balance of all four factors weighs strongly in favor of granting an injunction in this

14   case. Thus, the Court grants Facebook its request for permanent injunctive relief against both

15   Power Ventures and Vachani in his individual capacity.[20] This decision is in line with past

16   decisions of this Court. *See Tagged*, 2010 WL 370331, at *12 (granting injunctive relief for

17   violations of CFAA and California Penal Code § 502); *Facebook v. Fisher*, 2011 U.S. Dist. LEXIS

18   9668, at *7-8 (N.D. Cal. Jan. 26. 2011) (granting injunction for violations of CAN-SPAM Act and

19   CFAA); *Microsoft Corp. v. Neoburst Net LLC*, 2004 U.S. Dist. LEXIS 18733, at *2-4 (N.D. Cal.

20

21   [20] While Defendants claim Facebook provides "no basis for enjoining the individual defendant
from any action given that Vachani never acted independently or otherwise in a personal or
22   individual capacity while employed by Power during the period of Facebook's grievances,"
Defendants' Inj. Opp. at 6, this argument fails for two reasons. First, as this Court finds that
23   Vachani is personally liable, he may be enjoined in his individual capacity. *FTC v. Sili
Neutraceuticals LLC*, 2008 U.S. Dist. LEXIS 105683 (N.D. Ill. Jan. 23, 2008). Second, even
24   assuming this Court found Vachani was *not* personally liable, Defendants' argument ignores Ninth
Circuit law holding that Federal Rule of Procedure 65 "establishes that an injunction may bind not
25   only parties to the action but also 'their officers, agents, servants, employees, and attorneys, and
[upon] those persons in active concert or participation with them.'" *Comedy Club Inc. v. Improv
26   West Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (citing FED. R. CIV. P. 65(d)). Here, Vachani
27   may be enjoined under FRCP 65 as an officer of Power Venture.
                                                                                    32
28   Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page33 of 34

1   2004) (granting injunctive relief for violations of CAN-SPAM Act, CFAA, and California Penal

2   Code § 502).[21] Facebook is hereby entitled to a permanent injunction against Power Ventures and

3   Vachani as follows:

4   1. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary

5   companies or entities, affiliated or related companies and entities, assignees, and successors-in-

6   interest, and those in active concert or participation with them, are permanently enjoined from:

7       A. Sending, or assisting others in the sending of, or procuring the sending of unauthorized

8   or unsolicited commercial electronic text messages to users of the Facebook website,

9   www.facebook.com, or via the Facebook website or service.

10      B. Making, or assisting others in making, any false or misleading oral or written statement

11  or representation of material fact when advertising, promoting or selling any good or service,

12  including, but not limited to any false or misleading statement or representation that Defendants,

13  their representatives, or any other person is affiliated or associated with, under contract with, acting

14  in partnership with, endorsed or approved by, or otherwise connected to Facebook or to a service

15  offered by Facebook.

16      C. Accessing or using, or directing, aiding, facilitating, causing, or conspiring with others to

17  use or access the Facebook website or servers for any purpose, without Facebook's prior

18  permission.

19      D. Using any data, including without limitation Facebook-user data and data regarding

20  Facebook's website or computer networks, obtained as a result of the unlawful conduct alleged in

21  the operative complaint in this action.

22      E. Developing, using, selling, offering for sale, or distributing, or directing, aiding, or

23  conspiring with others to develop, sell, offer for sale, or distribute, any software that allows the

24  user to engage in the unlawful conduct alleged in the operative complaint in this action.

25  2. Defendants, their agents, officers, contractors, directors, shareholders, employees, subsidiary

26  companies or entities, affiliated or related companies and entities, assignees, and successors-in-

27  _____

[21] Defendants' brief fails to distinguish or otherwise discuss these relevant authorities.

28
33
Case No.: 08-CV-5780-LHK
ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
RELIEF

United States District Court
For the Northern District of California

Case5:08-cv-05780-LHK   Document372 *SEALED*   Filed09/25/13   Page34 of 34

1    interest, and those in active concert or participation with them shall destroy any software, script(s)

2    or code designed to access or interact with the Facebook website, Facebook users, or the Facebook

3    service. They shall also destroy Facebook data and/or information obtained from Facebook or

4    Facebook's users, or anything derived from such data and/or information.

5    3. Within three calendar days of entry of this permanent injunction and order, Defendants shall

6    notify their current and former officers, agents, servants, employees, successors, and assigns, and

7    any persons acting in concert or participation with them of this permanent injunction.

8    4. Within seven calendar days of entry of this injunction and order, Defendants shall certify in

9    writing, under penalty of perjury, that they have complied with the provision of this order.

10    5. The Court shall continue to retain jurisdiction over the parties for the purpose of enforcing this

11    injunction and order.

12    **VII.   CONCLUSION**

13         The Court finds Defendants have failed to set forth grounds pursuant to Civil L.R. 7-9(b)

14    for leave to file a motion for reconsideration of Judge Ware's February 16 order. Thus, the request

15    for leave is DENIED. The Court finds Vachani personally liable as a matter of law for violations

16    of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-

17    SPAM Act"), 15 U.S.C § 7701; the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030;

18    and California Penal Code § 502. The Court further finds Facebook is entitled to statutory

19    damages in the amount of $3,031,350, compensatory damages in the amount of $80,543, and

20    permanent injunctive relief as described above. The Clerk shall close the file.

21    **IT IS SO ORDERED.**

22

23    Dated: September 25, 2013                    _Lucy H. Koh_

24                                                        LUCY H. KOH
                                                         United States District Judge
25

26

27

28                                            34
      Case No.: 08-CV-5780-LHK
      ORDER DENYING LEAVE TO FILE MOTION FOR RECONSIDERATION, FINDING DEFENDANT STEVEN
      VACHANI LIABLE AS A MATTER OF LAW, AND GRANTING DAMAGES AND PERMANENT INJUNCTIVE
      RELIEF

*United States District Court*
*For the Northern District of California*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC.,

                Plaintiff,

    v.

POWER VENTURES, INC., et al.,

                Defendants.

Case No. 08-cv-05780-LHK   (JCS)

**ORDER RE ATTORNEYS FEES AND COSTS FOR RENEWED DEPOSITION**

**Dkt. Nos. 347, 350**

## I.   INTRODUCTION

On March 1, 2012, in response to a discovery dispute between the parties, this Court ordered Defendants to "pay reasonable costs, including attorney fees, for the renewed 30(b)(6) deposition" of Mr. Vachani, the designated deponent for the Rule 30(b)(6) deposition of Power Ventures. *See* Dkt. No. 282 ("Discovery Order"). Facebook has since filed a letter brief requesting an order compelling Defendants Power Ventures and Mr. Vachani to pay $39,796.73 in reasonable attorney's fees and costs associated with the renewed deposition of Mr. Vachani. Defendants oppose Facebook's request. For the reasons stated below, the Court grants Facebook's request for fees and costs in its entirety and orders Defendants, including Mr. Vachani, to pay Facebook $39,796.73.

## II.   BACKGROUND

### A.   Background of Discovery Dispute

On February 24, 2012, this Court conducted a discovery hearing on three joint letter briefs, two of which are relevant to Facebook's instant request for costs and fees. The first joint letter brief concerned Facebook's request for a renewed Rule 30(b)(6) deposition of Power Venture's designated deponent, Mr. Vachani. *See* Dkt. No. 265. The next joint letter brief concerned

1    Facebook's request for an order compelling Defendants' production of all Power Ventures'

2    company emails that were not copied to Mr. Vachani.  *See* Dkt. No. 269.

3            During discovery, Facebook had requested production of all communications between

4    Power employees related to how the company assessed the Facebook website, and what was

5    discussed concerning the Power 100 Launch Promotion.  Defendants produced the "ASA Drive"

6    which presumably contained 300,000 files which had been backed up by Defendants' server

7    hosted by Amazon and IWEB.  *See* Dkt. No. 166.  In July 2011, Mr. Vachani testified:

8    "Everything was instructed to be copied there, and so I'm assuming that it's all there.  I haven't

9    looked at it individually personally, but I made a backup of everything."  Dkt. No. 269-2 (July 20,

10   2011 Deposition of Mr. Vachani) at 62:13-63:6.

11           Discovery in this case closed on January 20, 2012.  On January 9, 2012, during the first

12   Rule 30(b)(6) deposition of Mr. Vachani, Facebook first learned that Power Ventures had failed to

13   produce any emails other than those which had been copied or forwarded to Mr. Vachani's

14   personal Yahoo! email account.

15           On January 26, 2012, Defendants produced what they termed the "Microsoft Exchange

16   File" which contained 76,457 files, 5,752 folders, and 74.6 gigabytes of data.  Declaration of

17   Morvarid Metanat in Supprot of Facebook, Inc.'s Motion for Costs ("Metanat Decl.") ¶ 3.  Ms.

18   Metanat states that "[t]his File contained emails and data that had not been previously produced to

19   Facebook, despite Facebook's repeated requests for this information.  As significant amount of

20   these files were written in Portuguese."  *Id.*  In the joint letter brief submitted to the Court,

21   Defendants argued the "Microsoft Exchange File" was not disclosed due to inadvertence because

22   Mr. Vachani believed that file had been stored on the ASA Drive, which had been disclosed.  *See*

23   Dkt. No. 269 at 6.

24       **B.     The February 24, 2012 Discovery Hearing**

25           At the discovery hearing on the joint letter briefs, the Court informed Defendants that there

26   was no excuse for failing to timely disclose the emails that had not been copied to Mr. Vachani's

27   yahoo account.  *See* Dkt. No. 280 (Transcript of February 24, 2012 Discovery Hearing).  The

28   Court emphasized that these emails were relevant, responsive, and should have been produced

United States District Court
Northern District of California

2

before the Rule 30(b)(6) deposition of Mr. Vachani.  The Court also found that Mr. Vachani did not adequately prepare for his deposition, thereby failing to fulfill the duty of a Rule 30(b)(6) deponent.  The Court further found that Mr. Vachani was "argumentative" and "evasive" in his response to questioning.  *Id*. at 8-9.  The Court ordered that a new Rule 30(b)(6) deposition be taken of Mr. Vachani and ordered all costs to be borne by Defendants.  *Id*. at 8:3-8.

At the hearing, the Court addressed another issue that had not been adequately briefed by Facebook—the alleged spoliation of documents in Defendants' possession.  The Court declined to make any decisions about this issue and informed Facebook that the Court would not forbid a motion regarding spoliation in the future.  *Id*. at 14-15.

### C.    The March 1, 2012 Discovery Order

On March 1, 2012, the Court filed an order regarding the joint discovery letters.  *See* Dkt. No. 282 ("Discovery Order").  The Court outlined the rules to which both parties would adhere at the renewed 30(b)(6) deposition of Mr. Vanchani, and further ordered that "Defendant shall pay reasonable costs, including attorney fees, for the renewed 30(b)(6) deposition."  *Id*. at 1.  The Court ordered Defendants to produce the responsive emails that were not copied to Mr. Vachani and clarified that Mr. Vahcani would be deposed regarding these newly produced emails.  *Id*. at 2.

With regard to the issue of spoliation, the Court made "no ruling on the spoliation of documents" and wrote that "Plaintiff may file [a] formal Motion."  *Id*.

### III.    LEGAL STANDARD

Rule 30(d)(2) of the Federal Rules of Civil Procedure provides that a "court may impose an appropriate sanction−including the reasonable expenses and attorney's fees incurred by any party−on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed.R.Civ.P 30(d)(2).  Rule 11(c)(4) provides that the "Nature of a Sanction" "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and "may include …. an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed.R.Civ.P. 11(c)(4).

//

*United States District Court*
*Northern District of California*

3

## IV.   DISCUSSION

Facebook requests an order for fees and costs in the amount of $39,796.73.  This amount reflects the combined total of: (1) the costs of the videographer and court reporter services ($5,128.73); (2) the costs of the expedited, certified translations of untimely produced 74.6 gigabytes of data and Power's deposition ($660.00); and (3) attorneys' fees associated with the work of attorneys and paralegals to prepare for and undertake the renewed Rule 30(b)(6) deposition of Mr. Vachani ($38,008.00).  Facebook has submitted the invoices for the videographer and court reporter services as well as the expedited translations.  Metanat Decl. Exs. B - C.  Facebook has also submitted for *in camera* review the hours, rates and tasks performed for by all attorneys and paralegals for which it seeks fees, which the Court reviewed.  *See* Dkt. No. 351.

Defendants do not oppose Facebook's claim for cost and fees on the grounds that the hours or rates are unreasonable.  *See* Dkt. No. 350 ("Power Br.").  Indeed, the Court has reviewed the hours and rates in detail and finds them to be reasonable.  Defendants contend, however, that the request for fees should be reduced and/or modified for the following reasons: (A) this Court has made no determination as to whether there was a discovery violation with respect to the documents transferred to Facebook on January 26, 2010 because the Court did not rule on the issue of spoliation; (B) Facebook's request for fees and costs is beyond the scope of the Court's Discovery Order; and (C) Mr. Vachani is not personally liable for the costs and fees associated with the renewed Rule 30(b)(6) deposition.  The Court addresses each argument in turn.

### A.   Effect of this Court Not Ruling on Spoliation

Defendants contend the Court has made "no determination as to whether a discovery violation was committed with respect to the documents transferred to Facebook on January 26, 2010" because the Court did not decide any issue with regard to spoliation, and Facebook failed to file a separation motion on spoliation despite being "instructed" by the Court.  Power Br. 1-2.  While it is true the Court made no determination as to spoliation, Defendants are incorrect to assert the Court did not already decide that Defendants committed a discovery violation.  It is clear from the transcript of the February 24, 2012 discovery hearing and the March 1, 2012 discovery

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   order that this Court found Defendants committed discovery violations by (1) failing to timely

2   disclose relevant emails solely on the basis that they were not copied to Mr. Vachanie's Yahoo!

3   email account, and (2) because Mr. Vachani was not prepared for his Rule 30(b)(6) deposition,

4   read from his declaration, and was "argumentative" and "evasive." *See* Dkt. Nos. 280, 282.  This

5   is the very reason why the Court ordered a new Rule 30(b)(6) deposition be taken and paid for by

6   Defendants.  *See id.*

7        Moreover, the Court never "instructed" Facebook to file a motion regarding spoliation, as

8   Defendants contend.  Rather, the Court merely clarified that Facebook would have the opportunity

9   to file such a motion, and the Court would not "forbid" it.  Dkt. No. 280.

10       **B.     Scope of Discovery Order**

11       Defendants' main argument is that Facebook's request for fees and costs goes beyond the

12  scope of the Discovery Order.  Defendants argue:

> Facebook's request is unreasonable because they seek recovery of
> fees for reviewing documents that otherwise would be borne by
> Facebook had they conducted review of said documents, *copies of
> which had been provided to them*, during discovery…. Facebook's
> failure to conduct  thorough review of documents produced by
> Defendants during discovery does not make Defendants liable for
> fees associated with review of additionally produced copies of said
> documents following discovery. Costs and fees based on
> Facebook's actions in response to unadjudicated accusations are
> wholly outside the scope of this order and, thus, are patently
> *un*reasonable.

20  Power's Br. at 2.  While Defendants *argue* that Facebook's preparation time includes time

21  reviewing documents already produced, Defendants produce *no evidence* to show that such files

22  had already been produced and their subsequent disclosures were mere "copies of said

23  documents."  *See id.*

24       Defendants' argument has a fundamental flaw: they were ordered to sit for a renewed

25  deposition in part because new documents were produced after the close of discovery.  To prepare

26  for that deposition, Plaintiff had to review the late produced documents.  Defendants were ordered

27  to pay the costs and fees associated with that preparation.  When accounting for attorney hours,

28  Facebook does not distinguish between time spent reviewing documents which were previously

<div align="center">5</div>

1    produced and reviewing documents which were produced after the close of discovery.

2    Nevertheless, it is clear from Ms. Metanat's declaration that they spent time reviewing the

3    contents of the Microsoft Exchange File, which had been disclosed after the close of discovery,

4    and which contained emails and data that had not previously been produced. *See* Metanat Decl. ¶

5    3.

6            Defendants allude to the fact that the Microsoft Exchange File contained copies of

7    documents that had previously been produced, and that Defendants should not have to pay for

8    Facebook's review of such documents.  However, Facebook had to comb through the entire

9    Microsoft Exchange File to determine what was new and what was old.  Thus, if Defendants

10   wanted to save on the costs associated with Facebook reviewing files which had been timely

11   produced, then Defendants should have sent Facebook only new files.  Defendants do not purport

12   to say they did so.  In fact, it is clear from the joint letter discovery brief that when Defendants

13   gave Facebook the Microsoft Exchange File, Defendants did not even know its contents because

14   they were unable to open the file. *See* Dkt. No. 269.

15          Defendants also argue that translation fees should not be included, as Plaintiff would have

16   paid for the cost of certified translation anyway.  While Defendants concede that "[a]rguably, the

17   costs for *expedition* are unique to the renewed deposition," Defendants still argue that "the basis

18   for such claim is outside the scope of the sanction order, as the Court expressly declined to rule on

19   the alleged spoliation of documents."  Power Br. at 2.  As discussed above, Defendants reference

20   to "spoliation" is a red herring; that issue bears no relevance on the issues.  Defendants were

21   ordered to pay all of the costs of the renewed deposition.  This included all of the costs of

22   reviewing the files produced after the close of discovery in preparation for that deposition.  The

23   costs of the expedited and certified translations will be borne by Defendants.

24          **C.      Personal Liability of Mr. Vachani**

25          Defendants' last argument is that Mr. Vachani is not personally liable for the costs of the

26   renewed deposition.  This argument arises because Facebook filed a claim in Mr. Vachani's

27   Chapter 13 bankruptcy case for $20,000 as sanctions under this Court's order (in addition to the

28   $18 million in damages).  Declaration of Steven Vachani in Support of Power Ventures, Inc. and

United States District Court
Northern District of California

6

1   Steven Vachani's Response to Facebook, Inc.'s Motion for Costs ¶ 2 and Ex. A thereto.  It does

2   not appear that Facebook filed any claim in Power Venture's Chapter 11 bankruptcy case.

3          The renewed deposition−as reflected in the Court's previous order−was caused by the

4   discovery misconduct by both Power Ventures and by Mr. Vachani.  It was in part Mr. Vachani's

5   personal conduct−being unprepared, evasive and argumentative−which required a renewed

6   deposition, and for which the Court awarded sanctions.   Therefore, Mr. Vachani is liable to pay

7   the costs and fees of the renewed deposition.

8   **V.     CONCLUSION**

9          For the foregoing reasons, Defendants are ordered to pay Facebook $39,796.73.

10          IT IS SO ORDERED.

11   Dated: August 7, 2013

12                                                  _____

13                                                  JOSEPH C. SPERO
                                                    United States Magistrate Judge

7

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Facebook, Inc., | NO. C 08-05780 JW |
| Plaintiff, | **ORDER DENYING FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS; DENYING THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT; GRANTING FACEBOOK'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS; DENYING FACEBOOK'S MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES** |
| v. | |
| Power Ventures, Inc., et al., | |
| Defendants. _____/ | |
| Power Ventures, Inc., et al., | |
| Counterclaimants, | |
| v. | |
| Facebook, Inc., | |
| Counterdefendants. _____/ | |

## I. INTRODUCTION

Facebook, Inc. ("Plaintiff" or "Facebook") brings this action against Power Ventures, Inc. ("Defendant" or "Power") alleging, *inter alia*, violations of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("Section 502"). Facebook alleges that Power accessed the Facebook website in violation of Facebook's Terms of Use, and when Facebook tried to stop Power's unauthorized access, Power circumvented Facebook's technical barriers. Power brings counterclaims against Facebook alleging, *inter alia*, violations of the Sherman Act, 15 U.S.C. § 2.

United States District Court
For the Northern District of California

1    Presently before the Court are Facebook's Motion for Judgment on the Pleadings Pursuant to

2    Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of Liability Under California

3    Penal Code § 502;[1] Defendants' Motion for Summary Judgment;[2] and Facebook's Motion to

4    Dismiss Counterclaims and Strike Affirmative Defenses.[3]  The Court conducted a hearing on June 7,

5    2010.  Based on the papers submitted to date and oral argument, the Court DENIES Facebook's

6    Motion for Judgment on the Pleadings, DENIES the parties' Cross-Motions for Summary Judgment,

7    GRANTS Facebook's Motion to Dismiss Defendants' counterclaims for violations of Section 2 of

8    the Sherman Act, GRANTS Facebook's Motion to Dismiss Defendants' UCL counterclaim, and

9    DENIES Facebook's Motion to Strike Defendants' Affirmative Defenses.

10                                **II.  BACKGROUND**

11   **A.    Factual Background**

12           A detailed outline of the factual allegations in this case may be found in the Court's May 11,

13   2009 Order Denying Motion to Dismiss and Granting in Part and Denying in Part Motion for More

14   Definite Statement.[4]  The Court will address the facts of the case, as they relate to the present

15   Motions, in the Discussion section below.

16   **B.    Procedural History**

17           In its May 11 Order, the Court denied Defendants' Motion to Dismiss Plaintiff's claims for

18   copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), trademark

19   infringement under federal law, trademark infringement under state law, and violation of the

20   California Unfair Competition Law ("UCL"), and granted Defendants' Motion for a More Definite

21   Statement with respect to Plaintiff's UCL claim.

22

23   _____

24           [1]  (hereafter, "Facebook's Motion for Judgment on the Pleadings," Docket Item No. 56.)

25           [2]  (Docket Item No. 62.)

26           [3]  (hereafter, "Facebook's Motion to Dismiss," Docket Item No. 58.)

27           [4]  (hereafter, "May 11 Order," Docket Item No. 38.)

28                                        2

**United States District Court**

For the Northern District of California

1    On October 22, 2009, the Court issued an Order Granting Facebook's Motion to Dismiss

2  Counter-Complaint and Strike Affirmative Defenses.  (hereafter, "October 22 Order," Docket Item

3  No. 52.)  In its October 22 Order, the Court found that the counterclaims, as stated in Defendants'

4  Answer and Counter-Complaint, were insufficient because they consisted only of conclusory

5  recitations of the applicable legal standard and a general "reference [to] all allegations of all prior

6  paragraphs as though fully set forth herein."  (Id. at 3.)  Similarly, the Court found Defendants'

7  affirmative defenses deficient because they referenced the introductory section without delineating

8  which allegations supported each affirmative defense.  (Id. at 3-4.)  The Court granted leave to

9  amend the counterclaims and affirmative defenses.  (Id. at 4.)  On November 23, 2010, Defendants

10  filed the Amended Answer and Counterclaims of Defendants Power Ventures, Inc. and Steve

11  Vachani.  (hereafter, "Amended Answer," Docket Item No. 54.)  On February 26, 2010, Judge Fogel

12  recused himself from the case.  (See Docket Item No. 72.)  On March 2, 2010, the case was

13  reassigned to Judge Ware.  (See Docket Item No. 73.)

14    Presently before the Court are the parties' various Motions.  The Court addresses each

15  Motion in turn.

16    **III.  STANDARDS**

17  **A.    Motion for Judgment on the Pleadings**

18    Under Federal Rule of Civil Procedure 12(c), any party may move for judgment on the

19  pleadings at any time after the pleadings are closed but within such time as not to delay the trial.

20  Fed. R. Civ. P. 12(c).  "For the purposes of the motion, the allegations of the non-moving party must

21  be accepted as true, while the allegations of the moving party which have been denied are assumed

22  to be false."  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir.

23  1990).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of

24  the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment

25  as a matter of law."  Id.  When brought by the defendant, a motion for judgment on the pleadings

26  under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the

27  complaint after an answer has been filed."  New. Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115

28                                                                3

United States District Court
For the Northern District of California

(C.D. Cal. 2004). A motion for judgment on the pleadings is therefore similar to a motion to dismiss. Id. When the district court must go beyond the pleadings to resolve an issue on a motion for judgment on the pleadings, the proceeding is properly treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982).

**B.   Motion for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

4

Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. See Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031. However, when the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. The Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

**C.     Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

5

United States District Court

For the Northern District of California

1   Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

2   amendment.  Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

3                                           **IV.  DISCUSSION**

4   **A.     Statutory Standing**

5          As a threshold matter, Defendants contend that Facebook does not have standing to bring its

6   Section 502 claim because it has not made an adequate showing that it has suffered damage or loss

7   within the meaning of the statute.[5]

8          Section 502(e)(1) provides:

9                  In addition to any other civil remedy available, the owner or lessee of the computer,
           computer system, computer network, computer program, or data who suffers damage or loss
10          by reason of a violation of any of the provisions of subdivision (c) may bring a civil action
           against the violator for compensatory damages and injunctive relief.  Compensatory damages
11          shall include any expenditure reasonably and necessarily incurred by the owner or lessee to
           verify that a computer system, computer network, computer program, or data was or was not
12          altered, damaged, or deleted by the access. . . .

13         Facebook relies solely on the undisputed facts from the pleadings to support its Motion.  In

14  their Amended Answer, Defendants admit that: (1) Facebook communicated to Defendant Steven

15  Vachani ("Vachani"), the purported CEO of Power.com, its claim that "Power.com's access of

16  Facebook's website and servers was unauthorized and violated Facebook's rights, including

17  Facebook's trademark, copyrights, and business expectations with its users;"[6] (2) "Vachani offered

18  to attempt to integrate Power.com with Facebook Connect," a Facebook program that "permits

19  integration with third party websites," but "Vachani communicated concerns about Power's ability

20  to integrate Power.com with Facebook Connect on the schedule that Facebook was demanding;"[7]

21  and (3) "Facebook implemented technical measures to block users from accessing Facebook through

22

23

24  _____

25         [5]  (Defendants' Reply Brief in Support of Motion for Summary Judgment at 5-14, hereafter,
           "Defendants' Reply re Summary Judgment," Docket Item No. 68.)

26         [6]  (FAC ¶ 57, Amended Answer ¶ 57.)

27         [7]  (FAC ¶¶ 28, 58, 60, Amended Answer ¶¶ 58, 60.)

28                                                  6

United States District Court

For the Northern District of California

1   Power.com," but nonetheless "Power provided users with tools necessary to access Facebook

2   through Power.com."[8]

3           In support of their contention that Plaintiff did not suffer damage or loss, Defendants provide

4   the declaration of Vachani, in which he states that Facebook had no cause for concern over Power's

5   access to its website, and that "in its communications with [Vachani], Facebook never suggested any

6   concern that its computers or data had been altered, deleted, damaged, or destroyed."[9]  Vachani

7   further declares that to his knowledge, "Facebook did not . . . make any expenditure to verify that its

8   computers or data had not been altered, deleted, damaged, or destroyed."  (Id.)

9           Upon review of the pleadings and evidence presented, the Court finds that the undisputed

10  facts show that Facebook suffered some damage or loss as a result of Power's actions.  Specifically,

11  Defendants' admissions that Facebook attempted to block Power's access and that Power provided

12  users with tools that allowed them to access the Facebook website through Power.com adequately

13  demonstrates that Facebook expended resources to stop Power from committing acts that Facebook

14  now contends constituted Section 502 violations.  Although Defendants contend that any steps that

15  Facebook took to block Power's access to the Facebook website were *de minimus*, and would

16  involve only a "a few clicks of a mouse . . . and ten keystrokes,"[10] Section 502 sets no threshold

17  level of damage or loss that must be reached to impart standing to bring suit.  Under the plain

18  language of the statute, any amount of damage or loss may be sufficient.

19          Moreover, Defendants provide no foundation to establish that Vachani has personal

20  knowledge of what steps Facebook took, or would reasonably have to take, to block Power's access

21  to the Facebook website.  Since information regarding Facebook's technical measures, and the cost

22

23  ─────────────────

24          [8]  (FAC ¶¶ 63-64, Amended Answer ¶¶ 63-64.)

25          [9]  (Declaration of Steve Vachani in Support of Defendants' Opposition to Facebook Inc.'s
    Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative, Partial
26  Summary Judgment of Liability Under California Penal Code § 502(c) ¶ 12, hereafter, "Vachani
    Decl.," Docket Item No. 65.)

27          [10]  (Vachani ¶ 9.)

28                                          7

1    Facebook expended implementing those measures, is likely to be in Facebook's possession and not

2    Power's, the Court finds that Vachani's declaration alone cannot defeat Plaintiff's standing.

3            Defendants further contend that to impart standing, damage or loss must amount to an

4    "injury."  (Defendants' Reply re Summary Judgment at 4.)  The statute defines an "injury" as "any

5    alteration, deletion, damage, or destruction of a computer system, computer network, computer

6    program, or data caused by the access, or the denial of access, to legitimate users of a computer

7    system, network, or program."  Cal. Penal Code § 502(b)(8).  However, Defendants provide no

8    authority for equating damage and loss with injury beyond the observation that the terms are

9    synonyms.  (Defendants' Reply re Summary Judgment at 4.)  In fact, the only place in Section 502

10   that the term injury appears, other than the clause defining the term itself, is in the criminal liability

11   provision, which has no bearing on the civil provision granting a private right of action.  See §

12   502(d) (setting more stringent penalties for violations that result in an injury).

13           Since the undisputed facts demonstrate that Facebook has suffered some damage or loss in

14   attempting to block Power's access to the Facebook website, the Court finds that Facebook has

15   standing to bring suit pursuant to Section 502(e).  The Court proceeds to examine Defendants'

16   liability under Section 502.

17   **B.**      **Defendants' Section 502 Liability**

18           Facebook contends that the undisputed facts prove that Defendants violated Section 502.

19   (Facebook's Motion for Judgment on the Pleadings at 1.)  Facebook bases its Section 502 claim

20   solely on facts that Defendants admit in their Amended Answer, which Facebook contends show

21   beyond dispute that Power accessed the Facebook website in violation of the Facebook terms of use,

22   and that when Facebook tried to stop Power, Power worked around Facebook's technical barriers.

23   (Id.)  Defendants respond, *inter alia*, that there is no evidence that Power ever accessed the

24

25

26

27

28

United States District Court
For the Northern District of California

8

SER77

United States District Court

For the Northern District of California

1   Facebook website without the express permission of the user and rightful owner of the accessed

2   data.[11]

3        On May 5, 2010, the Court granted the Electronic Frontier Foundation's ("EFF") Motion to

4   File Amicus Curiae in support of Defendants' Motion.[12]  EFF contends that in order to avoid

5   constitutional vagueness concerns, the Court must construe the statutory phrase "without

6   permission" narrowly to exclude access to a website or computer network that merely violates a

7   term of use.[13]  Allowing criminal liability based only on violation of contractual terms of service,

8   EFF contends, would grant the website or network administrator essentially unlimited authority to

9   define the scope of criminality and potentially expose millions of average internet users to criminal

10  sanctions without any meaningful notice.  (Id.)

11       The Court finds that all of the subsections of Section 502(c) that potentially apply in this case

12  require that the defendant's actions be taken "without permission."  See Cal. Penal Code §

13  502(c)(2), (3), (7).  However, the statute does not expressly define the term "without permission."

14  In interpreting any statutory language, the court looks first to the words of the statute.  Lamie v. U.S.

15  Trustee, 540 U.S. 526, 534 (2004).  If the language is unambiguous, the statute should be interpreted

16  according to the plain meaning of the text.  Id. at 534.  The structure and purpose of a statute can

17  provide guidance in determining the plain meaning of its provisions.  K-Mart Corp. v. Cartier, Inc.,

18  486 U.S. 281, 291 (1988).  Statutory language is ambiguous if it is capable of being understood in

19  two or more possible senses or ways.  Chickasaw Nation v. United States, 534 U.S. 84, 90 (2001).  If

20

21

22       [11] (Defendants' Corrected Opposition to Facebook Inc.'s Motion for Judgment on the
         Pleadings Pursuant to Fed. R. Civ. P. 12(c) or, in the Alternative, Partial Summary Judgment of
23       Liability Under California Penal Code § 502(c) at 11, hereafter, "Defendants' Opposition re
         Summary Judgment," Docket Item No. 74.)
24
         [12] (Docket Item No. 79.)
25
26       [13] (Brief of Amicus Curiae Electronic Frontier Foundation in Support of Defendant Power
         Ventures' Motion for Summary Judgment on Cal. Penal Code 502(c) at 24-28, hereafter, "Amicus
27       Brief," Docket Item No. 83.)  On July 6, 2010, Facebook filed its Reply to EFF's Amicus Brief.
         (hereafter, "Amicus Reply," Docket Item No. 86.)
28
                                                    9

**United States District Court**

For the Northern District of California

1   a statutory provision is ambiguous, the court turns to the legislative history for guidance.  <u>SEC v.</u>

2   <u>McCarthy,</u> 322 F.3d 650, 655 (9th Cir. 2003).

3            Here, the Court first looks to the plain language of the statute.  However, the term "without

4   permission" can be understood in multiple ways, especially with regard to whether access is without

5   permission simply as a result of violating the terms of use.  Thus, the Court must consider legislative

6   intent and constitutional concerns to determine whether the conduct at issue here falls within the

7   scope of the statute.  <u>See</u> <u>F.C.C. v. Fox Television Stations, Inc.</u>, 129 S. Ct. 1800, 1811 (2009)

8   (noting that "the canon of constitutional avoidance in an interpretive tool, counseling that ambiguous

9   statutory language be construed to avoid serious constitutional doubts").

10          **1.      Plain Language of the Statute**

11           Here, Facebook does not allege that Power has altered, deleted, damaged, or destroyed any

12   data, computer, computer system, or computer network, so the subsections that require that type of

13   action are not applicable.  However, the Court finds that the following subsections of Section 502 do

14   not require destruction of data, and thus may apply here:

15          (1)      Section 502(c)(2) holds liable any person who "[k]nowingly accesses and without
                     permission takes, copies, or makes use of any data from a computer, computer
16                   system, or computer network, or takes or copies any supporting documentation,
                     whether existing or residing internal or external to a computer, computer system, or
17                   computer network;"

18          (2)      Section 502(c)(3) holds liable any person who "[k]nowingly and without permission
                     uses or causes to be used computer services;" and
19

20          (3)      Section 502(c)(7) holds liable any person who "[k]nowingly and without permission
                     accesses or causes to be accessed any computer, computer system, or computer
21                   network."

22           To support its claim that Defendants violated these provisions, Facebook relies solely on

23   facts that Defendants admitted in their Amended Answer.  Specifically, Facebook points to

24   Defendants' admissions that: (1) "Power permits users to enter their account information to access

25   the Facebook site through Power.com;"[14] (2) "Defendants developed computer software and other

26   automated devices and programs to access and obtain information from the Facebook website for

27   _____

     [14]   (Amended Answer ¶¶ 18, 45, 50.)

28                                                           10

1   aggregating services;"[15] (3) Facebook communicated to Vachani its claims that "Power.com's access

2   of Facebook's website and servers was unauthorized and violated Facebook's rights, including

3   Facebook's trademark, copyrights, and business expectations with its users;"[16] (4) "Facebook

4   implemented technical measures to block users from accessing Facebook through Power.com;"[17] and

5   (5) "Power provided users with tools necessary to access Facebook through Power.com."[18]  Since all

6   three of the subsections at issue here require that Defendants' acts with respect to the computer or

7   computer network be taken without permission, the Court analyzes that requirement first.

8        Defendants and EFF contend that Power's actions could not have been without permission

9   because Power only accessed the Facebook website with the permission of a Facebook account

10  holder and at that account holder's behest.  (See Defendants' Opposition re Summary Judgment at

11  11; Amicus Brief at 11.)  Facebook, on the other hand, contends that regardless of whatever

12  permission an individual Facebook user may have given to Power to access a particular Facebook

13  account, Power's actions clearly violated the website's terms of use, which state that a Facebook

14  user may not "collect users' content or information, or otherwise access Facebook, using automated

15  means (such as harvesting bots, robots, spiders, or scrapers) without [Facebook's] permission."[19]

16       Since Power admits that it utilized "automated devices" to gain access to the Facebook

17  website, the Court finds that it is beyond dispute that Power's activities violated an express term of

18

19

20

21

22   [15] (Id. ¶ 74; FAC ¶ 74.)

23   [16] (Amended Answer ¶ 57; FAC ¶ 57.)

     [17] (Amended Answer ¶ 63.)

24   [18] (Id. ¶ 64.)

25

26   [19] (Facebook Inc.'s Reply Brief in Support of its Motion for Judgment on the Pleadings or, in the Alternative, Partial Summary Judgment of Liability Under California Penal Code Section 502 and Opposition to Defendants' Motion for Summary Judgment at 5-6, hereafter, "Facebook's Reply re Summary Judgment," Docket Item No. 66.)

27

28                              11

1   the Facebook terms of use.[20]  The issue then becomes whether an access or use that involves a

2   violation of the terms of use is "without permission" within the meaning of the statute.  In the

3   modern context, in which millions of average internet users access websites every day without ever

4   reading, much less understanding, those websites' terms of use, this is far from an easy or

5   straightforward question.  Without clear guidance from the statutory language itself, the Court turns

6   to case law, legislative intent, and the canon of constitutional avoidance to assist in interpreting the

7   statute, and then analyzes whether the acts at issue here were indeed taken without permission.

8           **2.      Caselaw**

9           Since the California Supreme Court has not directly addressed the question of whether the

10   violation of a term of use constitutes access or use without permission pursuant to Section 502, the

11   Court looks to analogous state appellate court cases and federal court cases from this district for

12   guidance as to the statute's proper construction.  The Court also considers cases interpreting the

13   Computer Fraud and Abuse Act ("CFAA"), the federal corollary to Section 502, in evaluating how

14   broad an application Section 502 should properly be given.

15           EFF relies on two state appellate cases for the proposition that Section 502 should not apply

16   to persons who have permission to access a computer or computer system, but who use that access in

17   a manner that violates the rules applicable to that system.  Chrisman v. City of Los Angeles, 155

18   Cal. App. 4th 29, 32 (Cal. Ct. App. 2007); Mahru v. Superior Court, 191 Cal. App. 3d 545, 549 (Cal.

19   Ct. App. 1987).  In Chrisman, the court found that a police officer did not violate Section 502 when,

20   while on duty, the officer "accessed the Department computer system [] for non-duty-related

21   activities."  155 Cal. App. 4th at 32.  The court found that at essence, Section 502 is an anti-hacking

22   statute, and "[o]ne cannot reasonably describe appellant's improper computer inquiries about

23   celebrities, friends, and others as hacking."  Id. at 35.  The officer's "computer queries seeking

24   _____

25           [20]  This, of course, assumes that Power was in fact subject to the Facebook terms of use, an
     issue which was not briefed by either party.  However, the terms of use state, "By accessing or using
26   our web site . . . , you (the 'User') signify that you have read, understand and agree to be bound by
     these Terms of Use . . . , whether or not you are a registered member of Facebook."  (FAC, Ex. A.)
27   Thus, in the act of accessing or using the Facebook website alone, Power acceded to the Terms of
     Use and became bound by them.

28                                                      12

United States District Court

For the Northern District of California

1   information that the department's computer system was designed to provide to officers was

2   misconduct if he had no legitimate purpose for that information, but it was not hacking the

3   computer's 'logical, arithmetical, or memory function resources,' as [the officer] was entitled to

4   access those resources." Id. While Chrisman does not address the specific issue before the Court

5   here, and focuses on the statutory definition of "access" rather than "without permission," the Court

6   finds that the case helps to clarify that using a computer network for the purpose that it was designed

7   to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the

8   legislature sought to prohibit when it enacted Section 502.

9   　　　In Mahru, the court found that the director and part owner of a data-processing firm was not

10   liable under Section 502 when he instructed the company's chief computer operator to make

11   specified changes in the names of two files in a former customer's computer program in retaliation

12   for that customer terminating its contract with the company.  191 Cal. App. 3d at 547-48.  These

13   changes had the effect of preventing the former customer's employees from being able to run their

14   computer programs without the assistance of an expert computer software technician.  Id.  In finding

15   that Section 502 had not been violated by the company's actions, the court stated:

16   　　　　The Legislature could not have meant, by enacting section 502, to bring the Penal Code into
17   　　　the computer age by making annoying or spiteful acts criminal offenses whenever a
     　　　computer is used to accomplish them.  Individuals and organizations use computers for
     　　　typing and other routine tasks in the conduct of their affairs, and sometimes in the course of
18   　　　these affairs they do vexing, annoying, and injurious things.  Such acts cannot all be
     　　　criminal.

19

20   Id. at 549.  However, the court in Mahru based its finding of no liability in part on documentary

21   evidence establishing that the company, and not the former customer, owned the computer hardware

22   and software, which explains why the company's manipulation of files stored on that computer

23   hardware was merely vexatious and not unlawful hacking.  The Court finds that Mahru is not

24   applicable to the circumstances here, where it is undisputed that Power accessed data stored on

25   Facebook's server.

26   　　　In support of its contention that Facebook users cannot authorize Power to access Facebook's

27   computer systems, Facebook relies on a previous order in this case and another case from this

28   　　　　　　　　　　　　　　　　　　13

1   District.  On May 11, 2009, Judge Fogel issued an order denying Defendants' Motion to Dismiss

2   Plaintiff's copyright infringement, DMCA, and trademark infringement claims.  In addressing

3   Plaintiff's copyright infringement claim, Judge Fogel found that, "[v]iewing the allegations in the

4   FAC as true, the utilization of Power.com by Facebook users exceeds their access rights pursuant to

5   the Terms of Use.  Moreover, when a Facebook user directs Power.com to access the Facebook

6   website, an unauthorized copy of the user's profile page is created."  (May 11 Order at 6-7.)  The

7   Court finds that whether or not Facebook users' utilization of Power.com exceeds their access rights

8   under Facebook's terms of use is not the issue presented in these Motions.  Instead, the Court must

9   determine whether such a violation of the terms of use constitutes use "without permission" within

10  the meaning of Section 502, a question that the May 11 Order did not directly address.

11          Finally, in Facebook, Inc. v. ConnectU LLC, Judge Seeborg found that a competing social

12  networking site violated Section 502 when it accessed the Facebook website to collect "millions" of

13  email addresses of Facebook users, and then used those email addresses to solicit business for itself.

14  489 F. Supp. 2d 1087, 1089 (N.D. Cal. 2007).  In that case, Judge Seeborg found unavailing

15  ConnectU's contention that it did not act without permission because it only "accessed information

16  on the Facebook website that ordinarily would be accessible only to registered users by using log-in

17  information voluntarily supplied by registered users."  Id. at 1090-91.  Judge Seeborg found that

18  ConnectU was subject to Facebook's terms of use and rejected ConnectU's contention that "a

19  private party cannot define what is or what is not a criminal offense by unilateral imposition of terms

20  and conditions of use."  Id. at 1091.  The court held that "[t]he fact that private parties are free to set

21  the conditions on which they will grant such permission does not mean that private parties are

22  defining what is criminal and what is not."  Id.

23          The Court finds that of the cases discussed so far, the holding in ConnectU is most applicable

24  to the present case.  However, the Court respectfully disagrees with ConnectU in one key respect.

25  Contrary to the holding of ConnectU, the Court finds that allowing violations of terms of use to fall

26  within the ambit of the statutory term "without permission" does essentially place in private hands

27  unbridled discretion to determine the scope of criminal liability recognized under the statute.  If the

28

14

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  issue of permission to access or use a website depends on adhering to unilaterally imposed

2  contractual terms, the website or computer system administrator has the power to determine which

3  actions may expose a user to criminal liability.  This raises constitutional concerns that will be

4  addressed below.

5      Although cases interpreting the scope of liability under the CFAA do not govern the Court's

6  analysis of the scope of liability under Section 502, CFAA cases can be instructive.  EFF points to

7  several CFAA cases for the proposition that the CFAA prohibits trespass and theft, not mere

8  violations of terms of use.  See, e.g., LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1130 (9th Cir.

9  2009) ("[F]or purposes of the CFAA, when an employer authorizes an employee to use a company

10  computer subject to certain limitations, the employee remains authorized to use the computer even if

11  the employee violates those limitations."); Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d

12  1322 (N.D. Ga. 2007) ("Under the more reasoned view, a violation for accessing 'without

13  authorization' occurs only where initial access is not permitted."); But see Shurgard Storage Ctrs.,

14  Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1125-29 (W.D. Wash. 2000) (finding

15  employee may be held liable under CFAA for taking employer information from the company's

16  computer system to his next job on the ground that he was "without authorization" when he

17  "allegedly sent [the employer's] proprietary information to the defendant").

18      While there appears to be some disagreement in the district courts as to the scope of the term

19  "without authorization" in the CFAA context, the Court finds the Ninth Circuit's opinion in LVRC

20  Holdings to be particularly useful in construing the analogous term in Section 502.  In that case, the

21  Ninth Circuit found that access to a computer may be "authorized," within the statutory meaning of

22  the term, even if that access violates an agreed upon term of using that computer.  In general, the

23  Court finds that the more recent CFAA cases militate for an interpretation of Section 502 that does

24  not premise permission to access or use a computer or computer network on a violation of terms of

25  use.  However, since none of the cases discussed provides a definitive definition of without

26  permission under Section 502, the Court now looks to the legislative purpose of the statute to the

27  extent that it can be discerned.

28                                                    15

**United States District Court**
For the Northern District of California

### 3.     Legislative Purpose

Section 502 includes the following statement of statutory purpose:

> It is the intent of the Legislature in enacting this section to expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.  The Legislature finds and declares that the proliferation of computer technology has resulted in a concomitant proliferation of computer crime and other forms of unauthorized access to computers, computer systems, and computer data.

> The Legislature further finds that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others within this state that lawfully utilize those computers, computer systems, and data.

Cal. Penal Code § 502(a).

Facebook contends that this language evidences legislative intent to address conduct beyond "straightforward hacking and tampering."  (Facebook's Reply re Summary Judgment at 2.) Specifically, Facebook contends that the legislature's use of the phrases "protection . . . from . . . unauthorized access" and "protection of the integrity of all types and forms of computers, computer systems, and computer data" demonstrates a far-reaching legislative purpose to protect the entire commercial computer infrastructure from trespass.  (Id. at 2-3.)

The Court declines to give the statute's statement of legislative intent the sweeping meaning that Facebook ascribes to it.  Section 502(a) speaks in general terms of a "proliferation of computer crime and other forms of unauthorized access to computers," but does not offer any further guidance as to what specific acts would constitute such crime or unauthorized access.  It is far from clear what conduct the legislature believed posed a threat to the integrity of computers and computer systems, or if the legislature could even fathom the shape that those threats would take more than twenty years after the statute was first enacted.

Thus, the Court does not assign any weight to the statute's statement of legislative intent in construing the liability provisions of Section 502.

16

### 4.    Rule of Lenity

EFF contends that interpreting Section 502 broadly to allow liability where the absence of permission is based only on the violation of a contractual term of use or failure to fully comply with a cease and desist letter would render the statute unconstitutionally vague, stripping the statute of adequate notice to citizens of what conduct is criminally prohibited.  (Amicus Brief at 24-28.)  EFF further contends that giving the statute the broad application that Facebook seeks could expose large numbers of average internet users to criminal liability for engaging in routine web-surfing and emailing activity.  (Id.)

"It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."  Lanzetta v. New Jersey, 306 U.S. 451, 453 (1993).  Thus, a criminal statute is invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."  United States v. Harriss, 347 U.S. 612 (1954).  Where a statute has both criminal and noncriminal applications, courts must interpret the statute consistently in both contexts.  Leocal v. Ashcroft, 543 U.S. 1, 11 n.8 (2004).  In the Ninth Circuit, "[t]o survive vagueness review, a statute must '(1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner.'"  United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007).

The Court finds that interpreting the statutory phrase "without permission" in a manner that imposes liability for a violation of a term of use or receipt of a cease and desist letter would create a constitutionally untenable situation in which criminal penalties could be meted out on the basis of violating vague or ambiguous terms of use.  In the words of one commentator, "By granting the computer owner essentially unlimited authority to define authorization, the contract standard delegates the scope of criminality to every computer owner."[21]  Users of computer and internet services cannot have adequate notice of what actions will or will not expose them to criminal

---

[21]  Orin S. Kerr, *Cybercrime's Scope: Interpreting "Acess" and "Authorization" in Computer Misuse Statutes*, 78 N.Y.U. L. Rev. 1596, 1650-51 (2003).

17

<div style="writing-mode: vertical">**United States District Court**  
For the Northern District of California</div>

1  liability when a computer network or website administrator can unilaterally change the rules at any

2  time and are under no obligation to make the terms of use specific or understandable to the general

3  public.  Thus, in order to avoid rendering the statute constitutionally infirm, the Court finds that a

4  user of internet services does not access or use a computer, computer network, or website without

5  permission simply because that user violated a contractual term of use.[22]

6         If a violation of a term of use is by itself insufficient to support a finding that the user's

7  access was "without permission" in violation of Section 502, the issue becomes what type of action

8  would be sufficient to support such a finding.   The Court finds that a distinction can be made

9  between access that violates a term of use and access that circumvents technical or code-based

10  barriers that a computer network or website administrator erects to restrict the user's privileges

11  within the system, or to bar the user from the system altogether.[23]  Limiting criminal liability to

12  circumstances in which a user gains access to a computer, computer network, or website to which

13  access was restricted through technological means eliminates any constitutional notice concerns,

14  since a person applying the technical skill necessary to overcome such a barrier will almost always

15  understand that any access gained through such action is unauthorized.  Thus, the Court finds that

16  accessing or using a computer, computer network, or website in a manner that overcomes technical

17  or code-based barriers is "without permission," and may subject a user to liability under Section 502.

18         Applying this construction of the statute here, the Court finds that Power did not act "without

19  permission" within the meaning of Section 502 when Facebook account holders utilized the Power

20  website to access and manipulate their user content on the Facebook website, even if such action

21  violated Facebook's Terms of Use.  However, to the extent that Facebook can prove that in doing so,

22  Power circumvented Facebook's technical barriers, Power may be held liable for violation of

23  Section 502.  Here, Facebook relies solely on the pleadings for its Motion.  In their Answer,

24

25      [22]  This is not to say that such a user would not be subject to a claim for breach of contract.
    Where a user violates a computer or website's terms of use, the owner of that computer or website
26  may also take steps to remove the violating user's access privileges.

27      [23]  See generally Kerr, *supra* note 20.

28                           18

United States District Court
For the Northern District of California

1    Defendants do not directly admit that the tools Power provided to its users were designed to

2    circumvent the technical barriers that Facebook put in place to block Power's access to the Facebook

3    website.  Thus, the Court finds that there is a genuine issue of material fact as to whether Power's

4    access or use of the Facebook website was "without permission" within the meaning of Section 502.

5            EFF contends that even if Power evaded the technical barriers that Facebook implemented to

6    deny it access, Power's conduct does not fall within the scope of Section 502 liability.  (Amicus

7    Brief at 19-28.)  More specifically, EFF contends that it would be inconsistent to allow liability for

8    ignoring or bypassing technical barriers whose sole purpose is to enforce contractual limits on

9    access while denying liability for violating those same contractual limits when technological means

10   of restricting access are not employed.  (Id. at 19.)  Thus, according to EFF, Power's efforts to

11   circumvent Facebook's IP-blocking efforts did not violate Section 502 because Facebook was

12   merely attempting to enforce its Terms of Use by other means.[24]  (Id. at 23-24.)  The Court finds

13   EFF's contentions unpersuasive in this regard.  EFF has not pointed to any meaningful distinction

14   between IP address blocking and any other conceivable technical barrier that would adequately

15   justify not finding Section 502 liability in one instance while finding it in the other.  Moreover, the

16   owners' underlying purpose or motivation for implementing technical barriers, whether to enforce

17   terms of use or otherwise, is not a relevant consideration when determining the appropriate scope of

18   liability for accessing a computer or network without authorization.  There can be no ambiguity or

19   mistake as to whether access has been authorized when one encounters a technical block, and thus

20

21

22

23
─────────────────────
24       [24]  The Court notes that although both parties discuss IP address blocking as the form of
     technological barrier that Facebook utilized to deny Power access, Facebook's use of IP-blocking
25   and Power's efforts to avoid those blocks have not been established as undisputed facts in this case.
     However, for purposes of this Motion, the Court finds that the specific form of the technological
26   barrier at issue or means of circumventing that barrier are not relevant.  Rather, the issue before the
     Court is whether there are undisputed facts to establish that such avoidance of technological barriers
27   occurred in the first instance.

28

                                                    19

SER88

<div style="writing-mode: vertical">

**United States District Court**

For the Northern District of California

</div>

1  there is no potential failure of notice to the computer user as to what conduct may be subject to

2  criminal liability, as when a violation of terms of use is the sole basis for liability.[25]

3      Accordingly, the Court DENIES Facebook's Motion for Judgment on the Pleadings, and

4  DENIES the parties' Cross-Motions for Summary Judgment as to Facebook's Section 502 cause of

5  action.

6  **C.      Defendants' Counterclaims**

7      Facebook moves to dismiss Defendants' causes of action for violation of Section 2 of the

8  Sherman Act ("Section 2") on the ground that Defendants have failed to allege sufficient facts to

9  state a claim for monopolization or attempted monopolization.  (Facebook's Motion to Dismiss at 4-

10  9.)

11      To state a Section 2 claim for monopolization, the claimant must show that the alleged

12  monopolist (1) possesses monopoly power in the relevant market (2) through the willful acquisition

13  or maintenance of that power, as distinguished from growth or development as a consequence of a

14  superior product, business acumen, or historic accident, (3) that causes antitrust injury.  Verizon

15  Commc'ns v. Trinko, 540 U.S. 398, 407 (2004).

16      Since the Court finds that the element of willful acquisition or maintenance of monopoly

17  power is dispositive, the Court addresses this issue first.  Defendants allege, in pertinent part:

18          Facebook has acquired and maintained market power through two devices:
           Facebook solicited (and continues to solicit) internet users to provide their account names
19          and passwords for users' email and social networking accounts, such as Google's Gmail,
           AOL, Yahoo, Hotmail, or other third party websites.  Facebook then uses the account
20          information to allow the user to access those accounts through Facebook, and to run
           automated scripts to import their lists of friends and other contacts–i.e., to "scrape
21          data"–from those third-party sites into Facebook.  This practice fueled Facebook's growth by
           allowing Facebook to add millions of new users, and to provide users with convenient tools
22          to encourage their friends and contacts to join Facebook as well.  On information and belief
           it is estimated that at least approximately 35% to 50% of Facebook's "132 million active
23          users" . . . registered with Facebook as a result of an invitation generated using this device.

24

25      [25] As Facebook contends in its Amicus Reply, the Court finds that evidence of Power's
       efforts to circumvent Facebook's technical barrier is also relevant to show the necessary mental state
26     for Section 502 liability.  (Amicus Reply at 10-11.)  Since the facts relating to such circumvention
       efforts are still in dispute, the Court finds that there is also a genuine issue of material fact as to
27     whether Defendants possessed the requisite mental state.

28

<div align="center">20</div>

United States District Court

For the Northern District of California

1      Facebook simultaneously prohibited (and prohibits) users from using the same type
2   of utility to access their own user data when it is stored on the Facebook site. Thus,
    Facebook prohibits users from logging into Facebook through third-party sites, such as
    Power.com, and also restricts users from running automated scripts to retrieve their own user
3   data from the Facebook site.

4   (Amended Answer ¶ 174.)

5      Facebook has also maintained its monopoly power by systematically threatening new
6   entrants, such as Power.com and others, who seek to attract users through the same device
    . . . that Facebook itself used to fuel its own growth. On information and belief, for
    approximately the past 36 months, Facebook has threatened dozens of new entrants since
7   2006 with baseless intellectual property claims, and has engaged in systematic and
    widespread copyright misuse . . . to discourage market entry and to stifle competition from
8   new entrants.

9   (Amended Answer ¶ 176.)

10      The Court finds that Defendants' allegations cannot support a Section 2 monopolization

11   claim. Defendants cite no authority for the proposition that Facebook is somehow obligated to allow

12   third-party websites unfettered access to its own website simply because some other third-party

13   websites grant that privilege to Facebook. In fact, the Ninth Circuit has held that merely introducing

14   a product that is not technologically interoperable with competing products is not violative of

15   Section 2. See Foremost Pro Color, Inc. v. Eastman Kodak Co., 703 F.2d 534 (9th Cir. 1983).

16      In response to Facebook's Motion, Defendants merely assert that Facebook's actions are

17   anticompetitive because Defendants have alleged so, and that the Court must accept this allegation

18   as true at the motion to dismiss stage.[26] In maintaining this position, Defendants miss the fact that he

19   issue of whether or not a particular practice is anticompetitive is determinative of an essential

20   element of a monopoly claim, and is thus a question of law that may be determined by the Court.

21   The Court is not obligated to accept as true Defendants' allegations that amount to conclusions of

22   law, and the Court rejects Defendants' naked assertion here that Facebook's practices are predatory.

23   Papasan, 478 U.S. at 286.

24

25

_____

26   [26] (Defendants' Opposition to Motion of Facebook, Inc. to Dismiss Counterclaims and Strike
     Affirmative Defenses at 4-5, hereafter, "Defendants' Opposition re Motion to Dismiss," Docket Item
27   No. 63.)

28                                        21

United States District Court

For the Northern District of California

1    The Court likewise finds that Defendants' allegation that Facebook maintained monopoly

2   power by threatening potential new entrants to the social networking market with baseless

3   intellectual property lawsuits cannot support a Section 2 claim.  If Facebook has the right to manage

4   access to and use of its website, then there can be nothing anticompetitive about taking legal action

5   to enforce that right.  Furthermore, whether or not a particular lawsuit is "baseless" is a legal

6   conclusion, and thus the Court need not accept Defendants' allegations as to the merits of

7   Facebook's lawsuits as true.  Again, Defendants cite no authority for the proposition that filing

8   lawsuits against competitors for infringing on one's intellectual property rights can be deemed an

9   anticompetitive or predatory practice.

10    In light of the Court's finding that Defendants do not plead sufficient facts to satisfy one of

11   the essential elements of their Section 2 claim, the Court need not address the sufficiency of

12   Defendants' pleadings as to the remaining elements.  Since anticompetitive conduct is also an

13   element of a claim for attempted monopolization under Section 2, the Court finds that Defendants'

14   pleadings are deficient as to that claim as well.  See Coalition for ICANN Transparency, Inc. v.

15   VeriSign, Inc., 567 F.3d 1084, 1093 (9th Cir. 2009).

16    Accordingly, the Court GRANTS Facebook's Motion to Dismiss Defendants' counterclaims

17   for violations of Section 2 of the Sherman Act.  Since Defendants have already had the opportunity

18   to amend their counterclaims once, the Court dismisses these claims with prejudice.

19   **D.     UCL Claim**

20    Facebook moves to dismiss Defendants' UCL claim on the ground that if Facebook's

21   conduct is not anticompetitive under Section 2 of the Sherman Act, a UCL claim cannot be premised

22   on that same conduct.  (Facebook's Motion to Dismiss at 8-9.)

23     The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus.

24   & Prof. Code § 17200.  "The broad scope of the statute encompasses both anticompetitive business

25   practices and practices injurious to consumers.  An act or practice may be actionable as 'unfair'

26   under the unfair competition law even if it is not 'unlawful.'"  Chavez v. Whirlpool Corp., 93 Cal.

27   App. 4th 363, 375 (Cal. Ct. App. 2001).

28

22

**United States District Court**

For the Northern District of California

1     In <u>Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.</u>,[27] the court concluded that an

2  act or practice is "unfair" under the UCL if that conduct "threatens an incipient violation of an

3  antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable

4  to or the same as a violation of the law, or otherwise significantly threatens or harms competition."

5  Likewise,

6         the determination that the conduct is not an unreasonable restraint of trade necessarily
          implies that the conduct is not "unfair" toward consumers.  To permit a separate inquiry into
7         essentially the same question under the unfair competition law would only invite conflict
          and uncertainty and could lead to the enjoining of procompetitive conduct.

8  <u>Chavez</u>, 93 Cal. App. 4th at 375.

9

10         Here, the Court has found that Facebook's conduct is not anticompetitive.  Thus, Defendants

11  cannot premise their UCL claim on Facebook's conduct under either the unlawful or the unfair

12  prong.  Accordingly, the Court GRANTS Facebook's Motion to Dismiss as to Defendants' UCL

13  counterclaim with prejudice.

**E.     Affirmative Defenses**

14

15         Facebook moves to strike Defendants' affirmative defenses of misuse of copyright and fair

16  use.  (Facebook's Motion to Dismiss at 9-11.)

17         Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any

18  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

19  However, "[m]otions to strike are generally regarded with disfavor because of the limited

20  importance of pleading in federal practice, and because they are often used as a delaying tactic."

21  <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); <u>see, e.g.</u>, <u>Cal.</u>

22  <u>Dep't of Toxic Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028 (C.D. Cal. 2002).

23  Accordingly, such motions should be denied unless the matter has no logical connection to the

24  controversy at issue and may prejudice one or more of the parties to the suit.  <u>SEC v. Sands</u>, 902 F.

25  Supp. 1149, 1166 (C.D. Cal. 1995); <u>LeDuc v. Kentucky Central Life Ins. Co.</u>, 814 F. Supp. 820, 820

26  (N.D. Cal. 1992).  When considering a motion to strike, the court "must view the pleading in a light

27         [27] 20 Cal. 4th 163, 187 (Cal. Ct. App. 1999).

28
                                    23

United States District Court

For the Northern District of California

1   most favorable to the pleading party." In re 2TheMart.com, Inc. Securities Litig., 114 F. Supp. 2d

2   955, 965 (C.D. Cal. 2000).

3       Here, the Court previously struck Defendants' affirmative defenses because they

4   "contain[ed] no factual allegations." (October 22 Order at 3.) Instead, the pleadings merely referred

5   back to the "Introduction and Background" section with the phrase "conduct, as described herein."

6   (Id. at 4.) The Court found such barebones pleading inadequate, but gave Defendants leave to

7   amend. In their Amended Answer, Defendants plead in much greater detail their misuse of

8   copyright and fair use affirmative defenses. (Amended Answer ¶¶ 161-68.) The Court finds that

9   Defendants' amended allegations are sufficient to provide Facebook with "fair notice of the

10   defense." See Mag Instrument, Inc. v. JS Prods., 595 F. Supp. 1102, 1107 (C.D. Cal. 2008).

11       Accordingly, the Court DENIES Facebook's Motion to Strike Defendants' Affirmative

12   Defenses.

13                              **V.  CONCLUSION**

14       The Court DENIES Facebook's Motion for Judgment on the Pleadings, DENIES the parties'

15   Cross-Motions for Summary Judgment, GRANTS Facebook's Motion to Dismiss Defendants'

16   counterclaims for violations of Section 2 of the Sherman Act with prejudice, GRANTS Facebook's

17   Motion to Dismiss Defendants' UCL counterclaim with prejudice, and DENIES Facebook's Motion

18   to Strike Defendants' Affirmative Defenses.

19       On **August 23, 2010 at 10 a.m.**, the parties shall appear for a Further Case Management

20   Conference. On or before **August 13, 2010**, the parties shall file a Joint Case Management

21   Statement. The Statement shall include an update on the parties' discovery efforts and proposed

22   schedule on how this case should proceed in light of this Order.

23

24   Dated:  July 20, 2010

25                                   JAMES WARE
                                     United States District Judge

26

27

28                                   24

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Alan R Plutzik aplutzik@bramsonplutzik.com
   Cindy Ann Cohn cindy@eff.org
3  David P. Chiappetta david.chiappetta@corrs.com.au
   Indra Neel Chatterjee nchatterjee@orrick.com
4  Jessica Susan Pers jpers@orrick.com
   Joseph Perry Cutler JCutler@perkinscoie.com
5  Julio Cesar Avalos javalos@orrick.com
   Lawrence Timothy Fisher ltfisher@bramsonplutzik.com
6  Scott A. Bursor scott@bursor.com
   Thomas J. Gray tgray@orrick.com

7

8

**Dated:  July 20, 2010**                    **Richard W. Wieking, Clerk**

9

10                                           **By:    /s/ JW Chambers**
                                                   **Elizabeth Garcia**
11                                                 **Courtroom Deputy**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

SER94

1

2                                                    **E-Filed 5/11/2009**

3

4

5

6

7

8               **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12   FACEBOOK, INC., | Case Number C 08-5780 JF (RS) |
| 13                      Plaintiff, | ORDER[1] (1) DENYING MOTION TO DISMISS AND (2) GRANTING IN PART |
| 14              v. | AND DENYING IN PART MOTION FOR MORE DEFINITE STATEMENT |
| 15   POWER VENTURES, INC.; STEVEN VACHANI; DOE 1, d/b/a POWER.COM; and | [re: doc. no. 17] |
| 16   DOES 2-25, | |
| 17                      Defendants. | |
| 18 | |

19

20          Plaintiff Facebook, Inc. ("Facebook") alleges that Defendants Power Ventures, Inc. and

21   Power.com (collectively "Power.com") and Steve Vachini ("Vachini") operate an Internet service

22   that collects user information from Facebook's website in violation of the Controlling the Assault

23   of Non-Solicited Pornography and Marketing ("CAN-SPAM") Act, 15 U.S.C. § 7701, *et seq.*;

24   the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; and California Penal

25   Code § 502.  Facebook also alleges that Defendants committed direct and indirect copyright

26   infringement when they made copies of Facebook's website during the process of extracting user

27   _____

28          [1] This disposition is not designated for publication in the official reports.

Case No. C 08-4052 JF (RS)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

SER95

1  information.  In addition, Facebook alleges that the means by which Power.com accessed the

2  Facebook website constituted a violation of the Digital Millennium Copyright Act ("DMCA"),

3  17 U.S.C. § 1201, *et seq.*  Facebook also asserts claims for relief based on state and federal

4  trademark law, as well as a claim for relief under California's Unfair Competition Law ("UCL"),

5  Cal. Bus. & Prof. Code § 17200, *et seq.*

6         Defendants initially moved to dismiss the First Amended Complaint ("FAC") in its

7  entirety pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative pursuant to Fed. R. Civ. P.

8  12(e), but that motion was withdrawn with respect to the CAN-SPAM, CFAA, and § 502 claims

9  in light of Facebook's opposition.  Defendants now seek dismissal of Facebook's remaining

10 claims for relief (counts 4 through 8 in the FAC).  For the reasons set forth below, the motion to

11 dismiss for failure to state a claim will be denied, and the motion for a more definite statement

12 will be granted in part and denied in part.

13                                    **I. BACKGROUND**

14        Facebook developed and operates what is now one of the most popular social networking

15 websites.  *See* FAC ¶ 2.  The Facebook website allows users to create user profiles, join networks

16 and "friend" other users, which creates online communities with shared interests and

17 connections.  *See id.*  Every Facebook user must register before using the website, and

18 registration requires the user to assent to Facebook's Terms of Use, which essentially is a user

19 agreement that sets forth the acceptable terms of use.  *See id.* Ex. A.  Users who agree to the

20 Terms of Use have a limited license to access and use Facebook's website and services.  *See id.* ¶

21 31 and Ex. A at 3 ("Any use of the Site or the Site Content other than as specifically authorized

22 herein, without the prior written permission of Company, is strictly prohibited and will terminate

23 the license granted herein.").  Registered users create and customize their own user profiles by

24 adding content such as personal information, content related to their interests, and photographs,

25 which can then be shared with other Facebook users with whom the user has a Facebook

26 connection.  *Id.* ¶ 22.  Facebook users may be contacted only by Facebook or other registered

27 Facebook users.  *Id.* ¶ 23.  Any unauthorized use of Facebook's website will result in the

28 termination of a user's license.  *See id.* ¶ 31.

                                              2

1       Facebook also grants third parties a limited license to create applications that interact

2  with Facebook's proprietary network, provided that these applications adhere to a standardized

3  set of protocols and procedures and that the third-party developers agree to Facebook's

4  Developer Terms of Service, the Terms of Use, and any other applicable policies.  FAC ¶ 27.  In

5  addition, Facebook permits integration with third-party websites, and even permits exchange of

6  proprietary data with third-party websites, provided that these third party websites use the

7  "Facebook Connect" service, which enables users to "connect" their Facebook identity, friends

8  and privacy to those third-party websites.  *Id.* ¶ 27.  Facebook does not permit third-party access

9  to Facebook user profile data unless such access is through Facebook Connect.  *Id.* ¶ 28.

10      The corporate Defendants are alleged to be California entities and/or organizations that

11  do business in California.  FAC ¶¶ 9-10.  Defendant Vachini allegedly is the CEO of Defendant

12  Power.com, which is a website designed to integrate various social networking or email accounts

13  into a single portal  *Id.* ¶¶ 5, 11, 45.  A user has discretion with respect to whether to use

14  Defendants' services, and the user determines which accounts will be aggregated.  *See id.* ¶ 50.

15  After a user provides his or her user names and passwords to Defendants, the Power.com service

16  takes this access information to "scrape" user data from those accounts.  *Id.* ¶¶ 50-52.

17  Subsequently, the user can log on to Power.com to view the data culled from Facebook and any

18  other social networking sites or email accounts.  *See id.* at ¶ 52.

19      Prior to the filing of the FAC, the parties attempted to negotiate an arrangement whereby

20  Power.com could continue to access Facebook's website provided that it did so through the

21  Facebook Connect application.  FAC ¶¶ 58-61.  Those discussions proved fruitless, however, and

22  in late December 2008 Defendants informed Facebook that Power.com would continue to

23  operate without using Facebook Connect.  *Id.* ¶ 62.  Defendants allegedly continue to scrape

24  Facebook's website, despite technological security measures to block such access.  *Id.* ¶¶ 63-64.

25  Defendants also have solicited Facebook users to join Power.com through promotional emails.

26  *Id.* ¶¶ 65-66, 70.

27

28

3

## II. LEGAL STANDARD

When considering a motion to dismiss, the plaintiff's allegations are taken as true and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). For a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[d]ismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). "Whether to grant a Rule 12(e) motion is within the discretion of the trial court." *Babb v. Bridgestone/Firestone*, 861 F. Supp. 50, 52 (M. D. Tenn., 1993). However, "[s]uch motion [is] not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim." *Resolution Trust Corp. V. Dean*, 854 F. Supp. 626, 629 (D. Ariz. 1994) (citing *A.G. Edwards & Sons, Inc. V. Smith*, 736 F. Supp. 1030, 1032 (D. Ariz. 1989)). "[The motion] should not be granted unless the defendant cannot frame a responsive pleading." *Falamore, Inc. V. Edison Bros. Stores, Inc.*, 525 F. Supp. 940 ( E.D. Cal. 1981).

## III. DISCUSSION

### A. Copyright Infringement

To state a claim for copyright infringement, a plaintiff need only allege (1) ownership of a valid copyright and (2) copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The FAC alleges that Defendants accessed the Facebook website and made unauthorized copies of the website or created derivative works

4

1    derived from the Facebook website.  *See* FAC ¶¶ 124-27.

2         Defendants contend that Facebook's copyright allegations are deficient because it is

3    unclear which portions of the Facebook website are alleged to have been copied.  Defendants

4    also argue that there are significant portions of the website that are not protected by copyright

5    because Facebook does not hold any rights to content posted by users.  In response, Facebook

6    argues that Defendants make a "cache" copy of the website on each occasion of unauthorized

7    access.  Facebook also argues that it need not define the exact contours of the protected material

8    because copyright claims do not require particularized allegations.

9         The facts as pled in the instant case may be analogized to those in *Ticketmaster L.L.C. v.*

10   *RMG Techs, Inc*., 507 F. Supp. 2d 1096 (C.D. Cal. 2007), where in the context of a motion for a

11   preliminary injunction the district court found that the defendant made a copy of Ticketmaster's

12   website each time its automated program accessed the website.  *See id.* at 1106. ("copies of

13   webpages stored automatically in a computer's cache or random access memory ("RAM") upon a

14   viewing of the webpage fall within the Copyright Act's definition").  *See also MAI Sys. Corp. v.*

15   *Peak Computer, Inc*., 991 F.2d 511, 519 (9th Cir.1993) ("since we find that the copy created in

16   the RAM can be 'perceived, reproduced, or otherwise communicated,' we hold that the loading

17   of software into the RAM creates a copy under the Copyright Act.").  In addition, any users that

18   accessed the Ticketmaster website were bound its terms of use, which prohibited the use of

19   automated programs to access content.  *Id.* at 1107-10.  Under those circumstances, the court

20   found that Ticketmaster had met its burden of showing a likelihood of success on the merits with

21   respect to its direct copyright infringement claim.  *Id*. at 1110.

22        Facebook's user agreement prohibits, *inter alia*, the "harvest[ing] or collect[ion] [of]

23   email addresses or other contact information of other users from the Service or the Site by

24   electronic or other means for the purpose of sending unsolicited emails or other unsolicited

25   communications." FAC Ex. A at 4.  In addition, the user agreement broadly prohibits the

26   downloading, scraping, or distributing of any content on the website, with the exception being

27   that a user may download his or her own user content.  *Id*. at 3.  However, not even this

28   exception allows a user to employ "data mining, robots, scraping, or similar data gathering or

5

1  extraction methods." *Id.* Such actions are explicitly deemed to constitute "unauthorized use."

2  *See id.* Accordingly, the allegations as set forth in the FAC sufficiently allege unauthorized

3  access. Access for purposes that explicitly are prohibited by the terms of use is clearly

4  unauthorized. *See Ticketmaster*, 507 F. Supp. 2d at 1108-1110.

5      In addition, Facebook need not allege the exact content that Defendants are suspected of

6  copying at this stage of the proceedings. There is no requirement that copyright claims must be

7  pled with particularity. *See Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114,

8  1120 (C.D. Cal. 2001) ("Copyright claims need not be pled with particularity…complaints

9  simply alleging present ownership by plaintiff, registration in compliance with the applicable

10 statute and infringement by defendant have been held sufficient under the rules."). Defendants'

11 argument that Facebook's website is "huge" is irrelevant. According to the FAC, Facebook owns

12 the copyright to any page within its system, including the material located on those pages besides

13 user content, such as graphics, video and sound files. *See FAC ¶ 135 and Ex. A at 3.* Defendants

14 need only access and copy one page to commit copyright infringement.

15     Defendants correctly assert that Facebook does not have a copyright on user content,

16 which ultimately is the information that Defendants' software seeks to extract. However, if

17 Defendants first have to make a copy of a user's entire Facebook profile page in order to collect

18 that user content, such action may violate Facebook's proprietary rights.[2] Accordingly, the

19 motion to dismiss the claim for direct copyright infringement will be denied.

20     The FAC also sufficiently states a claim for indirect copyright infringement. "One

21 infringes contributorily by intentionally inducing or encouraging direct infringement, and

22 infringes vicariously by profiting from direct infringement while declining to exercise a right to

23 stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)

24 (citations omitted). Viewing the allegations in the FAC as true, the utilization of Power.com by

25

_____

26 [2] A collection of non-copyrighted material arranged in an original way is subject to
copyright protection. *See* 17 U.S.C. § 101; *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d

27 197, 204 (9th Cir. 1989). For example, in *Ticketmaster* the factual information about concerts
and tickets was not by itself copyrightable, but Ticketmaster's arrangement of that information

28 on its website presumably was. *See id.*

6

1    Facebook users exceeds their access rights pursuant to the Terms of Use.  *See* FAC Ex. A at 3-4.

2    Moreover, when a Facebook user directs Power.com to access the Facebook website, an

3    unauthorized copy of the user's profile page is created.  *See id.* ¶ 125.  The creation of that

4    unauthorized copy through the use of Defendants' software may constitute copyright

5    infringement.  *See Ticketmaster*, 507 F. Supp. 2d at 1110-11 ("Designing and marketing a device

6    whose purpose is to allow unauthorized access to, and thus to infringe on, a copyrighted website

7    is sufficient to trigger contributory liability for infringement committed by the device's

8    immediate users.").  The motion to dismiss the claim for indirect copyright infringement also will

9    be denied.

10           B.  Violation of the DMCA

11           The elements necessary to state a claim under the DMCA are (1) ownership of a valid

12    copyright; (2) circumvention of a technological measure designed to protect the copyrighted

13    material; (3) unauthorized access by third parties; (4) infringement because of the circumvention;

14    and (5) the circumvention was achieved through software that the defendant either (i) designed or

15    produced primarily for circumvention; (ii) made available despite only limited commercial

16    significance other than circumvention; or (iii) marketed for use in circumvention of the

17    controlling technological measure.  *See Chamberlain Group, Inc. v. Skylink Techs, Inc.*, 381 F.3d

18    1178, 1203 (Fed. Cir. 2004).  *See also Ticketmaster*, 507 F. Supp. 2d at 1112.  As with a

19    copyright infringement claim, there is no heightened pleading requirement that mandates detailed

20    allegations.  *Perfect 10*, 167 F. Supp. 2d at 1120.

21           Defendants argue that Facebook's DMCA claim also is insufficient for essentially the

22    same reasons discussed previously, except that they also argue that the unauthorized use

23    requirement is not met because it is users who are controlling access (via Power.com) to their

24    own content on the Facebook website.  However, this argument relies on an assumption that

25    Facebook users are authorized to use Power.com or similar services to access their user accounts.

26    The Terms of Use negate this argument.  Any user is barred from using automated programs to

27    access the Facebook website.  *See* FAC Ex. A at 3-4.  Users may have the right to access their

28    own content, but conditions have been placed on that access.  *See id.*  The FAC further alleges

7

1   that Facebook implemented specific technical measures to block access by Power.com after

2   Defendants informed Facebook that they intended to continue their service without using

3   Facebook Connect, and that Defendants then attempted to circumvent those technological

4   measures.  FAC ¶¶ 63, 64.  Accordingly, the motion to dismiss the DMCA claim will be denied.

5          C.  Trademark Infringement

6          The Lanham Act imposes liability upon any person who (1) uses an infringing mark in

7   interstate commerce, (2) in connection with the sale or advertising of goods or services, and (3)

8   such use is likely to cause confusion or mislead consumers.  15 U.S.C. § 1114(1)(a).  The

9   FAC states that Facebook has been the registered owner of the FACEBOOK mark since 2004.

10  FAC ¶¶ 38-39, 146.  The FAC further alleges that Defendants use the mark in connection with

11  their business.  *See id.* ¶ 70.  At no time has Facebook authorized or consented to Defendants'

12  use of the mark.  *Id.* ¶ 79.

13         Defendants again argue that the FAC does not provide sufficient detail and that Facebook

14  is required to provide concise information with respect to the trademark infringement allegations,

15  including information about "each instance of such use."  However, particularized pleading is not

16  required for a trademark infringement claim.  *See Perfect 10*, 167 F. Supp. 2d at 1122.  The FAC

17  incorporates a screenshot of an email sent by Defendants to Facebook users that not only

18  incorporates the protected mark but also appears to have been originated from or been endorsed

19  by Facebook.  *See* FAC ¶ 70.  The FAC also states that Defendants' unauthorized use of the

20  Facebook mark was likely to "confuse recipients and lead to the false impression that Facebook

21  is affiliated with, endorses, or sponsors" Defendants' services and the Power.com website.  *Id.* ¶¶

22  73, 76, 78.  These allegations are sufficient to state a claim for trademark infringement.  *See*

23  *Perfect 10*, 167 F. Supp. 2d at 1122 ("Perfect 10's allegations concerning the scope of the alleged

24  violations and Cybernet's alleged role, Cybernet is put on notice of the claims' nature and has

25  enough information to draft its pleadings.").

26         "To state a claim of trademark infringement under California common law, a plaintiff

27  need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark

28  being confused with their mark."  *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947-48 (N.D. Cal.

8

Case No. C 08-5780 JF (RS)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

1    2005).  For the same reasons set forth above, the motion to dismiss the common law trademark

2    claim will be denied.

3        D.  UCL Claim

4        The Ninth Circuit "has consistently held that state common law claims of unfair

5    competition and actions pursuant to California Business and Professions Code § 17200 are

6    'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d

7    1255, 1263-64 (9th Cir. 1995).  *See also Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1107 (N.D.

8    Cal. 2003) (adequately pled Lanham Act claim meant that UCL claim also was pled sufficiently).

9    Facebook's UCL claim does not reference the alleged trademark violations specifically, but it

10   does incorporate all the prior allegations in the pleading by reference.  *See* FAC ¶ 157.

11   Otherwise, the UCL count merely alleges that Defendants have engaged in "unlawful, unfair,

12   and/or fraudulent business acts or practices" in violation of the UCL.  Accordingly, from the face

13   of the FAC it is unclear whether Facebook's UCL claim is based on its trade dress allegations

14   alone or whether other portions of the FAC, such as the CFAA or CAN-SPAM claims, are

15   intended to form separate and independent bases for the UCL claim.  Accordingly, the Court will

16   grant Defendants' motion for a more definite statement pursuant to Rule 12(e) with respect to the

17   UCL claim.  *See Anderson v. Dist. Bd. of Trustees of Cent. Fl. Comm. Coll.*, 77 F.3d 364,

18   367(11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues

19   are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the

20   litigants suffer, and society loses confidence in the court's ability to administer justice.").  Within

21   thirty (30) days of the date of this order, Facebook shall file a short statement clarifying the

22   ground(s) underlying its UCL claim.

23                     **IV.  ORDER**

24        Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is

25   DENIED and the motion for a more definite statement is GRANTED IN PART and DENIED IN

26   PART.  Defendants shall file an answer to the FAC within thirty (30) days of the date that Facebook

27   files its supplemental statement.

28

1

2   IT IS SO ORDERED.

3

4

5
    DATED: May 11, 2009
6

7   _____
    JEREMY FOGEL
8   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Case No. C 08-5780 JF (RS)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

1    This Order was served on the following persons:

2    Alan R Plutzik      aplutzik@bramsonplutzik.com

3    Daralyn Durie      ddurie@durietangri.com

4    David P. Chiappetta      dchiappetta@perkinscoie.com, docketmp@perkinscoie.com,
     docketsflit@perkinscoie.com, jcutler@perkinscoie.com, jmccullagh@perkinscoie.com,
5    kwall@perkinscoie.com, mheap@perkinscoie.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Case No. C 08-5780 JF (RS)
ORDER DENYING MOTION TO DISMISS ETC.
(JFLC1)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 31, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Eric A. Shumsky*

Eric A. Shumsky
*Counsel for Plaintiff-Appellee*